IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GARNET TURNER<br>*individually and on behalf of all others*<br>*similarly situated, et al.,* | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 2:13-CV-685-WKW<br>(WO) |
| ALLSTATE INSURANCE<br>COMPANY, | ) ) ) | |
| Defendant. | ) | |
| JOHN E. KLAAS<br>*on behalf of himself and all others*<br>*similarly situated, et al.,* | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 2:15-CV-406-WKW<br>(WO) |
| ALLSTATE INSURANCE<br>COMPANY, | ) ) ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs in these consolidated ERISA cases are former employees of Defendant Allstate Insurance Company. Plaintiffs allege that Allstate provided them with a benefit plan that was to provide them with permanent, paid-up retiree life insurance policies after retirement. On or about July 2, 2013, Allstate notified participants that it would no longer pay premiums on the retiree life insurance

policies after December 31, 2015.  Plaintiffs filed suit to enjoin Allstate from depriving them of the permanent life insurance policies that they contend they were promised.  Before the court is Allstate's motion to dismiss Plaintiffs' amended complaints.  (Doc. # 63.)  For the reasons stated in this memorandum opinion, the court concludes that the motion to dismiss is due to be granted in part and denied in part.

## I.    STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).  To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

## II.    PROCEDURAL HISTORY

### A.    The *Turner* Complaint

On September 23, 2013, Garnet Turner filed a class action complaint against

Allstate.[1]   (Doc. # 1.)   Turner has twice amended his complaint, and other individual named Plaintiffs have been added to the *Turner* case.  (Collectively, all of the individuals named as Plaintiffs in the *Turner* case are referred to as "the *Turner* Plaintiffs.")  The *Turner* Plaintiffs seek to represent a class of

> [a]ll Allstate retirees who received a promise or representation from Allstate that their retiree life insurance benefit would continue for life and that Allstate would pay the premium from the date of their retirement until their death and/or received a promise or representation from Allstate that the retiree life insurance benefit was 'paid up,' and to whom Allstate directed a pattern of misrepresentations, omissions, and concealment about the benefit which misled the Plaintiffs and Class and harmed them when Allstate decided to cancel the benefit.

(Doc. # 44 at ¶ 22.)

The *Turner* Plaintiffs present two counts in their complaint.  In Count I, the *Turner* Plaintiffs allege that Allstate violated ERISA and the terms of the benefit plan by failing to provide retiree life insurance at no cost to Plaintiffs for the rest of their lives.  (Doc. # 44 at ¶¶ 71-73(b.)).  In addition, the *Turner* Plaintiffs allege in Count I that they are entitled to a declaratory judgment that Allstate breached its ERISA fiduciary duty "by not communicating truthful information about their retiree life insurance benefits, by a pattern of misrepresentations concerning those benefits, and by acts of concealment and omissions which kept the truth of the

---

[1] The lead case in this consolidated action, Case No. 2:13-CV-685, is referred to as "the *Turner* case." All record cites refer to documents filed in the lead case unless otherwise noted. The *Turner* case was originally assigned to United States District Judge Mark E. Fuller and was reassigned to the undersigned on August 20, 2014.

matter from the Plaintiffs."  (Doc. # 44 at ¶ 73(c.-d.).)

In Count II, the *Turner* Plaintiffs allege that Allstate breached its ERISA fiduciary duty to communicate truthful information about the retiree benefit plan by representing that, upon retirement, Plaintiffs would receive life insurance benefits that "would remain until death at no cost to the retiree and/or that their retiree life insurance benefits were 'paid up.'"  (Doc. # 44 at ¶ 81.)  The *Turner* Plaintiffs also allege that Allstate violated its ERISA fiduciary duties of disclosure by failing to inform the retirees that it could choose to cancel the no-cost-to-retiree life insurance benefit.  (Doc. # 44 at ¶ 84.)

The *Turner* Plaintiffs seek declaratory and injunctive relief and attorneys' fees.  (Doc. # 44 at 38.)

## B.    The *Klaas* Complaint

On March 11, 2015, John E. Klaas and several other named individuals (collectively, "the *Klaas* Plaintiffs") filed suit against Allstate in the United States District Court for the Southern District of Florida.  (Doc. #1 in the *Klaas* case.[2]) On June 5, 2015, United States District Judge John E. Steele entered an order transferring the *Klaas* case to the Northern Division of the Middle District of Alabama on grounds that the *Turner* case was filed first and the putative class in the *Klaas* case is a subset of the putative class in the *Turner* case. (Doc. # 20 in the *Klaas* case.)  *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d

---

[2] The member case in this consolidated action, Case No. 2:15-CV-406, is referred to as "the *Klaas* case."

71, 78 (11th Cir. 2013) ("The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case.").  The *Turner* and *Klaas* cases were subsequently consolidated.  (Doc. # 61.)

