IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GARNET TURNER,                          )
Individually and on behalf of all others )
Similarly situated, et al.,             )
                                        )
        Plaintiffs                      )
                                        )
        v.                              )   CIV. ACT. NO. 2:13-cv-685-WKW
                                        )
ALSTATE INSURANCE CO.,                  )
                                        )
        Defendant                       )
_____

JOHN E. KLASS,                          )
Individually and on behalf of all others )
Similarly situated, et al.,             )
                                        )
        Plaintiffs                      )
                                        )
        v.                              )   CIV. ACT. NO. 2:15-cv-406-WKW
                                        )
ALSTATE INSURANCE CO.,                  )
                                        )
        Defendant                       )

MEMORANDUM OPINION AND ORDER

In these consolidated ERISA[1] cases, former employees of Allstate contend

that Allstate failed to provide them with "paid up" life insurance policies as promised

as part of their retirement plan. On October 7 2016, the plaintiffs deposed Jim

---

[1] Employee Retirement Income Security of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.

Devries, Allstate's former Executive Vice President of Operations. Now, in a motion to compel, the plaintiffs want to redepose DeVries. (Pl. Mot. to Compel, Doc. # 153) During the original deposition, the following colloquy took place.

Q    To your knowledge, in making the decision to terminate the retiree life Insurance benefits to Allstate employees, did you consider what commitments Allstate had made to its home office employees when it issued a special retirement opportunity to them in the mid '90's?

A    Do I answer about about the legal review?

MR. BLOCKER:  you can't—you can't provide any testimony about any conversation you had with the lawyers.

BY MR. PEARL:

Q    Do you understand the question?

A    Yes.

Q    I'm not asking you to tell me what you may have learned from a lawyer Allstate or outside lawyer. My question is what you considered and if you considered what commitments Allstate made to its home office employees.

MR. BLOCKER:  Well again, I know you think those are different questions, but –

MR. PEARL:    They are.

MR. BLOCKER:  Like I said, I know you think those are different questions.   But if his answer requires him to divulge communications he had with Counsel, then I'm instructing him not to answer with respect to those communications.

BY MR. PEARL:

Q      And you understand I'm not asking you to divulge any communications with counsel. And I'm certainly not asking to you devulge any communications that you had recently with counsel.

I'm asking back in 2012, 2013, in your process to determine whether to terminate the life Insurance coverage for Allstate retirees, you considered—you considered whether Allstate had made any commitments to this home office employees as part of the special retirement opportunity offered in the mid '90s.

MR. BLOCKER:    Same caution, Jim. If your answer would require you to divulge communications that you've had with Counsel, you shouldn't divulge those communications.

A      It is central to the answer.

(DeVries Dep, Doc. # 153-3 at 10-12)

That wasn't the last time counsel tried to get a response from DeVries about

commitments to retirees.

A      Did I every review documents?

Q      Yes.

A.      This is in the same neighborhood as our questions earlier about getting the advice of Counsel.

Q      Well, I'm not – I'm not asking whether you received advice of Counsel.  My simple question is have you reviewed any documents.

A      I don't know if I – I don't recall if I reviewed documents.

Q      Okay. My earlier question to which I think I was going to get a ruling from your Counsel was whether or not you considered what

commitments had been made to the retirees who took advantage of the home office SRO in the mid 190s.

MR. BLOCKER:  Bob, we -- I talked to Mr. DeVries about that at the break, and it is – he can't answer the question without divulging communications that he had with Counsel. So I don't think -- I'm instructing him not to answer to the extent he needs to divulge communications, and he can't answer your question without doing so.

MR. PEARL: Well, I guess my question is a little bit different from that, and that is -- it is very narrow. And that is whether he, the witness, considered the SRO issues at that time.

MR. BLOCKER: Again, I know you think that is a different question, but it is not. From my perspective, it is the same question. So I'm giving him the same instruction with respect to that.

