# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| GARNET TURNER,<br>individually and on behalf of all others<br>similarly situated, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE CO.,<br><br>    Defendant. | CIVIL ACTION NO. 2:13-CV-685-WKW |
| JOHN E. KLAAS,<br>individually and on behalf of all others<br>similarly situated, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE CO.,<br><br>    Defendant. | CIVIL ACTION NO. 2:15-CV-406-WKW |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFFS' ERISA SECTION 502(a)(1)(B) CLAIM

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

STATEMENT OF UNDISPUTED FACTS ........................................................................3

SUMMARY JUDGMENT STANDARD ...........................................................................3

ARGUMENT ......................................................................................................................4

    I.   The Supreme Court's Precedent in *M & G Polymers* Requires Plaintiffs to Show that the Governing Plan Documents Contain a Clear and Unambiguous Intent to Vest the Retiree Life Insurance. ....................................................................................................................6

    II.  Even Under Pre-*M & G Polymers* Precedent, Plaintiffs Cannot Meet Their Burden to Show Governing Plan Documents Are at Least Ambiguous..............................................8

         A.  Allstate's Governing Plan Documents Contain An Unambiguous Reservation of Rights Permitting It To Terminate the Benefit at Any Time. ......................................10

         B.  The Governing Plan Documents' Description of Retiree Life Insurance Is Consistent With Allstate's Right to Amend or Terminate the Plan................................................12

    III. Although the Court is Precluded From Considering Extrinsic Evidence, There Is No Evidence of an "Informal Interpretation" to Support an Equitable Estoppel Theory........14

CONCLUSION..................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbruscato v. Empire Blue Cross & Blue Shield*,
    274 F.3d 90 (2d Cir. 2001)................................................................14

*Alday v. Container Corp. of Am.*,
    906 F.2d 660 (11th Cir. 1990) .......................................................10, 15

*American Fed. of Grain Millers, AFL-CIO v. Int'l Multifoods Corp.*,
    116 F.3d 976 (2d Cir. 1997)............................................................13

*Begner v. United States*,
    428 F.3d 998 (11th Cir. 2005) .........................................................9

*Chapman v. AI Transport*,
    229 F.3d 1012 (11th Cir. 2000) ......................................................4

*Dawkins v. Fulton County Gov't*,
    733 F.3d 1084  (11th Cir. 2013) ......................................................4

*Edwards v. Aguillard*,
    482 U.S. 578 (1987).....................................................................4

*Funeral Fin. Sys. v. United States*,
    234 F.3d 1015 (7th Cir. 2000) ........................................................9

*Gallo v. Moen Inc.*,
    813 F.3d 265 (6th Cir.), *cert denied*, 137 S. Ct. 275 (2016)...........................7, 9, 10

*In re Sears Retiree Grp. Life Ins. Litig.*,
    90 F. Supp. 2d 940 (N.D. Ill. 2000) ..............................................12, 14

*Jones v. Am. Gen. Life & Accident Ins. Co.*,
    370 F.3d 1065 (11th Cir. 2004) ................................................. passim

*Kane v. Aetna Life Insurance*,
    893 F.2d 1283 (11th Cir. 1990) ......................................................15

*M & G Polymers USA, LLC v. Tackett*,
    135 S. Ct. 926 (2015)........................................................... passim

*Moore v. Metro. Life Ins. Co.*,
    856 F.2d 488 (2d Cir. 1988)...........................................................5

*Murphy v. Keystone Steel & Wire Co.*,
    61 F.3d 560 (7th Cir. 1995) ...........................................................4

*Musto v. Am. Gen. Corp.*,
    861 F.2d 897 ...................................................................................................11, 13

*Roberts v. Continental Ins. Co.*,
    770 F.2d 853 (9th Cir. 1985) ........................................................................9

*Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*,
    546 F. App'x 846 (11th Cir. 2013) ...............................................................4

*Saregama India Ltd. v. Mosley*,
    635 F.3d 1284 (11th Cir. 2011) ....................................................................4

*Schena v. Metro. Life Ret. Plan for U.S. Employees*,
    244 F. App'x 281 (11th Cir. 2007) ........................................................4, 5, 9

*Sprague v. Gen. Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) ..................................................................5, 14

*Stearns v. NCR Corp*,
    297 F.3d 701 (8th Cir. 2002) ......................................................................12

*Westport Ins. Corp. v. Tuskegee Newspapers, Inc.*,
    402 F.3d 1161 (11th Cir. 2005) ....................................................................9

*Wile v. Paul Revere Life Ins. Co.*,
    410 F. Supp. 2d 1313 (N.D. Ga. 2005) .........................................................9