The *Klaas* Plaintiffs are former Allstate home office employees who allege that, as an incentive to retire in 1995, they were offered a Special Retirement Opportunity ("SRO") that included a promise of permanent life insurance benefits that would be "paid up for life" at no additional cost to them.  (Doc. # 62 at ¶¶ 24, 25.)  The *Klaas* Plaintiffs seek to represent a class of "Allstate retirees who accepted Allstate's [SRO] offer to eligible home office employees to take advantage of salary continuation, retiree medical and life insurance benefits, and an enhanced retirement benefit if they retired from Allstate on November 30, 1995."  (Doc. # 62 at ¶ 10.)  Like the *Turner* Plaintiffs, the *Klaas* Plaintiffs seek relief under ERISA on grounds that Allstate (1) represented to them that they would receive permanent, paid-up life insurance policies but did not provide such policies; (2) failed to disclose that, at any time in the future, Allstate could cancel, terminate, or refuse to pay for the life insurance policies that were provided; and (3) Allstate cancelled the retiree life insurance policies.  .

In their complaint, the *Klaas* Plaintiffs assert three counts.  Count I of the *Klaas* complaint is substantially identical to Count I of the *Turner* complaint. (Doc. # 62 at ¶¶ 36-38.)  Count II of the *Klaas* complaint is substantially identical to

Count II of the *Turner* complaint.  (Doc. # 62 at ¶¶ 36-55.)  In Count III, unlike the *Turner* Plaintiffs, the *Klaas* Plaintiffs assert a state law claim for breach of contract for Allstate's failure to provide life insurance at no cost to the retirees for the remainder of their lives.

The *Klaas* Plaintiffs seek declaratory and injunctive relief, attorneys' fees, and monetary award in an "amount . . . that will place the Plaintiffs and the Class in as satisfactory a position as they would have been had their contract with Allstate been performed."  (Doc. # 62 at 16-17.)

## C.    <u>The Motion to Dismiss and the Motion for Preliminary Injunction</u>

On September 9, 2015, Allstate filed a motion to dismiss the *Turner* and *Klaas* complaints.  (Doc. # 63.)

On November 16, 2015, the *Turner* Plaintiffs filed a motion for a preliminary injunction to prevent Allstate from cancelling the named *Turner* Plaintiffs' insurance policies on December 31, 2015.  (Doc. # 74.)  In briefing the motion for preliminary injunction, the parties referenced and incorporated arguments made in their briefs on the motion to dismiss.

On December 7, 2015, the *Klaas* Plaintiffs filed a motion to join the *Turner* Plaintiffs' motion for preliminary injunction.  (Doc. # 82.)

On December 11, 2015, the court held a status conference at which Plaintiffs represented that they would seek to enlarge the request for injunctive relief to prevent Allstate from cancelling the life insurance policies of unnamed class

members.  Allstate subsequently filed a motion to strike any motion for injunctive relief on behalf of unnamed class members. (Doc. # 89.)

On December 18, 2015, the court held a hearing on the motion to dismiss, the motion for preliminary injunction, the *Klaas* Plaintiffs' motion to join the motion for injunctive relief, and Allstate's motion to strike.  (Doc. # 76; Doc. # 91.)

By Order entered December 29, 2015, (Doc. # 92), the court granted the following motions: the *Turner* Plaintiffs' motion for a preliminary injunction requiring Allstate to continue the life insurance benefits after December 31, 2015 (Doc. # 74), the *Klaas* Plaintiffs' motion to join the motion for preliminary injunction. (Doc. # 82), and Allstate's motion to strike the motion for preliminary injunction as to unnamed members of the putative classes in both cases (Doc. # 89).  The December 29, 2015 Order also required

> that[,] on or before midnight, December 31, 2015, Plaintiffs shall execute individually and file signature bonds in the amount of $5,000 each. The injunction will dissolve by operation of law as to any Plaintiff not filing a bond by midnight, December 31, 2015.  Because the offices of the Court are closed December 31, 2015 and January 1, 2016, counsel for Plaintiffs shall email or fax to counsel for Defendant a copy of the respective bonds and the injunction shall be effective as to the bonded Plaintiffs.

(Doc. # 92 at 3.)

No bonds were filed by midnight, December 31, 2015.  Therefore, on the record, it appeared that the injunction had dissolved by operation of law, and the

7

court did not supplement the December 29, 2015 Order with a Memorandum Opinion as it had intended. However, at an off-the-record status conference held on September 14, 2016, Plaintiffs stated that they timely executed the bonds and emailed or faxed them to Defendant's counsel, but did not file them with the court. All parties, including Allstate, agreed that the preliminary injunction remained in force despite Plaintiffs' failure to timely file the bonds with the court. Plaintiffs have since filed the bonds. (Doc. # 117; Doc. # 119.) Accordingly, on September 27, 2016, upon the parties' agreement that the preliminary injunction did not dissolve by operation of law, the court issued a Memorandum Opinion. (Doc. # 121.)