MR. HOOD: Chris Hood for the Turner Plaintiffs. I don't intend to examine the witness, but we would contend that a fact, merely because it is a subject of discussion between the witness and the defendant's attorney, is not shielded from discovery simply because it was the subject of that discussion. I'll cite Black Letter Rules 25 FRD 203, a case called State Farm Mutual, or 137 FRD 267, Protective National Insurance. The fact or event or document is not cloaked with a privilege and is the subject property of a question in discovery. And the fact that it may or may not have been subject to discussion between the witness and Counsel doesn't cloak it with any privilege or immunity. I understand Bob's question to be at the time these decisions were made to cancel the life insurance benefit, was -- did the witness take into account the SRO retirees. And that seems to be a fair question, fair fact. So we join with Bob. We'd like an answer to it.

MR. BLOCKER: Yeah. I'm not -- I'm not changing my instruction.

(DeVries Dep, Doc. # 153-3 at 13-15)

As the court will now explain, he should have.

The attorney-client privilege is intended to encourage "full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege protects the disclosures that a client makes to his attorney, in confidence, for the purpose of securing legal advice or assistance. *In re Grand Jury (G.J. No. 87–03–A)*, 845 F.2d 896, 897 (11th Cir.1988). The privilege is grounded "in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888). Because the attorney-client privilege is an exception to the principle of full disclosure, the party asserting protection under the privilege generally bears the burden of proving the applicability of the privilege. Courts also typically construe the attorney-client privilege to its narrowest permissible limits. *See, e.g., Fisher v. United States*, 425 U.S. 391, 403 (1976); *Garner v. Wolfinbarger*, 430 F.2d 1093, 1101 (5th Cir. 1970). A narrow construction insures that knowledge of as many facts as possible will lead to the truth. *See e.g., Camacho v. Nationwide Mut. Ins. Co.*, 287 F.R.D. 688, 692 (N.D. Ga. 2012).

The question which started all of this was whether DeVries considered something in making a decision. That question concerns an historical fact. He either considered something or he did not. That kind of historical fact is not privileged. DeVries' response mentioned a legal review. Questions about a legal review might well be privileged, but we can't know that because first, that question wasn't asked and secondly, DeVries wasn't allowed to answer. Speculation about what might have been asked if DeVries had answered the original question gets us nowhere. The issue is simply whether a question about what he considered is protected. It is not. It is not even if he had learned the fact from a lawyer. *See State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 214 (E.D. Pa. 2008) (noting that the plaintiff could not instruct its witness not to disclose any facts learned in discussion with counsel); *Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 279 (D. Neb. 1989) (allowing questions into what facts supported the plaintiff's allegations even though the witness learned those facts through counsel).

And, to a certain extent, the same is true with regard to questions about whether DeVries reviewed documents. Whether he did or did not is an historical fact. Even if he did it at the behest of a lawyer, the fact of a review or not is simply not privileged. If counsel had asked what documents he reviewed, that answer *might* be privileged because it might disclose the lawyer's mental opinions and thought processes. *See Hickman v. Taylor,* 329 U.S. 495, 511 (1947). But, that question

wasn't asked because DeVries was not allowed to answer whether he reviewed documents.[2]  In effect, the instruction to DeVries amounted to a blanket claim of privilege because his answers were related to conversations he had with lawyers. Such a blanket claim of privilege is impermissible.  *Moore v. Metropolitan Life Ins. Co.*, 2011 WL 2559627, at *2 (M.D.Ala. 2011).

A word of caution is appropriate.  From the context of the deposition, it is obvious that DeVries had a meeting or conversations with lawyers.  Generally historical facts he learned would not be privileged, but even that conclusion must be tempered with caution if those facts disclose the lawyer's opinions and thought processes.  Counsel, therefore, should evaluate the importance of the information they seek from DeVries and whether there are other avenues for learning those facts.

For the foregoing reasons, it is

ORDERED that the motion to compel (Doc. # 153) the redeposition of Jim DeVries be and is hereby GRANTED.[3]

Done this  24th day of May, 2017.


/s/Charles S. Coody
_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

---

[2] The court recognizes DeVries said he couldn't recall, but that response came in the context of cautions about not disclosing privileged information which may have affected DeVries' recollection.

[3] Other aspects of the motion have been resolved.