## STATUTES

29 U.S.C.A. § 1002(7) ...................................................................................11

## OTHER AUTHORITIES

29 C.F.R. § 2520.102-3(l).................................................................................2

Fed. R. Civ. P. 56(a) ........................................................................................3

Defendant Allstate Insurance Co. ("Defendant" or "Allstate") moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) because the *Turner* and *Klaas* Plaintiffs' (collectively "Plaintiffs") claims fail as a matter of law and lack evidence. In this memorandum, Allstate seeks summary judgment on the Plaintiffs' ERISA Section 502(a)(1)(B) claims[1] because the undisputed facts show that Plaintiffs cannot meet their burden to prove that Allstate's Governing Plan Documents[2] clearly and unambiguously provide for a vested lifetime benefit. Allstate in fact expressly reserved the right to amend, modify or terminate the retiree life insurance benefit at any time and expressly provided that Plaintiffs, as Plan participants, had no vested right to the benefit. Accordingly, Allstate is entitled to judgment as a matter of law on Plaintiffs Section 502(a)(1)(b) claims.

## INTRODUCTION

This case stems from Allstate's 2013 decision to amend its welfare benefit plans to eliminate a life insurance benefit for Allstate retirees who retired between 1990 and 2013. Among other things, Plaintiffs filed a Section 502(a)(1)(B) claim based on the theory that Allstate's welfare benefits plan offered vested retiree life insurance, such that Allstate breached the terms of the plan when it terminated the benefit.[3]

---

[1] To the extent the *Klaas* Plaintiffs contend that Allstate's 1994 Special Retirement Opportunity changes the analysis for their Section 502(a)(1)(B) claim, Allstate addresses that argument in a separate memorandum in support of summary judgment on their claim, filed concurrently with this memorandum.

[2] Prior to the adoption of the Allstate Cafeteria Plan, the SPDs constituted the governing Plan documents for the retiree life insurance benefit. SOF ¶ 7. From 2001-2009 the Allstate Cafeteria Plan, which incorporated the SPDs, constituted the governing plan documents for the retiree life insurance benefit. SOF ¶ 7. Since September 2009, the Allstate Corporation Life Insurance Plan for Former Non-Claims Employees and the Allstate Insurance Company Life Insurance Plan for Former Claims Employees constituted the governing plan documents for the retiree life insurance benefit. SOF ¶ 7. The term "Governing Plan Documents" collectively refers to these documents.

[3] Doc. 44, *Turner* Second Am. Compl. ¶¶ 71-73; Doc. 62, *Klaas* Am. Compl. ¶¶ 36-38; *see also* Doc. 122, Memo Op. & Order, at 16-17 (construing Plaintiffs' declaratory judgment claims as arising under ERISA Section 502(a)(1)(B)).

In this memorandum, Allstate seeks summary judgment against both the *Turner* and *Klaas* named Plaintiffs on their ERISA 502(a)(1)(B) claim.  To prevail on this claim, Plaintiffs must prove by a preponderance of the evidence that Allstate's Governing Plan Documents show an intent to permanently vest retiree life insurance.  But given the strong public policy considerations disfavoring a finding of lifetime vested welfare benefits, courts cannot simply infer or imply an employer's intent to vest.  Instead, such an intent must be clearly expressed in the governing plan documents.  *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 937 (2015) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998) (en banc)).

Congress drafted ERISA expressly to acknowledge a company's right to amend or terminate welfare benefits at any time to incentivize employers to provide welfare benefits to employees.[4]  *Id.* at 933 ("[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 5141 U.S. 73, 78 (1995))).

With this Congressional intent in mind, the Supreme Court in *M & G Polymers* recently clarified the standard applicable to establishing vested lifetime welfare benefits.  The Supreme Court mandated that when considering vesting claims, courts must apply ordinary rules of contract interpretation to the plan at issue.  *Id.*  Courts cannot simply infer, from silence, an employer's intent to vest a welfare benefit for life, or construe an ambiguity in favor of lifetime benefits.  *Id.* at 937.  Rather, the four corners of the plan itself must *clearly and unambiguously* express an intent to vest a benefit.  *Id.* (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998) (en banc)).  Under *M & G Polymers*, plaintiffs can no longer avoid summary judgment on the issue of lifetime vesting simply by showing that relevant plan documents were

---

[4] 29 C.F.R. § 2520.102-3(l) (requiring summary plan descriptions to  contain description of plan provisions governing authority of plan sponsors to terminate the plan or to amend the plan to eliminate benefits under the plan).

2

"at least ambiguous." *See Jones v. Am. Gen. Life & Accident Ins. Co.*, 370 F.3d 1065, 1070–71 (11th Cir. 2004) (employing previous standard). Instead, they must prove the plan documents show a clear and unambiguous intent to create a vested benefit. *M & G Polymers*, 135 S. Ct. at 937.