### III.   FACTS[3]

As part of an employee welfare benefit plan provided by Allstate, Allstate offered Plaintiffs a basic group life insurance plan during their employment. Plaintiffs allege and have presented evidence[4] that Allstate represented to them (1)

---

[3] For purposes of ruling on the motion to dismiss, the Plaintiffs' complaints are construed in a light most favorable to them and Plaintiffs' factual allegations are taken as true. *See Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

[4] Plaintiffs have referenced certain documents in the complaint and attached those documents to the complaint. In support of the motion to dismiss, Allstate submitted plan documents that it contends are the governing plan documents referenced in the complaints and central to Plaintiff's claims. (Doc. # 64 n.2; Doc. # 64-1 through Doc. # 64-6.) The documents attached to the complaint and the plan documents submitted by Allstate have been considered in ruling on the motion to dismiss. *See Bickley v. Caremark Rx, Inc*., 461 F.3d 1325, 1329 n.7 (11th Cir. 2006) ("A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss. However, . . . where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiffs claim, then the Court may consider the documents part of the pleading for purposes of Rule 12(b)(6) dismissal, and the

8

that, and if they were enrolled in the basic group life insurance plan during their employment and fulfilled certain conditions, then, upon retirement, their basic group life insurance policies would terminate and they were "entitled"[5] to receive retiree life insurance policies; (2) that the retiree life insurance policies would provide a life insurance benefit equal to some specified percentage of their previous coverage or some specified multiple of their annual earnings; and (3) that the retiree life insurance benefit would be

- permanent (Doc. # 44 15 ¶¶ 50, 62, 67, 69; Doc. # 62 at ¶¶ 32, 34);

- "paid-up for life" (Doc. # 44 at ¶ 28-38, 40-46, 48-49, 52-53, 81; Doc. # 44-2 at 1; Doc. # 44-3; Doc. # 44-4; Doc. # 62 at ¶¶ 24-25; Doc. # 44-10 at 1);

- "in effect for the remainder" of Plaintiffs' lives and "until death" (Doc. # 44 at ¶¶ 42, 45, 53, 60-61, 65; Doc. # 62 at ¶¶ 13-16, 27);

- "without premium for the remainder of [the retirees'] life" and with "no further premiums" due on the retiree life insurance policies (Doc. # 44 at ¶¶ 33, 37, 42, 47-48);

---

defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." (citation and internal quotation marks omitted)).

At times in this opinion, other evidence is cited, including evidence that was taken at the December 18, 2015 hearing on the motion to dismiss and motion for preliminary injunction. However, that evidence is noted for reference and exposition only, and, in the absence of that evidence, the court's ruling on the motion to dismiss would be the same. Therefore, it is not necessary to convert the motion to dismiss to a motion for summary judgment before ruling on the motion.

[5] (*See, e.g.,* Doc. # 44 at ¶¶ 31, 36, 38, 47, 49, 55-56; Doc. # 44-1 at 2; Doc. # 44-6; Doc. # 44-12; Doc. # 44-13 at 1; Doc. # 44-14 at 2; Doc. # 44-16; Doc. # 44-18; Doc. # 44-19; Doc. 44-20.)

- provided by Allstate upon Plaintiffs' retirement with all associated premiums paid for by Allstate for life (Doc. # 44 at ¶ 60); and

- provided by Allstate at "no additional cost" to and "without further contribution from" Plaintiffs. (Doc. # 44 at ¶¶ 25, 27, 36, 39, 42, 47-51, 53, 58, 65, 67, 81; Doc. # 62 at ¶¶ 13-16, 24-25; Doc. # 44-1 at 1; Doc. # 44-5; Doc. # 44-7 at 2; Doc # 44-10 at 1; Doc. # 44-11 at 2; Doc. # 44-13 at 1; Doc. # 44-14 at 2; Doc. # 44-15 Doc. # 44-17 at 2; Doc #66 at ¶¶ 15-16.)[6]

Allstate does not dispute that these representations were made, or that Plaintiffs relied on those representations.[7]  (See Doc. # 91 at 121-122, 125.).  In

---

[6] (*See also*, *e.g.*, Doc. # 87-1 at ¶¶ 3-5 (declaration of *Turner* Plaintiff Theodore Speiwack that Allstate promised him insurance that was "paid up for life" and that Allstate represented to him that "'paid up for life' mean that all premiums were paid on [his] retiree life insurance policy"); Doc. # 87-3 at ¶¶ 2-5 and page 6 (declaration of *Turner* Plaintiff James Cartrette stating that Allstate made oral and written representations that he would receive "paid up" retiree life insurance upon retirement, and attaching a copy of a letter from Allstate's Human Resource Division Manager on Allstate Insurance Company ("Allstate® You're in good hands") letterhead stating that he would receive "paid up life insurance" upon retirement); Doc. # 87-4 at ¶¶ 2-5 and page 7 (declaration of *Turner* Plaintiff Charlie Drake stating that Allstate executives made promises to him that, upon retirement, he would receive "paid up" life insurance, and attaching a form stating that the life insurance would be provided "at no cost"); Doc. # 87-5 at ¶¶ 2-6 (declaration of *Turner* Plaintiff William Huff stating that he would receive a "'paid up' retiree life insurance policy" and that he received a form, which is attached to the declaration, showing that he was provided a "PAID UP" group life insurance policy); Doc. # 87-7 at ¶ 3 and page 6 (declaration of *Turner* Plaintiff Alberta Nixon attaching a letter from Allstate's Human Resources Department on "Allstate® You're in good hands" letterhead stating that she would receive retiree life insurance that would "remain [at a specified coverage amount] without premium for the remainder of [her] life"); Docs. ## 79-3 through 79-5 (summary plan descriptions providing that basic group life insurance policies would terminate upon retirement or upon the termination of the group life insurance policy, but that, "in some instances" life insurance may continue beyond that time if, for instance, the employee's insurance terminated upon retirement and the employee was eligible for "Retiree Life Insurance").)