But under either the current *M & G Polymers* standard or the former *Jones* standard, Plaintiffs' Section 502(a)(1)(B) claim cannot survive summary judgment. The Governing Plan Documents here lack *any* indication, much less a clear and unambiguous statement, of any intent to vest retiree life insurance. To the contrary, Allstate's Governing Plan Documents all contain a clear and unambiguous reservation of Allstate's right to amend, modify, or terminate the Plan benefits, and since 1992 have all contained a provision expressly stating that no Plan participant or beneficiary has a vested right. Whether one applies the standard mandated by *M & G Polymer*, or the arguably more lenient standard set forth in *Jones*, those clear and unambiguous provisions negate any suggestion of an intent to create a vested lifetime benefit and are dispositive here. Therefore, both the *Klaas* and *Turner* Plaintiffs' Section 502(a)(1)(B) claims fail as a matter of law.

## STATEMENT OF UNDISPUTED FACTS

Allstate incorporates by reference its Combined Statement of Undisputed Facts in Support of its Motions for Summary Judgment, which is being filed concurrently with this brief. The undisputed facts referred to and relied on in this brief are identified by numbered paragraph ("SOF _") in the argument below.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual

dispute is material to an issue affecting the outcome of the case." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). "Reasonable inferences" that arise from undisputed facts should be made in favor of the nonmovant, but "an inference based on speculation and conjecture is not reasonable." *Dawkins v. Fulton County Gov't*, 733 F.3d 1084, 1088 (11th Cir. 2013).

After the moving party shows no genuine issue of material fact exists, the nonmoving party "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* at 1088–89. On summary judgment, the Court should resolve claims that turn on pure questions of law, including questions of contractual interpretation and whether an employer intended to vest ERISA-governed welfare benefits. *See Edwards v. Aguillard*, 482 U.S. 578, 594 (1987); *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011); *Schena v. Metro. Life Ret. Plan for U.S. Employees*, 244 F. App'x 281, 284-85 (11th Cir. 2007); *see also Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 564-65 (7th Cir. 1995) (whether employer intended welfare benefits to vest "present[ed] an issue of contractual interpretation," for which summary judgment was "particularly appropriate").

## ARGUMENT

The *Turner* and *Klaas* Plaintiffs seek a declaratory judgment that they are entitled to a permanent retiree life insurance benefit at no cost to them. Doc. 44, *Turner* Pls.' Second Am. Compl. ¶¶ 71–73; Doc. 62, *Klaas* Pls.' Am. Compl. ¶¶ 36-38. This Court construed their claim as arising under ERISA Section 502(a)(1)(B). Doc. 122, Memo. Op. and Order at 16–17.

Section 502(a)(1)(B) "allows participants and beneficiaries of a welfare benefit plan governed by ERISA . . . to bring civil suits to recover benefits or enforce rights to benefits under the terms of the plan." *Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*, 546 F. App'x 846, 850 (11th Cir. 2013). The Supreme Court mandates that courts, when considering such claims, must apply

4

ordinary rules of contract interpretation to the plan at issue.  *M & G Polymers*, 135 S. Ct. at 933.

Because Congress intended to preserve an employer's right to amend or terminate welfare

benefits at any time, courts cannot infer, from silence, that the parties intended a plan benefit to

vest for life.  *Id.* at 937.  On the contrary, the four corners of the plan itself must *clearly and*

*unambiguously* express an intent to vest a benefit.  *Id.* (citing *Sprague*, 133 F.3d at 400).

Here, Plaintiffs contend that Allstate's welfare benefit plan entitled them to vested retiree

life insurance, such that Allstate breached its terms when it terminated the benefit.  To resolve

that question, this Court must look exclusively to the Governing Plan Documents in place from

the time the first named Plaintiff retired in 1991 until the plans were amended in 2013.  *Schena*,

244 F. App'x at 284 (explaining that Eleventh Circuit recognizes a "rigorously enforced rule"

that courts "not look outside formal plan documents" to determine whether benefits are vested);

*see also Sprague*, 133 F.3d at 402 ("Congress intended that plan documents and SPDs

exclusively govern an employer's obligations under ERISA plans."); *Moore v. Metro. Life Ins.*

*Co.*, 856 F.2d 488, 492 (2d Cir. 1988) (same).

Far from showing that Allstate intended to vest retiree life insurance, Allstate's SPDs

expressly and unambiguously state the opposite:  Participants did "*not* have a vested right in *any*

of the Plan's benefits," (SOF ¶¶ 14, 19, 25, 31), and Allstate reserved the right to amend, modify,

or terminate the plan and any benefit at ***any*** time (SOF ¶¶ 13, 18, 24, 30, 37, 39) (emphasis

added).  Nothing in the Governing Plan Documents indicates that the retiree life insurance

benefit was vested or not subject to termination.  To conclude otherwise would violate ordinary

rules of contract interpretation and *M & G Polymers*.