[7] Plaintiffs allege and have submitted evidence that they relied to their detriment on representations that Allstate provided permanent, fully paid, paid-up life insurance by, for example, accepting early retirement packages that included the allegedly paid-up insurance,

fact, at the hearing on the motion for preliminary injunction and the motion to dismiss, Allstate *admitted* that it did make the representations.  (*See, e.g.,* Doc. # 91 at 121-22 (statement of Allstate's attorney: "[W]hat I would say, Your Honor, is that the insurance [sic] said it was paid up at the time of retirement."); *id.* at 128 ("We told these employees they were going to receive the life insurance for life. That was the testimony today."); *id.* at 117 ("Allstate used the words 'paid up' in certain communications, Your Honor.")).

Allstate contends that its representations regarding the provision of paid-up, permanent life insurance were not *misrepresentations*, and that Allstate had no subjective intent to mislead Plaintiffs in making the representations.   Allstate contends that any representation that the policies were "permanent" or "paid-up" simply meant that Allstate would be "paying the cost" of the life insurance premiums in the future.  (Doc. # 91 at 118.)  As the court noted at the hearing on the motion to dismiss, that is not what "paid up" means.  Rather, "paid up" means insurance for which all premiums have been paid and no more premium payments are required,[8] and Plaintiffs allege that this is what they understood the term to

---

cancelling other life insurance policies, and deciding not to purchase additional life insurance. For purposes of ruling on the motion to dismiss, the fact of detrimental reliance is established without dispute.

[8] For example, see *Stowe Township v. Standard Life Insurance Co. of Indiana*, 363 F. Supp. 341, 343-44 (W.D. Pa. 1973):

"Ordinarily, by virtue of contract or statute, there is a provision upon default or termination of a contract of life insurance, that the insured shall be entitled to extended or paid-up insurance and a cash surrender value. In Couch on Insurance 2d [Volume 6, Page 354], Section 32:137 the following appears:

mean when Allstate used it.[9]   It is reasonable to infer that, as an insurer

> '(P)aid-up insurance means that no more payments are required, and consists of insurance for life in such an amount as the sum available therefore, considered as a single and final premium, will purchase. In other words, 'paid-up insurance' is insurance for the life of the insured, upon which all the premiums have been paid."

*See also, e.g.*, *Eisen v. Nicholson*, 23 Vet. App. 502, 2007 WL 1599657 at *1 n.3 (2007) (unpublished table memorandum decision) ("Paid-up insurance is insurance on which all premiums have already been paid, with no further premiums due. *See Columbian Nat'l Life Ins. Co. v. Griffith*, 73 F.2d 244, 246 (8th Cir. 1934) (observing that paid-up insurance 'means insurance which has been fully paid for')"); *Luke v. IKON Office Sols. Inc.*, No. CIV.00-2755(JRT/FLN), 2002 WL 1835645, at *6 (D. Minn. Aug. 1, 2002) ("In simplest terms, the plain meaning of the term 'paid up' means just what it says-that the object in question, in this case, the death benefit, is fully paid for. Webster's Dictionary defines 'paid up' as something 'that has satisfied or indicated an implied financial obligation.' Webster's Third New International Dictionary 1620 (1986). This definition is also wholly consistent with the Eighth Circuit's observation in [*Griffith*, 73 F.2d 244] that 'in simple language . . . "paid up insurance" means insurance which has been fully paid for.' *Id*. at 246. Contrary to defendants' insistence, the Court finds other terms incorporating the phrase 'paid up' such as 'paid up policy' and 'paid up insurance' highly relevant in determining the meaning of paid up death benefit in this case. Both phrases have been interpreted to mean insurance for which, at a certain point in time, no additional premiums are owed."); 5 Couch on Ins. § 77:36 ("It may be stipulated . . . that upon default or termination of the original contract the insured shall be entitled to extended or paid-up insurance, or some other such benefit as that portion of the premium paid, over and above the amount actually earned during the period that the policy was active, will purchase. Extended insurance means that, upon default or termination of the original contract, the policy will continue in force for such period as the amount of unearned premium will cover; whereas paid-up insurance means that no more payments are required, but the amount of the insurance is reduced to an amount corresponding to the premiums paid." (footnotes and citations omitted)); 5 Couch on Ins. § 77:36 n.3 ("A provision for paid-up insurance will not be construed to mean paid-up temporary insurance for the full amount of the policy." (citation omitted)).