I. **The Supreme Court's Precedent in *M & G Polymers* Requires Plaintiffs to Show that the Governing Plan Documents Contain a Clear and Unambiguous Intent to Vest the Retiree Life Insurance.**

The Supreme Court's recent decision in *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015) clarified the standard for establishing vested welfare benefits. There, the Court overturned the Sixth Circuit's prior precedent that inferred an employer's intent to vest welfare benefits whenever the contract or plan did not specifically limit the benefit's duration. *Id.* at 935. The Supreme Court admonished that such a presumption "violates ordinary contract principles by placing a thumb on the scale in favor of vested retiree benefits . . . ." *Id.* Rather, "the rule that contractual 'provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA [welfare benefits] plan'" because to do otherwise "'would unduly discourage employers from offering [them] in the first place.'" *Id.* at 933 (quoting *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 611–12 (2013)).

To ensure the scale does not improperly tilt in favor of finding vested retiree benefits, the Supreme Court stressed the importance of these basic principles:

- "Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent," *Id.* at 933;

- "[T]he written agreement is presumed to encompass the whole agreement of the parties," *Id.* at 936;

- "[T]raditional rules of contractual interpretation require a clear manifestation of intent before conferring a benefit or obligation," *Id.*;

- "[W]hen a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life," *Id.* at 937; and

- "[C]ourts should not construe ambiguous writings to create lifetime promises." *Id.* at 936.

After *M & G Polymers*, ERISA plaintiffs can no longer meet their burden by simply showing that the Governing Plan Documents are ambiguous, because a court cannot "construe

ambiguous writings to create lifetime promises." *Id.* at 936.  Rather, "'[b]ecause vesting of welfare plan benefits is not required by law, an employer's commitment to vest such benefits is not to be inferred lightly; the intent to vest must be found in the plan documents and must be stated in clear and express language.'" *Id.* at 936–37 (quoting *Sprague*, 133 F.3d at 400). Applying these principles, it is clear that Allstate's Governing Plan Documents do not create a vested retiree life insurance benefit, and that Allstate reserved the right to amend, modify or terminate that benefit at any time.

After nearly four years of litigation, Plaintiffs have yet to identify any language in the Governing Plan Documents—much less any clear and unambiguous language—that expresses an intent to vest retiree life insurance.  None exists.  Across the hundreds of pages of Governing Plan Documents issued from 1991 to 2013, not once is "vested," "paid up," "permanent," or "for the rest of your life" used to describe retiree life insurance.  The documents simply lack any indication that Allstate intended to vest the benefit.

To the contrary, the Governing Plan Documents' reservations of rights foreclose any possible argument that Allstate may have intended its retiree life insurance benefit to vest.  *See Gallo v. Moen Inc.*, 813 F.3d 265, 270–71 (6th Cir.), *cert denied*, 137 S. Ct. 275 (2016) (reservation of rights clauses "evidence an intent not to vest").  While the format of the SPDs evolved over time, they each generally contained the following language:

- Although Allstate intends to continue the Plan, Allstate reserves the right to modify, amend, suspend or terminate it any time (SOF ¶¶ 13, 18, 24, 30); and

- The Plan's participants or beneficiaries do not have a vested right in any of the Plan's benefits (SOF ¶¶ 14, 19, 25, 31).[5]

---

[5] The statement that the Plan's "participants or beneficiaries do not have a vested right in any of the Plan's benefits" first appears in the 1992 SPD, and remains included thereafter.  SOF ¶ 14.  Allstate's reservation of rights to modify, amend or terminate the Plans appears in all SPD's during the relevant period of 1990-2013.  SOF ¶¶ 13, 18, 24, 30, 37, 39.

Similarly, each of the Plan Documents contains sections addressing the amendment and termination of the plan, which generally contain the following language:

- The Company reserves the discretionary right to modify or amend the Plans in any respect, at any time and from time to time, retroactively or otherwise . . . .

- The Company reserves the right to terminate the Plans at any time . . . .

SOF ¶¶ 37, 39.

Given the clear, broad language of the reservation of rights and the lack of any express terms indicating vesting, *M & G Polymers* precludes this Court from inferring that Allstate intended to vest retiree life insurance.

## II.   Even Under Pre-*M & G Polymers* Precedent, Plaintiffs Cannot Meet Their Burden to Show Governing Plan Documents Are at Least Ambiguous.