[9] (*See, e.g.*, Doc. # 44 ¶ 33 ("Allstate used the term 'paid up' to convey to [Plaintiff Bill] Huff that no further premiums for the benefit would be due and that upon Mr. Huff's death, his beneficiary would receive $30,000. The term 'paid up' was used by Allstate to convey that the promised benefit would be certain, not contingent in any way, and particularly not contingent on payment of future premiums by Allstate or anyone else, including the retiree."); ¶ 37 ("'Paid up' was represented to mean that Allstate had already paid all owed premiums for Kathryn Shepherd and Class members' retiree life insurance and that no further premiums would be due. This meant that upon a retiree's death, the promised amount was payable without further action by anyone. 'Paid up' meant that the retiree's beneficiary would receive payment no matter what Allstate did or did not do after retirement."); ¶ 40 ("[Plaintiff Vernon Bentley] was never informed that Allstate reserved any right to cancel the benefit, and such a right and cancellation would have been contrary to the definition of 'paid up.'"); ¶ 42 ("Allstate represented to

12

communicating with insurance company employees, Allstate understood and expected the recipients of its communications to understand that "fully paid-up permanent life insurance" referred to life insurance policies upon which no further premiums were due.  See *supra* note 5.  Plaintiff's allegations of intentional misrepresentation and suppression are only bolstered by Allstate's admission that it promised "permanent," "paid up" policies while harboring the subjective intent to purchase and indefinitely pay for policies that were not paid up and were permanent only so long as Allstate, in its discretion, continued to make premium payments.   Accordingly, Plaintiffs have sufficiently alleged that Allstate knowingly misrepresented the terms of the plan.

"In 2013, Allstate changed its mind"[10] about whether to continue paying premiums for the retiree life insurance policies.  (Doc. # 91 at 128 (statement of Allstate's counsel).)  In July 2013, Allstate notified Plaintiffs that Allstate had been "fully paying [Plaintiffs'] premium" for the life insurance since their retirement and that Allstate had "made the decision to no longer pay the premium for [the] life insurance benefit" effective December 31, 2015.  (Doc. # 44 ¶ 64; Doc. # 62-4.) Plaintiffs were informed that they would be allowed to purchase "conversion" life

[Plaintiff Ted Spiewack], and Class members in attendance, at various seminars that 'paid up for life' meant that all premiums were paid on the policy and that the retiree's beneficiary would receive the proceeds independently of any action or inaction by Allstate."); ¶ 48 (similar allegation as to Plaintiff Charlie Drake)).

[10] Indeed, Allstate takes the position – as it must – that it could have "changed its mind" the next day after hundreds of its home office employees took advantage of a generous special retirement opportunity ("SRO") that Allstate offered to the *Klaas* Plaintiffs.  (Doc. # 91 at 114-15.)

insurance policies from a new carrier at their own expense.[11] (Doc. # 44 ¶ 64; Doc. # 62-4.)  The undisputed evidence, including the July 2013 letter, establishes that Allstate did not provide Plaintiffs a fully paid-up life, permanent insurance policy upon retirement for which no future premiums were due and that would "permanently" remain in force for the remainder of Plaintiffs' lives.  Instead, despite its representations to the contrary, Allstate provided a policy that was not "paid up" or "permanent," that would not necessarily be in force for the rest of Plaintiffs' lives, and for which premium payments were regularly made by Allstate so long as Allstate decided to keep the policy in force.

## IV.   DISCUSSION

**A.    Count I of the *Turner* and *Klaas* Complaints: Request for Declaratory Judgment**

### 1.    *ERISA § 502(a)(3) and Allstate's Failure to Communicate Accurate Information About the Plan*

An ERISA participant has a right to accurate information, and, under ERISA § 502(a)(3), 29 U.S.C. § 1132(3), an ERISA plan administrator's misrepresentation or omission of material information may give rise to a cause of action for breach of fiduciary duty.  *Jones v. Am. Gen. Life & Acc. Ins. Co.*, 370 F.3d 1065, 1072 (11th Cir. 2004).  In Count I of their complaints, Plaintiffs seek a declaratory judgment that Allstate breached its fiduciary duty to communicate truthfully about the terms

---

[11] Premiums for the conversion life insurance increase with age and are subject to change after 2018.  (Doc. # 74-1; Doc. # 74-2 at 3.)

of the plan.  Allstate does not dispute that it had a fiduciary duty to communicate truthfully about the plan.  Further, for the reasons stated in Section III. of this Memorandum Opinion, Plaintiffs have alleged facts which, if true, are sufficient to establish that Allstate failed to communicate truthfully about the plan.

Allstate contends that its arguments for dismissal of Count II of the complaint, which also falls under § 502(a)(3), should be applied to the portion of Count I seeking a declaratory judgment with respect to the alleged breach of fiduciary duty to communicate truthfully about the plan.  (Doc. # 64 at 14 n.4.) For the reasons Allstate's argument for dismissal of Count II are rejected in Section IV.B. of this Memorandum Opinion, Allstate's arguments for dismissal of Count I are also rejected.