In the wake of *M & G Polymers*, simply showing that an ERISA plan is ambiguous as to vesting of welfare benefits is insufficient to prevail on a Section 502(a)(1)(B) claim, because Congress intended to preserve an employer's right to modify or terminate welfare benefits at will. *M & G Polymers*, 135 S.Ct. at 933.  "[C]ourts should not construe ambiguous writings to create lifetime promises … when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life."  135 S. Ct. at 936–37.  This holding implicitly reverses Eleventh Circuit precedent permitting Section 502(a)(1)(B) plaintiffs to survive summary judgment if they can show the governing plan documents are *at least ambiguous* with respect to an employer's intent to provide vested retiree life insurance.  *See Jones*, 370 F.3d at 1070.  In particular, the Eleventh Circuit's "appl[ication] [of] the doctrine of *contra proferentem* to resolve ambiguities in ERISA-governed plans" is no longer viable as it relates to the question of whether benefits are vested.  *Jones*, 370 F.3d at 1070.  The Supreme Court directly rejected this principle when it instructed that courts "not construe ambiguous writings to create lifetime promises."  *M & G Polymers*, 135 S. Ct. at 936.  That said, even if this

Court were to apply the obsolete *Jones* standard, Plaintiffs have not—and cannot—carry their burden of showing any ambiguity with respect to Allstate's ability to modify or terminate the retiree life insurance benefit.

To the extent any ambiguity exists, it must be apparent from the four corners of Governing Plan Documents themselves. *Schena*, 244 F. App'x at 284. ERISA governed plan documents are not ambiguous because a term is undefined or because the parties disagree on the meaning of its terms. *Wile v. Paul Revere Life Ins. Co.*, 410 F. Supp. 2d 1313, 1320–21 (N.D. Ga. 2005). Nor are they ambiguous simply because they are "[c]umbersome, complex, and hard-to-read," such that they require interpretation. *Roberts v. Continental Ins. Co.*, 770 F.2d 853, 855 (9th Cir. 1985); *see also Begner v. United States*, 428 F.3d 998, 1005 (11th Cir. 2005) ("A contract that is difficult to construe is not ambiguous unless the rules of contract interpretation do not resolve which of several possible interpretations represent the true intent of the parties."). Rather, an ERISA plan is only ambiguous when its terms are reasonably susceptible to more than one interpretation. *See Funeral Fin. Sys. v. United States*, 234 F.3d 1015, 1018 (7th Cir. 2000).

The Court must construe the Governing Plan Documents as a whole. *M & G Polymers*, 135 S. Ct. at 937 (Ginsburg, J., concurring) ("Under the 'cardinal principle' of contract interpretation, 'the intention of the parties, to be gathered from the whole instrument, must prevail.'" (quoting 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 30:2, p. 27 (4th ed. 2012))); *accord Gallo v. Moen Inc.*, 813 F.3d at 277. In interpreting a written instrument, the Court must give meaning and effect to each provision. *Westport Ins. Corp. v. Tuskegee Newspapers, Inc.*, 402 F.3d 1161, 1166 (11th Cir. 2005) ("a construction which neutralizes any provision of a contract should never be adopted if the contract can be so construed as to give effect to all the provisions"). Thus, the Court cannot construe the Governing Plan Documents to

find an ambiguity that would render any provision meaningless, including the provisions stating that the Plan's benefits were not vested and could be terminated at any time.  SOF ¶¶ 13-14, 18-19, 24-25, 30-31, 37, 39.

Plaintiffs' interpretation would run afoul of these basic principles.  There is simply no reasonable way to construe the Governing Plan Documents here as prohibiting Allstate from terminating plan benefits when the written instruments specifically say that Allstate can amend, modify or terminate the Plan "at any time."  SOF ¶¶ 13, 18, 24, 30, 37, 39.  There is likewise no reasonable way to construe the Governing Plan Documents as creating a lifetime vested benefit when they specifically state that "the Plan's participants or beneficiaries do not have a vested right in any of the Plan's benefits."  SOF ¶¶ 14, 19, 25, 31.  Such an interpretation would contravene both *M & G Polymers* and fundamental rules of contract interpretation by rendering those clear and unambiguous provisions nugatory and of no force and effect.  *See M & G Polymers*, 135 S. Ct. at 936 (criticizing lower court for ignoring plan language).  Accordingly, Allstate is entitled to judgment as a matter of law.

### A.    Allstate's Governing Plan Documents Contain An Unambiguous Reservation of Rights Permitting It To Terminate the Benefit at Any Time.