To recover on § 502(a)(3) claims, Plaintiffs must allege and prove that the plan *did not* include paid-up life insurance as Allstate had represented; whereas, to recover for a breach of the terms of the plan, Plaintiffs must allege and prove that the plan *did* include (or was at least ambiguous about including) terms that obligated Allstate to provide paid-up life insurance.  *See Jones*, 370 F.3d at 1071. The fact that Plaintiffs ultimately cannot simultaneously recover on both types of claims does not require dismissal of one or both claims at this stage of the proceedings.  *See* Fed. R. Civ. P. 8(d)(2) – (3) ("A party may set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is

sufficient if any one of them is sufficient. . . . A party may state as many separate claims or defenses as it has, regardless of consistency.").

### 2. ERISA § 502(a)(1)(B) and Allstate's Alleged Breach of the Terms of the Welfare Benefit Plan

Under Count I of their complaints, Plaintiffs seek a declaratory judgment that Allstate breached a duty under the terms of the plan to provide permanent, paid-up retiree life insurance that would continue "for life." Actions for breach of ERISA plan terms fall under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which authorizes "ERISA participants and beneficiaries to bring a civil action in order to recover benefits, enforce rights to benefits, or clarify rights to future benefits due under the terms of an ERISA-governed welfare benefit plan." *Jones*, 370 F.3d 1065, 1069 (11th Cir. 2004).

The Eleventh Circuit recognizes two types of action under § 502(a)(1)(B). The first type of § 502(a)(1)(B) action is "akin to common law breach of contract causes of action" and is based on "[t]he remedies explicitly authorized in Section 502(a)(1)(B)." *Id*. In a breach-of-contract type of action, the plaintiff may seek to enforce rights or recover benefits under the terms of the plan. *Id*. Because the doctrine of *contra proferentem* governs resolution of ambiguities in ERISA-governed plans, "an ERISA plaintiff is generally not required to demonstrate his [or her] entitlement to benefits in clear and express language in the relevant provisions of his plan in order to make out a [§] 502(a)(1)(B) 'breach of contract'

16

claim." *Id*. at 1070.  However, to succeed on a "breach of contract" ERISA claim, the plaintiff must establish that the terms of the plan at issue are "at least ambiguous" as to whether he is entitled to the benefits he seeks to recover or enforce. *Id*.

As for the second type of § 502(a)(1)(B) action, the Eleventh Circuit "has recognized a very narrow common law doctrine . . . for equitable estoppel, which is available where the plaintiff can show that (1) the relevant provisions of the plan at issue are ambiguous, and (2) the plan provider or administrator has made representations to the plaintiff that constitute an informal interpretation of the ambiguity." *Id*.

Allstate contends that, at various times between 1990 and 2013, Allstate disclosed in the written plan documents that, although it intended to continue the benefit plan indefinitely, it reserved the right to change, amend, or terminate the benefit plan, the terms of the plan, and the benefits provided under the plan at any time.[12]  (Doc. # 64 at 13.)  Allstate further argues that this reservation of right to modify, terminate, or amend the plan, including benefits provided under the plan, unambiguously included a reservation of the right to terminate the retiree life insurance policies after those policies were issued.

As Allstate points out, under *Jones*, employee welfare benefits such as life insurance "do not vest simply because they continue into retirement, particularly

---

[12] It is undisputed that Allstate reserved the right to modify, amend, or terminate the employee benefit plans at any time.

when other plan provisions establish that benefits are generally terminable."  370 F.3d at 1070.   Language merely indicating that benefits will continue into retirement (such as a statement that an employee "will get to keep" insurance after retirement, that "coverage will continue" after retirement, or that the employer has an "intention of continuing [a plan] indefinitely") is "not inconsistent" with an employer's reservation of the right to unilaterally modify or terminate an employee benefit plan, and such language does not create vested, irrevocable rights under the terms of the plan to benefits upon retirement.  *Id*. at 1070-71.  Where the employer uses such language while reserving the right to change or terminate the plan, the retiree does not have a cause of action for breach of the terms of the plan under ERISA § 502(a)(1)(B).

Allstate's reliance on *Jones* is misplaced.   *Jones* did not involve representations promising "paid-up," "permanent" life insurance "for life" upon retirement, with no further premiums due. In this case, Plaintiffs are not alleging that the life insurance vested simply because they received a promise that the insurance would continue into retirement.  Plaintiffs are alleging (1) that Allstate violated the terms of the plan by failing to provide permanent, paid up insurance and by cancelling the plans; or, alternatively, (2) that Allstate's representations to the Plaintiff that they would receive "paid up," "permanent" policies "for life" constituted an informal interpretation of an ambiguity about whether the retiree life insurance policies were among the benefits that could potentially be terminated at

Allstate's discretion.