As discussed above, Allstate's Governing Plan Documents contain clear and unambiguous reservations of rights that are susceptible to only one interpretation:  Allstate did not intend to vest its welfare benefits, including retiree life insurance.  Indeed, numerous courts have found that similar reservation of rights language is unambiguous and defeats a vesting claim as a matter of law.  *See Alday v. Container Corp. of Am.*, 906 F.2d 660, 662, 666 (11th Cir. 1990) (statements in plan documents that the administrators "reserved the right to 'terminate, suspend, withdraw, amend or modify the Plan in whole or part at any time'" clearly and unambiguously gave the administrator the right to amend or modify the plan); *Gallo*, 813 F.3d at

10

270 (statement in plan documents that employer "shall have the right to amend, cancel or reinsure the policies or change the underwriters thereof, so long as [specified] benefits are maintained for the life of this Agreement" defeated a claim that medical benefits were vested); *Musto v. Am. Gen. Corp.*, 861 F.2d 897, 903, 905–06 (statement that plan "may be amended or discontinued at any time" clearly reserved the company's right to change the plan).

Despite clear case law to the contrary, Plaintiffs have tried to argue that the reservation of rights provisions are ambiguous because it is unclear whether they apply to retirees or to the retiree life insurance benefit. Both arguments fail for at least three reasons. First, the Supreme Court rejected a nearly identical argument in *M & G Polymers* when it overturned Sixth Circuit precedent. 135 S. Ct. at 935–36. There, the Sixth Circuit "concluded that 'absent specific durational language referring to retiree benefits themselves, a general durational clause *says nothing* about the vesting of retiree benefits.'" *Id.* at 935 (quoting *Noe v. PolyOne Corp.*, 520 F.3d 548, 555 (6th Cir. 2008)). The Supreme Court held that "[t]hese decisions distort the text of the agreement and conflict with the principle of contract law that the written agreement is presumed to encompass the whole agreement." *Id.* at 936 (citation omitted). So, under *M&G Polymers*, if the language was silent as to retirees, the benefit was not vested. *Id.* at 937.

Second, nothing in the language of the reservation of rights suggests that the provision only applies to employees. In fact, the vesting language expressly states that no *Participant* has a vested right in any of the Plan's benefits. SOF ¶¶ 14, 19, 25, 31. Both the ERISA statutes and the Plan Documents define Participant to include both present and former employees. *See, e.g.*, 29 U.S.C.A. § 1002(7); SOF ¶ 36. By using the defined term "Participant," Allstate clearly and

unambiguously expressed its intent that the non-vesting provision applied to current and former employees alike.[6]

Finally, nothing in the language of the Governing Plan Documents or reservation of rights suggests that Allstate only reserved the right to amend or terminate some welfare benefits but not others.  Rather, the language clearly states that Allstate reserved the right to amend or terminate the Plan (SOF ¶¶ 13, 18, 24, 30, 37, 39), which necessarily includes all welfare benefits described within the Plan.  *See In re Sears Retiree Grp. Life Ins. Litig.*, 90 F. Supp. 2d 940, 945 (N.D. Ill. 2000) ("Courts have held that where a company has reserved its right to change or terminate a plan, *all welfare benefits provided under the plan . . .* do not vest.") (emphasis added) (citing cases from Third and Sixth Circuits).

Therefore, Allstate unambiguously reserved its rights to amend or terminate its welfare plan, including their retirement benefits, at any time.  Allstate is therefore entitled to judgment as a matter of law on Plaintiffs' Section 502(a)(1)(B) claim.

> **B.    The Governing Plan Documents' Description of Retiree Life Insurance Is Consistent With Allstate's Right to Amend or Terminate the Plan.**

To overcome Allstate's unambiguous reservation of rights, Plaintiffs must be able to point to some "affirmative indication of vesting" retiree life insurance.  *Stearns v. NCR Corp*, 297 F.3d 701, 712 (8th Cir. 2002); *see also M & G Polymers*, 135 S. Ct. at 937.  But none of the Governing Plan Documents describes retiree life insurance in a manner that is inconsistent with Allstate's reservation of rights.

Plaintiffs focus on snippets of the Allstate's SPDs.  Specifically, from 1990–2013, the SPDs contain the following statements:

---

[6] Moreover, beginning in 2005, the reservation of rights appeared in an SPD exclusively addressing retiree welfare benefits, including retiree life insurance.  SOF ¶¶ 21-25, 28-31.  Thus, by at least 2005, no one could reasonably assume that the reservation of rights applied only to employees, when it was contained in an SPD specific to retirees.

(1) "Retiree life insurance is provided at no further cost to you";

(2) "Retiree life insurance is provided at no cost to you"; and

(3) "Allstate pays the entire cost of retiree life insurance coverage."

SOF ¶¶ 15, 20, 27, 32.  None of these statements address whether or under what circumstances the benefit may be terminated or modified.  These statements, moreover, cannot be read in isolation.  The Governing Plan Documents must be read as a whole.  *M & G Polymers*, 135 S. Ct. at 937 (Ginsburg, J., concurring).  Reading the Documents as a whole, including the reservations of rights and the statements that Plan Participants have no vested interest, it is clear that the above statements are correct descriptions of the benefits *then available* under the plan, but that they are at all times subject to Allstate's right to amend, modify or terminate those benefits.  For example, at the time of Plaintiffs' retirements, Allstate did pay for the cost of retiree life insurance, and continued to do so for many years.  SOF ¶ 62.  But nothing in the Plan Documents can reasonably be construed as a promise to do so forever.