Logically, as Plaintiffs point out, a statement that an employer could, at some point in the future, modify or terminate the plan or plan benefits would not necessarily place a retiree on notice that he or she could lose (or one day be required to pay for) a permanent retiree life insurance policy that had already been purchased and "fully paid up" and at the date of retirement, and upon which no further premiums were due. Under the circumstances, the reservation of rights could reasonably be understood to apply to other benefits under the plan (such as employee group life insurance policies) or to the potential to modify or terminate the retiree life insurance offered to existing employees, but not to retiree life insurance that (according to Allstate's representations) the retirees received upon their retirement, fully paid up, with no further premiums due.

Accordingly, for the purpose of the motion to dismiss, upon consideration of the evidence attached to the complaint and the motion to dismiss, and construing the allegations in the complaint in Plaintiffs' favor, the court concludes that Plaintiffs have stated a claim (1) that the plan did not include (or was ambiguous as to whether it included) a provision under which Allstate reserved the right to cancel the retiree life insurance policies; and, alternatively, (2) that Allstate's representations that the retiree life insurance was "permanent" and "paid-up" upon retirement constituted an informal interpretation of the ambiguity as to whether the retiree life insurance policies could be cancelled at Allstate's discretion.

Therefore, Allstate's arguments for dismissal of Count I are without merit.

**B.**     **Count II of the Turner  and Klaas Complaints: Breach of Fiduciary Duty**

     *1.*     *Breach of Fiduciary Duty Under ERISA § 502(a)(3)*

Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), a plan participant may have an equitable cause of action for breach of fiduciary duty against an ERISA plan provider or administrator if the plan provider or administrator fails to provide accurate information about the plan.  *Jones*, 370 F.3d at 1072.  Even if a benefit is not vested under the terms of the plan, a retiree may have an equitable cause of action if the administrator terminates the benefit after engaging in a systematic pattern of misrepresentation that causes the plan participants to believe and rely on representations that the insurance benefit will not be changed during their retirement.  *Id.*, at 1071-74.

Allstate argues that it made no misrepresentations that the retiree life insurance policies would be permanent and paid up upon retirement (and, thus, could never be cancelled once issued) because (1) Allstate had no subjective intent misrepresent the nature of the policies because, when Allstate represented that the policies would be permanent, paid-up policies "for life," it fully intended to provide – and indefinitely make premium payments on – retiree life insurance policies that were not paid up; (2) under the terms of the plan, Allstate reserved the right to modify, terminate, or cancel the plan or benefits offered under the plan;

and (3) under *Jones* and other cases, statements that the employer intends to continue an employee benefit plan are not inconsistent with a reservation of right to later modify or terminate the plan.

For the reasons stated in Section III. of this Memorandum Opinion and in Section II.A. of the September 27, 2016 Memorandum Opinion and Order on the motion for preliminary injunction (Doc. # 121 at 4-14), Allstate's arguments regarding fraudulent intent and the scope of its reserved right to cancel or terminate the plan, as well as its reliance on *Jones*, are misplaced.  Allstate's reliance on cases from other Circuits is also misplaced because those cases are distinguishable. In each of those cases, an employer's honest statement of its current intent to indefinitely continue a plan or benefit was not retroactively made fraudulent by the employer's subsequent change of heart in accordance with a written reservation of the right to change, modify, or terminate the plan or plan benefits.  This case, however, involves an alleged promise of paid up insurance that (1) by Allstate's own admission, Allstate never intended to provide; and (2) by definition, once issued, could not be cancelled or terminated at Allstate's discretion.[13]  Even the

---

[13] As already noted in Sections III. and IV.A. of this opinion, and in Section II.A. of the September 27, 2016 Memorandum Opinion and Order on the motion for preliminary injunction (Doc. # 121 at 4-14): (1) a statement that the employer will provide paid-up, permanent insurance is a knowingly and intentionally false statement if made with the knowledge and the subjective intent that the employer will instead procure and make indefinite payments on insurance that is not paid up and that will continue for life only at the employer's discretion and continuing payment of premiums; and (2) Allstate's reservation of a right to modify, terminate, or cancel the plan or benefits under the plan at some future time cannot reasonably be understood to refer to retiree life insurance that (according to Allstate's representations) the retirees had *already* received upon their retirement, fully paid up, with no further premiums due.

cases upon which Allstate relies expressly recognize the significance of these distinctions.[14]

Accordingly, Plaintiffs' § 502(a)(3) claims for breach of fiduciary duty are not subject to dismissal for failure to allege misrepresentations or omissions on the part of Allstate.

### 2.    *Statute of Limitations*

Allstate argues that Plaintiffs' § 502(a)(3) claims for breach of fiduciary duty are due to be dismissed because they are barred by the applicable statute of limitations found in ERISA § 413, 29 U.S.C. § 1113.  For the reasons stated in Section II.B. of the September 27, 2016 Memorandum Opinion and Order on the