Numerous courts have held that a promise to pay the present costs of a benefit does not suggest that the employer intended to cover those costs for retirees' lifetimes.  *See, e.g.*, *Jones*, 370 F.3d at 1070–71 (no ambiguity as to vesting where SPD provided that retirees "will continue to be covered after they reach age 65 . . . for the full amount of insurance in effect immediately before retirement"); *American Fed. of Grain Millers, AFL-CIO v. Int'l Multifoods Corp.*, 116 F.3d 976, 982 (2d Cir. 1997) (rejecting argument that statements such as "No Cost To You," and "Plan Costs-Paid by Employer" created ambiguity as to vesting because "*[a] promise to pay present costs is obviously quite different than a promise to pay costs indefinitely*") (emphasis added); *Musto*, 861 F.2d at 905–06 (no ambiguity as to vesting where SPD stated medical benefits would continue into retirement "without further cost to the retiree").

In *In re Sears*, for example, the court considered plan documents and SPDs virtually identical to Allstate's.  90 F. Supp. 2d at 943–44.  In granting summary judgment for Sears, the court held that the plan language and SPDs unambiguously provided that the retiree life insurance benefit did not vest and that Sears reserved the right to amend or terminate the benefit at any time.  *Id.* at 946–47.

Even where SPDs *promise* lifetime benefits—which Allstate's Governing Plan Documents certainly do not—numerous courts have held that such statements do not show an ambiguity to vesting benefits when the SPD also contains an unambiguous reservation of rights.  *See, e.g.*, *Abbruscato v. Empire Blue Cross & Blue Shield*, 274 F.3d 90, 94 (2d Cir. 2001) (holding that SPD was "not susceptible to an interpretation that promises vested lifetime life insurance" where the SPD provided that "life insurance coverage *remains in force for the rest of your life*, at no cost to you," but also separately stated that the employer "reserves its right to amend each of the Plans at any time") (emphasis added); *Sprague*, 39 F.3d at 401 (rejecting argument that plan was ambiguous as to vesting because the lifetime language conflicted with the reservation of rights).

Because Allstate's Governing Plan Documents contain an unambiguous reservation of rights and absolutely no language indicating that retiree life insurance was a vested benefit or otherwise not subject to termination, there is simply no reasonable basis to find any ambiguity with respect to whether Allstate intended to vest retiree life insurance.  Therefore, Plaintiffs' Section 502(a)(1)(B) claim fails as a matter of law.

### III.    Although the Court is Precluded From Considering Extrinsic Evidence, There Is No Evidence of an "Informal Interpretation" to Support an Equitable Estoppel Theory.

Finally, because the Governing Plan Documents unambiguously show that Allstate did not intend to vest retiree life insurance, this Court is precluded from considering any extrinsic

evidence.  *See Alday*, 906 F.2d at 665 (holding that personal benefits booklets and letter sent to employees after retirement seminar must be ignored because the SPD unambiguously set out the rights of the parties).  But even if Plaintiffs could show the Governing Plan Documents were ambiguous, they lack evidence of "an informal interpretation of the ambiguity" to support a pre-*M & G Polymers* theory of equitable estoppel under Section 502(a)(3).  *See Jones*, 370 F.3d at 1069 (explaining that equitable estoppel is available when plaintiff can prove "(1) the relevant provisions of the plan at issue are ambiguous, and (2) the plan provider or administrator has made representations to the plaintiff that constitute an informal interpretation of the ambiguity").

The Eleventh Circuit first discussed the concept of an "informal interpretation" of a plan in *Kane v. Aetna Life Insurance*, 893 F.2d 1283 (11th Cir. 1990).  In *Kane*, the court addressed a term used in the plan (the "effective date of coverage") that was undefined and "subject to varying interpretations."  *Id.* at 1285–86.  In response to direct questions from the participant and his medical provider, Aetna, "acting by and through its duly authorized representative," had "assured" the plaintiff of coverage.  *Id.* at 1286.  The Eleventh Circuit held that Aetna would be required "to adhere to the oral interpretations of the Plan's provisions" but repeatedly reinforced that the interpretations were not inconsistent with, or even modifications to, the plan.  *Id.* at 1285 n.3, 1286; *compare Alday*, 906 F.2d at 665–66 (discussing *Kane* and refusing to apply equitable estoppel where oral representations contradicted the language in the plan).

Plaintiffs here have no evidence to support such an "informal interpretation."  While certain Plaintiffs have produced isolated documents or have alleged hearing oral representations describing retiree life insurance as "paid up," or "fully paid," they have presented no evidence

that these statements—which are themselves susceptible of differing interpretations[7]—were intended to address questions about whether plan benefits could be modified or terminated. There is likewise no evidence that these statements reflect any review or consideration of the the Governing Plan Documents, which would be the starting point for any "interpretation."  Most importantly, these statements are in direct conflict with the unambiguous plan language that the benefits, including retiree life insurance, were not vested and were subject to termination at any time.  Thus, while retiree letters and other oral and written statements may be relevant to the Turner Plaintiffs' Section 502(a)(3) claim, they have no place in the Court's analysis of their Section 502(a)(1)(B) claim.

At most, Plaintiffs have identified representations that were merely a vestige of historical communications that were used by Allstate and its former parent company, Sears, through the mid-1980s.[8]  For example, company brochures that Allstate issued prior to 1988 described retiree life insurance as "paid up."  But such documents dating back to the 1980's simply cannot be deemed an "interpretation" of Plan Documents that were in effect from 1990 forward.

Even if the Eleventh Circuit's equitable estoppel theory for Section 502(a)(1)(B) claims remains viable after *M & G Polymers*, Plaintiffs cannot show that the plan is ambiguous, nor have they identified anything that could be construed as an informal interpretation of the plan. Accordingly, their Section 502(a)(1)(B) claim fails as a matter of law.

---

[7] Some plaintiffs have testified that they understood the terms "paid up" or "fully paid" only to mean that Allstate would pay the full cost of the benefit (SOF ¶¶ 97, 99, 107, 111, 134) as distinguished from the Employee Group Life Insurance Plan, which required employee contributions (SOF ¶ 3).

[8] The term "paid up" does appear to have a historical underpinning.  Accurate or not, the term apparently was used to describe the retiree life insurance benefit in some Allstate employee communications in the 1970's and early-to-mid 1980's, although there is no evidence of the term ever appearing in any materials prepared for general distribution after 1987, or ever being used in any official governing plan documents.  *See* Doc. 261, Opp. to Turner P.'s Motion for Class Cert., at 6, n.8 and cited exhibits.  Be that as it may, brochures dating back to the mid-1980's cannot possibly be considered to be "interpretations" of Plan Documents in effect between 1990 and 2013.  Nor does the fact that some Allstate employees mistakenly may have continued to use the term "paid-up" to describe retiree life insurance, even after the term was discontinued by Allstate and clearly negated by the Plan documents, amount to an "interpretation" of the Plan.

16

## CONCLUSION

For all the foregoing reasons, Allstate's Motion for Summary Judgment Against Plaintiffs'

ERISA Section 502(a)(1)(B) claim should be granted.

Dated: September 20, 2017.

/s/ Richard L. Fenton
Richard L. Fenton
(Admitted *pro hac vice* /IL Bar: 3121699)
Christopher Q. King
(Admitted *pro hac vice* /IL Bar: 6189835)
Amanda M. Moeller
(Admitted *pro hac vice* /IL Bar: 6286890)
DENTONS US LLP
233 South Wacker Drive. Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934


Dara D. Mann
(Admitted *pro hac vice* /GA Bar: 469065)
Uchenna Ekuma-Nkama
(Admitted *pro hac vice* /GA Bar: 957861)
Deborah F. Lempogo
(Admitted *pro hac vice* /MO Bar: 68516 & IL
Bar: 6324234)
DENTONS US LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198

Wade P. K. Carr
(Admitted *pro hac vice* /MO Bar:62786 & KS
Bar: 25105)
Samantha J. Wenger
(Admitted *pro hac vice* /MO Bar: 25322 & KS
Bar: 64230)
DENTONS US LLP
4520 Main Street
Suite 1100
Kansas City, Missouri 64111
Telephone: (816) 460-2400
Facsimile: (816) 531-7545

Meagan D. Self
(Admitted *pro hac vice* /TX Bar: 24078453)
DENTONS US LLP
2000 McKinney Avenue
Suite 1900
Dallas, Texas 75201
Telephone: (214) 259-0900
Facsimile: (214) 259-0910
David J. Middlebrooks
ASB- 8553-D58D
Albert L. Vreeland, II
LEHR MIDDLEBROOKS & VREELAND, P.C.
P.O. Box 11945
Birmingham, AL 35202-1945
Telephone: (205) 323-9262
Facsimile: (205) 326-3008

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 20, 2017, I filed the foregoing with the Clerk of the

Court via the ECF system, which will send notice and a copy of the same to all counsel of record.

<u>*/s/ Richard L. Fenton*</u>
An attorney for Defendant