---

[14] *See Armbruster v. K-H Corp.*, 206 F. Supp. 2d 870, 894 (E.D. Mich. 2002) ("The summary plan descriptions issued to the Plaintiffs over the years unambiguously reserved to [the employer] the right to amend or terminate the plan. . . .  [I]n the face of this clearly stated right to amend, reliance on statements allegedly suggesting the contrary, was not, and could not be, reasonable or justifiable as a matter of law.  *This is particularly true, where, as here, [the employer] never told the Plaintiffs that the plan would never be changed or that their benefits were fully paid-up*. . . . .  [The employer] did not give Plaintiffs inaccurate information concerning retiree medical benefits when they were considering retirement. *The information they were given was, at the time it was given, accurate.* [The employer] not having given out inaccurate information, there was no breach of fiduciary duty." (emphasis added; citations and internal quotation marks omitted)); *see also Frahm v. Equitable Life Assur. Soc. of U.S.*, 137 F.3d 955, 961 (7th Cir. 1998) ("Representations about plans and intentions could be false if, at the time the statements were made, the speaker actually had a different intention (*Ballone v. Eastman Kodak Co.*, 109 F.3d 117 (2d Cir.1997), appears to have concerned such a situation), but the district court found that statements had not proved lies of this kind. Instead the evidence showed that the statements were honest (if at times incautious) projections of present plans into the future. As it happened, higher management . . . changed course in 1992, but this did not make the earlier statements false."); *Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 857 (4th Cir. 1994) (holding that an explanation of "a company's current intentions with respect to [a] plan . . . cannot be expected to foreclose the possibility that changing financial conditions will require a company to modify welfare benefit plan provisions at some point in the future"); *Bunnion v. Consol. Rail Corp.*, 108 F. Supp. 2d 403, 412 (E.D. Pa. 1999), *aff'd*, 230 F.3d 1348 (3d Cir. 2000) (finding that "honest declarations of [a defendant's] present intent to do a future act" were not fraudulent);.

motion for preliminary injunction (Doc. # 121 at 14-22), Plaintiffs' § 502(a)(3) claims for breach of fiduciary duty are not barred by the applicable statute of limitations.

### 3.   *Allstate's Status as a Plan Fiduciary*

Allstate argues that Plaintiffs' claims for breach of fiduciary duty are due to be dismissed because Plaintiffs did not adequately plead facts sufficient to support a legal conclusion that the persons making representations about the plan were fiduciaries, and because the plan documents do not name Allstate as a fiduciary. *See* ERISA § 3(21)(A), 29 U.S.C. § (21)(A) (defining "fiduciary"). Plaintiffs specifically identified several of the individuals who made representations to them about receiving permanent, paid-up policies. Plaintiffs also allege that documents from Allstate itself indicated that they would receive paid up policies.[15] (Doc. # 44 at ¶ 34; Doc. # 44-4 (document marked "Allstate® You're in Good Hands" stating that a "group life paid up policy" in a specified amount was available upon retirement).) Plaintiffs allege that Allstate that the persons making the representations were authorized to do so on behalf of Allstate, and that Allstate retained the responsibility for administering the plan. (Doc. # 44 at ¶¶ 54, 77-79; Doc. # 62 at ¶ 42-43.)

---

[15] At the hearing on the motion to dismiss, Allstate admitted that it represented that the plans would be paid up for life. (*See, e.g.*, Doc. # 91 at 121-22 (statement of Allstate's attorney: "[W]hat I would say, Your Honor, is that the insurance [sic] said it was paid up at the time of retirement."); *id*. at 128 ("We told these employees they were going to receive the life insurance for life. That was the testimony today."); id. at 117 ("Allstate used the words 'paid up' in certain communications, Your Honor.")).

Taking these factual allegations as true for the purpose of the motion to dismiss, Plaintiffs have adequately alleged facts sufficient to support a legal finding that Allstate was a fiduciary and acted as such when communicating with Plaintiffs about the employee benefit plan. *See Varity Corp. v. Howe*, 516 U.S. 489, 496-505 (1996) (holding that an employer who retained administrative control over a plan acted as a plan fiduciary when the employer made representations to the employees about the likely future security of a benefit plan in order to help them decide whether to remain with the plan); *Hamilton v. Allen-Bradley Co*., 244 F.3d 819, 824, 828 (11th Cir. 2001) (holding that an employer who retained administrative control over plan benefits was a plan administrator, and therefore a fiduciary, notwithstanding the language of the plan booklet).

## C.  Count III of the *Klaas* Complaint: State Law Claim for Breach of Contract

Allstate argues that the *Klaas* Plaintiffs' state law breach of contract claim is subject to dismissal because it is defensively preempted by ERISA.  "A state law claim is defensively preempted under ERISA if it relates to an ERISA plan." *Jones v. LMR Int'l, Inc.,* 457 F.3d 1174, 1179 (11th Cir. 2006); 29 U.S.C. § 1144(a) (ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and are not exempt under section 1003(b) of this title.").  The *Klaas* Plaintiffs' breach of contract claim relates to an ERISA benefit plan and is, therefore, due to

be dismissed.

## V.   CONCLUSION

Accordingly, it is ORDERED that Defendant Allstate insurance company's motion to dismiss (Doc. # 63) is GRANTED as to Count III of the *Klaas* Plaintiffs' complaint; DENIED as to all other claims asserted by the *Klaas* Plaintiffs; and DENIED as to the *Turner* Plaintiffs' claims.

DONE this 27th day of September, 2016.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE