# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

|  |  |
|---|---|
| GARNET TURNER,<br>individually and on behalf of all others<br>similarly situated, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE CO.,<br><br>    Defendant. | CIVIL ACTION NO. 2:13-CV-685-WKW |
| JOHN E. KLAAS,<br>individually and on behalf of all others<br>similarly situated, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE CO.,<br><br>    Defendant. | CIVIL ACTION NO. 2:15-CV-406-WKW |

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSES TO COMBINED STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTIONS FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

REPLY TO PLAINTIFFS' RESPONSE TO STATEMENT OF UNDISPUTED FACTS ...........4

   I.  Allstate's Summary Plan Descriptions ...........................................................5

      A.  1990–2000 The Group Life SPDs......................................................7

      B.  2001–2009 The Allstate Cafeteria Plan SPDs ...................................9

      C.  2005–2009 The Retiree Life SPD for Former Employees..........................................10

      D.  2010–2013 The Former Claims and Non-Claims Retiree Life SPDs.........................12

   II.  Allstate's Plan Documents ...............................................................................14

      A.  2001–2009 Consolidated Plan Document for the Cafeteria Plan ................................14

      B.  2009-2013 Life Insurance Plans for Former Claims and Non-Claims Employees .....16

   III. Other Documents Containing Reservations of Rights ......................................17

   IV. Allstate's 1994 Special Retirement Opportunity ............................................19

   V.  Allstate's Termination of the Retiree Life Insurance Benefit............................24

   VI. The Named Plaintiffs .......................................................................................25

      A.  The *Turner* Named Plaintiffs ............................................................26

           1.  Vernon Bentley ....................................................................27

           2.  Donald Kerr .........................................................................30

           3.  Kathy Shepherd....................................................................33

           4.  Herbert Vidales ...................................................................35

           5.  Suzanne Willingham ............................................................38

           6.  Herbert Wofford...................................................................42

      B.  The *Klaas* Named Plaintiffs................................................................44

           1.  Frank Berardi .......................................................................44

           2.  John Klaas, Sr. .....................................................................44

3.   Terry Mountford ............................................................................45

4.   David Sangston ............................................................................48

VII.   Plaintiffs' Allegations Regarding Their Requested Surcharge Remedy......................48

# INTRODUCTION

In conjunction with its motions for summary judgment (Docs. 304-305), Defendant

Allstate Insurance Co. ("Defendant" or "Allstate"), Allstate submitted five filings:

- Defendant's Combined Statement of Undisputed Facts in Support of Its Motion for Summary Judgment (the "Combined Statement of Undisputed Facts") (Doc. 306);

- Defendant's Brief in Support of Motion for Summary Judgment Against Plaintiffs' ERISA Section 502(a)(1)(B) Claim (the "Section 502(a)(1)(B) Brief") (Doc. 307);

- Defendant's Brief in Support of Motion for Summary Judgment Against Plaintiffs' ERISA Section 502(a)(3) Claim (the "Section 502(a)(3) Brief") (Doc. 308);

- Defendant's Brief in Support of Motion for Summary Judgment on *Klaas* Plaintiffs' Unique Claims Under ERISA Section 502(a)(3) and 502(a)(1)(B) (the *Klaas*-Specific Brief") and

- Defendant's Brief in Support of Motion for Summary Judgment Against *Turner* Named Plaintiffs Bentley, Kerr, Nixon, Shepherd, Vidales, Willingham, and Wofford and for Summary Judgment Against *Klaas* Named Plaintiff Mountford (the "Brief Addressing Individual Plaintiffs") (Doc. 310).

*See* Docs. 304 and 305 (explaining filings). The *Turner* and *Klaas* Plaintiffs (collectively

"Plaintiffs") each filed a consolidated opposition to Allstate's dispositive motion filings. *See*

Doc. 329, *Klaas* Plaintiffs' Omnibus Opposition to Defendant's Multiple Motions for Summary

Judgment Against *Klaas* Plaintiffs (hereinafter, "Klaas Opp."); Doc. 332, *Turner* Plaintiffs'

Opposition to Defendant's Motion for Summary Judgment Against *Turner* Plaintiffs (hereinafter

"Turner Opp."). While Allstate does not object to the consolidated oppositions, the issues and

facts differ for the different claims brought by different plaintiffs. Accordingly, Allstate is filing

its reply briefs separately in support of each motion.

If the Court grants summary judgment for Allstate based on the arguments raised in the

Section 502(a)(1)(B) brief, it need not reach the issues related to the *Klaas* Plaintiffs' Section

502(a)(1)(B) claim in the *Klaas*-Specific Brief. Similarly, if the Court rules in Allstate's favor

on the issues addressed in the Section 502(a)(3) brief, it need not address the issues related to the *Klaas* Plaintiffs' Section 502(a)(3) claim in the *Klaas*-Specific Brief or the issues raised in the Brief Addressing Individual Plaintiffs.

Although this Court's Local Rules do not require it, Allstate's Combined Statement of Undisputed Facts identified 144 undisputed facts in separately numbered paragraphs with specific citations to the record, consistent with Federal Rule of Civil Procedure 56(c)(1).  In their consolidated summary judgment oppositions, Plaintiffs did not file a separate response to Allstate's Combined Statement of Undisputed Facts.  Again, although the Court's Local Rules do not require separate responses to separately numbered paragraphs, Rule 54(c)(1) nevertheless requires Plaintiffs to "cite[] to particular parts of materials in the record" in order to show that a fact is genuinely disputed.  Therefore, in this district, as in others:

> [The] failure to properly address another party's assertion of fact" enables the court to consider defendant's factual assertions as "undisputed for purposes of the motion" and award summary judgment if those undisputed facts "show that the movant is entitled to" summary judgment.

*Walker v. Montgomery Public Sch. Sys.*, No. 2:12-CV-640-WKW, 2013 WL 4101815, at *2 n.4 (M.D. Ala. Aug. 13, 2013) (quoting Fed. R. Civ. P. 56(e) & (e)(2)-(3)).  Courts in this district need not "scour" lengthy briefs or evidentiary submissions, "unguided by [the non-movant], for possible supporting evidence."  *Daughtry v. Army Fleet Support, LLC*, 925 F. Supp. 2d 1277, 1282-83, 1284-85 (M.D. Ala. 2013).

Nevertheless, for the Court's convenience, Allstate has carefully reviewed Plaintiffs' Opposition briefs and identified the factual assertions and evidentiary materials they cite therein. While Plaintiffs did not directly respond to any separately numbered paragraphs, Allstate has identified the facts that Plaintiffs' Opposition briefs addressed (in whole or in part) below, and Allstate has separately replied to each.

Allstate offers the following brief summary of Plaintiffs' responses:

First, *Turner* and *Klaas* Plaintiffs have failed to expressly admit or deny 117 facts (¶¶ 1-8, 11-12, 15-17, 19-23, 25-29, 31-41, 43-57, 59-63, 65-75, 77-79, 81-84, 86-89, 91, 93-96, 98-101, 103, 105-107, 109-114, 116, 118-122, 124-129, 131, 133-134, 136-138, 140-142, 144). Therefore, these facts are "undisputed for purposes of the motion" Federal Rule of Civil Procedure 56(e)(2) ("If a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]")

Second, *Turner* Plaintiffs do not deny an additional fourteen (14) facts (¶¶ 9-10, 13-14, 18, 24, 30, 42, 85, 90, 92, 104, 117, 123) and *Klaas* Plaintiffs do not deny three (3) additional facts (¶ 130, 132, 135) but, instead, have added arguments about how these uncontroverted material facts should be interpreted.

Finally, *Turner* Plaintiffs' challenges, in whole or in part, to Allstate's remaining ten (10) facts (¶¶ 58, 64, 76, 80, 97, 102, 108, 115, 139, 143) are improper and ineffective.

**REPLY TO PLAINTIFFS' RESPONSE TO STATEMENT OF UNDISPUTED FACTS**

1.      From at least 1990 through 2015, Allstate provided certain eligible retirees life insurance.  *See*, *e.g.* Ex. 4, 1992 Group Life SPD, at AICTurner00011475; *see generall*y *infra* Sections I, II.

**RESPONSE: None**

Allstate' Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

2.      Allstate employees who were continuously insured under Allstate's Employee Group Life Insurance for ten or more years prior to retirement and who retired in accordance with Allstate's retirement policies would receive varying amounts of life insurance at retirement. *See*, *e.g.* Ex. 4, 1992 Group Life SPD, at AICTurner00011475.

**RESPONSE: None**

Allstate' Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

3.      Unlike Allstate's employee life insurance that required employees to contribute to premium costs, Allstate provided retiree life insurance at no cost to the retiree.  *Compare id.* at AICTurner00011468 *with id.* at AICTurner00011475.

**RESPONSE: None**

Allstate' Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

4.      The terms of Allstate's retiree life insurance benefit were set forth in certain Summary Plan Descriptions ("SPDs") and Plan Documents, which are described more fully below.  Ex. 1, Supp. Decl. of Jane Mellon ¶¶ 44-46.

**RESPONSE: None**

<u>Allstate' Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

## I.   Allstate's Summary Plan Descriptions

5.      As a part of its regular and routine business practice, and as required under the federal Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. §1024(b), Allstate regularly distributed SPDs of its various benefit plans to its employees and plan participants, including retirees.  Ex. 1, Supp. Decl. of Jane Mellon ¶ 8.

**RESPONSE: None**

<u>Allstate' Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

6.      Many of the named plaintiffs have admitted receiving the SPDs during and after their employment with Allstate.  *See, e.g.* Ex. 57, Berardi Dep. 95:2-13, 199:17-21; Ex. 60, Mountford Dep. 85:13-16, 110:17-111:4, 182:3-8; Ex. 56, Bentley Dep. 112:15-113:5; 179:14-180:7.

**RESPONSE: None**

<u>Allstate' Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

7.      Prior to the adoption of the Allstate Cafeteria Plan in 2001, discussed below, the SPDs constituted the only Plan documents.  Ex. 1, Supp. Decl. of Jane Mellon ¶ 44.  From 2001-2009 the Allstate Cafeteria Plan, which incorporated the SPDs, constituted the governing plan documents for the retiree life insurance benefit.  *Id.* ¶ 45.  Since September 2009, the Allstate Corporation Life Insurance Plan for Former Non-Claims Employees and the Allstate Insurance Company Life Insurance Plan for Former Claims Employees constituted the governing plan documents for the retiree life insurance benefit.  *Id.* ¶ 46.

**RESPONSE: None**

Allstate' Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

8.     After the adoption of the Allstate Cafeteria Plan, Allstate continued to issue SPDs in addition to the formal consolidated Cafeteria Plan documents.  *See infra* Sections I.B.-II.B.

**RESPONSE: None**

Allstate' Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

9.     None of the SPDs at any time use the terms "paid up," "vested," "permanent," "lifetime," "for the rest of your life," or any other language suggesting an irrevocable benefit to describe the retiree life insurance Benefit.  *See* Exs. 2-27, Allstate's 1990-2013 SPDs.  On the contrary, as more fully described below, all of the SPDs included an express reservation of Allstate's right to amend, modify or terminate the retiree life insurance benefit at any time, and from 1992 forward also included an express statement that no participant or beneficiary had a vested right to retiree life insurance.  Ex. 68, Summary Doc.,[1] Sections I.A.-I.D.

**RESPONSE: "No summary plan description expressly stated that Allstate reserved the 'right to modify or terminate the <u>retiree life insurance</u> benefit at any time.'"  Turner Opp. at 11.  "The language in the SPD's, is unclear at best, omitting express reference to Allstate's argued right to cancel the <u>retiree life insurance plan</u> and instead broadly stated that Allstate 'reserves the right to modify, amend, suspend, or terminate the Plan . . . at any time.'"  Turner Opp. at 46.**

Allstate' Reply:  Allstate stands by its statement of fact in paragraph 9 and, further responding, states that the language of the SPDs speaks for itself and the amendment and termination provision clearly includes the retiree life insurance benefit.

10.     Similarly, none of the Plan Documents use the terms "paid up," "vested," "permanent," "lifetime," "for the rest of your life," or any other language suggesting an irrevocable benefit to describe the retiree life insurance Benefit.  *See* Exs. 28-35, Allstate's 2001-

---

[1] For the Court's convenience, Ex. 68 compiles the relevant provisions from Allstate's SPDs, Consolidated Plan documents, and other benefit communications filed herewith and provides the relevant exhibit numbers and pin cites for each statement referenced.

2009 Plan Documents.  On the contrary, as more fully described below, all of the Consolidated

Plan Documents included an express reservation of Allstate's right to amend, modify or

terminate the retiree life insurance Benefit at any time.  Ex. 68, Summary Doc., Sections II.A.-

II.B.

**RESPONSE: "No summary plan description expressly stated that Allstate reserved the 'right to modify or terminate the <u>retiree life insurance</u> benefit at any time.'"  Turner Opp. at 11.  "The language in the SPD's, is unclear at best, omitting express reference to Allstate's argued right to cancel the <u>retiree life insurance plan</u> and instead broadly stated that Allstate 'reserves the right to modify, amend, suspend, or terminate the Plan . . . at any time.'"  Turner Opp. at 46.**

<u>Allstate' Reply:</u>  Allstate stands by its statement of fact in paragraph 10 and, further responding, states that the language of the SPDs speaks for itself and the amendment and termination provision clearly includes the retiree life insurance benefit.

### A.      1990–2000 The Group Life SPDs

11.      From 1990 to 2000, the terms of Allstate's retiree life insurance benefit were

contained in SPDs titled Allstate Employee Group Life and Accidental Death and

Dismemberment Plan ("Group Life SPDs").[2]  Ex. 68, Summary Doc., Section I.A.

**RESPONSE: None**

<u>Allstate' Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

12.      Under the Section titled "Facts About your Group Life & AD&D Insurance Plan,

" the Group Life SPDs describe the plan as "a welfare plan providing group life and accidental

death insurance" for "regular full-time and regular part-time employees and certain retirees."

*See, e.g.*, Ex. 4, 1992 Group Life SPD, at AICTurner00011466.

**RESPONSE: None**

---

[2] In 1992, 1995 and 1998, Allstate compiled a number of SPDs, including the Group Life SPD into a single binder; however, the Allstate Employee Group Life and Accidental Death and Dismemberment Plan SPD continued to be a freestanding Plan.

<u>Allstate' Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

13.     On the same page, a section titled "Plan Amendment and Termination" also contained the following reservation of rights:

> The Employer intends to continue the Plan indefinitely but reserves the right to change, amend or terminate the Plan or the provisions of the Plan at any time.

*Id.*; *see also* Ex. 68, Summary Doc., Section I.A.

**RESPONSE: "No summary plan description expressly stated that Allstate reserved the 'right to modify or terminate the <u>retiree life insurance</u> benefit at any time.'"  Turner Opp. at 11.  "The language in the SPD's, is unclear at best, omitting express reference to Allstate's argued right to cancel the <u>retiree life insurance plan</u> and instead broadly stated that Allstate 'reserves the right to modify, amend, suspend, or terminate the Plan . . . at any time.'"  Turner Opp. at 46.**

<u>Allstate' Reply:</u>  Allstate stands by its statement of fact in paragraph 13 and, further responding, states that the language of the SPDs speaks for itself and the amendment and termination provision clearly includes the retiree life insurance benefit.

14.     Beginning with the 1992 SPD—and in every SPD thereafter—the reservation of rights also stated that: "[t]he Plan's participants or beneficiaries do not have a vested right in any of the Plan's benefits."  Ex. 68, Summary Doc., Section I.A.

**RESPONSE: "No summary plan description expressly stated that Allstate reserved the 'right to modify or terminate the <u>retiree life insurance</u> benefit at any time.'"  Turner Opp. at 11.  "The language in the SPD's, is unclear at best, omitting express reference to Allstate's argued right to cancel the <u>retiree life insurance plan</u> and instead broadly stated that Allstate 'reserves the right to modify, amend, suspend, or terminate the Plan . . . at any time.'"  Turner Opp. at 46.**

<u>Allstate' Reply:</u>  Allstate stands by its statement of fact in paragraph 14 and, further responding, states that the language of the SPDs speaks for itself and the amendment and termination provision clearly includes the retiree life insurance benefit.

15.     Each of the Group Life SPDs during this time also stated that "[t]he retiree life insurance is provided at no further cost to you."  *Id.*

**RESPONSE: None**

8

<u>Allstate' Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

**B.     2001–2009 The Allstate Cafeteria Plan SPDs**

16.     From 2001 to 2009, the terms of Allstate's retiree life insurance were described in SPDs titled Allstate Cafeteria Plan Summary Plan Description (the "Cafeteria Plan SPDs").  *See, e.g.*, Ex. 8, 2001 Cafeteria Plan SPD, at AICTurner00014165; *see also* Ex. 68, Summary Doc., Section I.B.

**RESPONSE: None**

<u>Allstate' Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

17.     The Cafeteria Plan SPDs consolidated the descriptions of the welfare benefit plans, including—among other things—medical, dental, vision, and retiree life insurance.  *See, e.g.*, Ex. 8, 2001 Cafeteria Plan SPD, at AICTurner00014015.

**RESPONSE: None**

<u>Allstate' Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

18.     The first chapter of the Cafeteria Plan SPD, titled "General Provisions," contained a "Plan Amendment and Termination" section with the following reservation of rights:

> Allstate reserves the right to modify, amend, suspend, or terminate any of the Cafeteria Plan benefits at any time or for any reason, retroactively or otherwise, or to change the contribution amount required from Cafeteria Plan participants by resolution of the Board of Directors of Allstate or by a person duly delegated by the Board to take such action.

Ex. 68, Summary Doc., Section I.B.

**RESPONSE: "No summary plan description expressly stated that Allstate reserved the 'right to modify or terminate the <u>retiree life insurance</u> benefit at any time.'"  Turner Opp. at 11.  "The language in the SPD's, is unclear at best, omitting express reference to Allstate's argued right to cancel the <u>retiree life insurance plan</u> and instead broadly stated**

that Allstate 'reserves the right to modify, amend, suspend, or terminate the Plan . . . at any time.'"  Turner Opp. at 46.

<u>Allstate' Reply:</u>  Allstate stands by its statement of fact in paragraph 18 and, further responding, states that the language of the SPDs speaks for itself and the amendment and termination provision clearly includes the retiree life insurance benefit.

19.     The General Provisions chapter also contained a section titled "No Employment or Vesting," which stated the following: "The participants or beneficiaries of the Cafeteria Plan do not have a vested right in any of the Cafeteria Plan's benefits."  *Id.*

**RESPONSE: None**

<u>Allstate' Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

20.     The Cafeteria Plan SPD's chapter titled "Life Insurance and AD&D" contains a section titled "Retiree Life Insurance," which stated that "retiree life insurance is provided at no cost to you."  *Id.*

**RESPONSE: None**

<u>Allstate' Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

**C.     2005–2009 The Retiree Life SPD for Former Employees**

21.     From 2005 to 2009, Allstate issued separate SPDs specific to benefits available to Allstate retirees.  *See, e.g.*, Ex. 12, 2005 Retiree Life SPD for Former Employees.

**RESPONSE: None**

<u>Allstate' Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

22.     Within these retiree-specific SPDs, the terms of the retiree life insurance benefit were described in an SPD titled "Allstate Group Medical Coverage for Former Employees Plan:

Retiree Life Insurance" (the "Retiree Life SPD for Former Employees").  *See, e.g.*, *id.* at

AICTurner00015594-595.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

23.     The Retiree Life SPD for Former Employees stated that the SPD "summarizes the

provisions of the retiree life insurance coverage that is offered as part of the Allstate Cafeteria

Plan (Cafeteria Plan) Life Insurance and Accidental Death and Dismemberment AD&D Plan."

*See, e.g.*, *id.* at AICTurner00015589.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

24.     The first chapter of the Retiree Life SPD for Former Employees, titled "General

Provisions," contained a "Plan Amendment and Termination" section that contained the

following reservation of rights:

> Allstate reserves the right to modify, amend, suspend, or terminate any of the
> Cafeteria Plan benefits at any time or for any reason, retroactively or otherwise, or
> to change the contribution amount required from the Cafeteria Plan participants
> by resolution of the Board of Directors of Allstate or by a person duly delegated
> by the Board to take such action.

Ex. 68, Summary Doc., Section I.C.

**RESPONSE: "No summary plan description expressly stated that Allstate reserved the 'right to modify or terminate the <u>retiree life insurance</u> benefit at any time.'"  Turner Opp. at 11.  "The language in the SPD's, is unclear at best, omitting express reference to Allstate's argued right to cancel the <u>retiree life insurance plan</u> and instead broadly stated that Allstate 'reserves the right to modify, amend, suspend, or terminate the Plan . . . at any time.'"  Turner Opp. at 46.**

Allstate' Reply:  Allstate stands by its statement of fact in paragraph 24 and, further responding, states that the language of the SPDs speaks for itself and the amendment and termination provision clearly includes the retiree life insurance benefit.

25.     The General Provisions chapter also contained a section titled "No Vesting Rights," which further stated the following: "The participants or beneficiaries of the Cafeteria Plan do not have a vested right in any of the Cafeteria Plan's benefits."  *Id.*

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

26.     The General Provisions chapter also contained a section titled "Plan Financing," which stated that "Allstate pays the entire cost of retiree life insurance coverage."  *Id.*

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

27.     The same chapter also contained a section titled "Paying for Your Benefits," which stated that, "Allstate Insurance Company (Allstate) pays the entire cost of retiree life insurance coverage."  *Id.*

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

### D.     2010–2013 The Former Claims and Non-Claims Retiree Life SPDs

28.     From 2010 to 2013, Allstate continued to issue SPDs specific to former employees but this time issued separate SPDs for former claims and non-claims employees.  *See, e.g.*, Ex. 20, 2010 Former Non-Claims Retiree Life SPD; Ex. 21, 2010 Former Claims Retiree Life SPD.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

29.     The retiree life insurance SPDs issued during this time were titled (1) "Allstate Insurance Company Life Insurance Plan For Former Claims Employees (Retiree Life)" ("Former Claims Retiree Life SPD"); and (2) "Allstate Corporation Life Insurance Plan For Former Non-Claims Employees (Retiree Life)" ("Former Non-Claims Retiree Life SPD").  *Id.*

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

30.     Both the General Provisions chapters of the Former Claims Retiree Life SPD and the Former Non-Claims Retiree Life SPD contained sections titled "Plan Amendment and Termination," which provided as follows:

> Allstate reserves the right to modify, amend, suspend, or terminate the Plan or any of the Plan benefits at any time and for any reason without prior notice, retroactively or otherwise, or to change the contribution amount required from Plan participants by resolution of the Board of Directors of Allstate or by a person duly delegated by the Board to take such action.

Ex. 68, Summary Doc., Section I.D.

**RESPONSE: "No summary plan description expressly stated that Allstate reserved the 'right to modify or terminate the <u>retiree life insurance</u> benefit at any time.'"  Turner Opp. at 11.  "The language in the SPD's, is unclear at best, omitting express reference to Allstate's argued right to cancel the <u>retiree life insurance plan</u> and instead broadly stated that Allstate 'reserves the right to modify, amend, suspend, or terminate the Plan . . . at any time.'"  Turner Opp. at 46.**

Allstate' Reply:  Allstate stands by its statement of fact in paragraph 30 and, further responding, states that the language of the SPDs speaks for itself and the amendment and termination provision clearly includes the retiree life insurance benefit.

31.     Similarly, the General Provisions Chapters also contained a Section titled "No Vesting Rights," which stated the following: "The participants or beneficiaries of the Plan do not have a vested right in any of the Plan's benefits."  *Id.*

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

32.     Finally, under the General Provisions chapter titled "Paying for Benefits," both SPDs described the retiree life insurance benefit as follows: "Allstate Insurance Company (Allstate) pays the entire cost of your Plan benefits."  *Id.*

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

## II.     Allstate's Plan Documents

33.     Beginning in 2001, Allstate started issuing separate Plan Documents in addition to its SPDs.  Ex. 1, Supp. Decl. of Jane Mellon ¶ 45.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

34.     None of the Plan Document used the terms "paid up," "vested," "permanent," "lifetime," "for the rest of your life," or any other language suggesting an irrevocable benefit to describe the retiree life insurance benefit.  *See* Exs. 28-33, Allstate's 2001-2009 Consolidated Plan Documents.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

### A.     2001–2009 Consolidated Plan Document for the Cafeteria Plan

35.     From 2001 to 2009, Allstate consolidated its welfare benefits, including its Allstate Group Life and Accidental Death and Dismemberment Insurance Plan into the

Consolidated Plan Document for the Cafeteria Plan and Certain Welfare Benefit Plan

("Consolidated Cafeteria Plan").  *See, e.g.*, Ex. 28, 2001 Cafeteria Plan, §§, 1.01, 1.04, App. A-1.

      **RESPONSE: None**

      <u>Allstate's Reply</u>:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

      36.     The Consolidated Cafeteria Plans defined Plan participants to include both current and former employees.  Ex. 68, Summary Doc., Section II.A.

      **RESPONSE: None**

      <u>Allstate's Reply</u>:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

      37.     Article 9 of the Consolidated Cafeteria Plans, titled "Amendment and Termination," contained the following provisions.

        <u>Section 9.01</u>   <u>Amendment of the Plans</u>.  The Company reserves the discretionary right to modify or amend the Plans in any respect, at any time and from time to time, retroactively or otherwise, by a written instrument approved either by its Senior Vice President of Human Resources or Chairman of the Board of Directors of the Company, and duly executed on behalf of the Company and ratified by the board of directors of the Company in the subsequent Plan Year, provided, however, that amendments to the Plan that do not result in material increases in the cost of such Plan need not be ratified by the board of directors of the Company.  No Plan amendment shall be valid which would cause the Plan to fail any applicable qualification requirements of Code Section 125, or any successors thereto, so long as such statutes apply to this Plan Document.

        Notwithstanding the foregoing, the Senior Vice President of Human Resources of the Company acting on behalf of the Company may amend the Plans through the issuance of revised SPDs (and summary of material modifications).

        <u>Section 9.02</u>   <u>Termination of the Plans</u>.  The Company reserves the right to terminate the Plans at any time as designated by a written instrument approved either by its Senior Vice President of Human Resources or Chairman of the board of directors of the Company, and duly executed on behalf of the Company . . . .

Ex. 68, Summary Doc., Section II,A.

      **RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

**B.    2009-2013 Life Insurance Plans for Former Claims and Non-Claims Employees**

38.    In September 2009, Allstate created two new welfare benefit plans—the Allstate Insurance Company Plan for Former Claims Employees ("Plan for Former Claims Employees") (Ex. 35) and the Allstate Corporation Life Insurance Plan for Former Non-Claims Employees ("Plan for Former Non-Claims Employees") (Ex. 34), which governed the terms of the retiree life insurance from the time of their adoption until the benefit was terminated in 2013. Ex. 1, Supp. Decl. of Jane Mellon ¶ 46.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

39.    Article 10 of the Insurance Plans for Former Claims and Non-Claims Employees, titled "Amendment and Termination," contained the following provisions.

10.1    <u>Amendment of the Plan.</u>  The Company reserves the discretionary right to modify or amend the Plan in any respect, at any time and from time to time, retroactively or otherwise, by a written instrument approved by its Senior Vice President of Human Resources of Allstate Insurance Company, provided, however, that amendments to the Plan that result in material increases in the cost of the Plan must be reported to the Board of Directors of the Company on an annual basis.  No Plan amendment shall be valid which would cause the Plan to fail any applicable qualification requirements of Code Section 79, or any successors thereto, so long as such statutes apply to this Plan.

10.2    <u>Termination of the Plan.</u>  The Company reserves the right to terminate the Plans at any time by action of its Board of Directors of the Company.

Ex. 68, Summary Doc., Section II.B.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

### III.    Other Documents Containing Reservations of Rights

40.    In addition to the SPDs and Plan Documents, Allstate distributed to its employees a number of other documents that disclosed that its welfare plans, which included retiree life insurance, could be terminated at any time.  *See infra* ¶¶ 41-44.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

41.    Indeed, Plaintiff Mountford, who worked in Human Resources accounting, acknowledged that the reservation of rights appeared throughout the benefits materials.  Ex. 60, Mountford Dep. 154:19 ("[I]t was boilerplate throughout the benefits.")

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

42.    From at least 1990 through 1999, Allstate annually distributed to its employees a benefits booklet titled "Your Personal Statement of Total Compensation," which contained the following reservation of rights:

> Please refer to the Plan documents, Summary Plan Descriptions, and Profit Sharing Fund Prospectus for the terms and conditions, including limitations and exceptions, for each Plan. If there are any discrepancies between this statement and the official Plan documents, the Plan documents will govern.
>
> ***While Allstate Insurance Company . . . expect[s] to continue the Plans described herein indefinitely, [the] Company reserves the right to change, amend or terminate [the] Plans at any time.***  Participation in any of the Plans does not constitute a guarantee of employment.

*Id*., Section III.A.

**RESPONSE: Plaintiffs state:**

**From at least 1990 through 1999, Allstate annually distributed to its employees a benefit booklet titled "Your Personal Statement of Total Compensation."  Doc. 306 at 12.  These booklets described an employee's**

17

> **"total compensation package."  See, e.g. Exhs. 15-19.  These booklets also
> described the benefits an Allstate employee would receive at retirement,
> specifically Retiree Medical Coverage and Retiree Life Insurance.  See, e.g.
> Exh. 18 at 14.  Notably, there is no reservation of Allstate's right to cancel
> retiree life insurance, yet on the same page and clearly underneath a
> different section, Allstate reserved its rights concerning "Retiree Medical
> Coverage."  Id.; see also Doc. 44-9 (excerpt from Spiewak's "Your Personal
> Statement of Total Compensation.").**

**Turner Opp. at 11 (citing Plaintiffs' Exhibits 15-19 and Ex. 18 at 14).**

Allstate's Reply:  Plaintiffs admits this fact as stated.  Plaintiffs do not deny that the
benefits booklet contained a reservation of rights.  This fact does not state anything about the
reservation of rights being specific to any particular benefit.  Therefore, the extraneous evidence
and legal argument Plaintiffs attempt to introduce is immaterial.  This fact is "undisputed for
purposes of the motion" under Federal Rule of Civil Procedure 56(e).

43.      Allstate also annually distributed to employees Benefit Guides to Annual Benefit

Enrollment, which contained reservations of rights, such as the following:

> Please refer to the Summary Plan Descriptions (SPD) and plan documents for the
> terms and conditions, including limitations and exceptions, for each plan. . . .
> ***While Allstate expects to continue its benefit plans indefinitely, Allstate reserves
> the right to change, amend, or terminate the plans at any time.***

Ex. 68, Summary Doc., Section III.B.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for
purposes of Allstate's motions for summary judgment.

44.      Finally, Plaintiffs Drake, Scholl, Cuddington, Vidales, and Dructor, who each

retired between 1996 and 2002, all received letters at retirement that either stated expressly that

Allstate had the right to modify or terminate its welfare plans at any time, or that referred the

retiree to the SPDs, which said the same thing.  Ex. 68, Summary Doc., Section III.C.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for
purposes of Allstate's motions for summary judgment.

IV.     **Allstate's 1994 Special Retirement Opportunity**

45.     Between 1993 and 1994, Allstate developed a Special Retirement Opportunity

("SRO") as a means to increase efficiency and consolidate departments without significant

layoffs.  Ex. 43 Decl. of Gregory Burns[3] ¶ 15.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

46.     Beyond lowering the retirement age for eligible employees, the SRO offered four

features that were not available to traditional retirees:

- a salary continuation benefit, in which employees were entitled to receive an amount equal to twelve months of their annualized base salary  (*id.* Ex. D, at AICTurner00012502-505);

- an enhanced retirement benefit, which supplemented the pension earned by the employee under the Allstate Retirement Plan I  (*id.* Ex. D, atAICTurner00012492);[4]

- treatment as having 30 years-of-service when determining cost-sharing for Allstate's retiree medical benefit  (*id.* Ex D, at AICTurner00012495); and

- three-years of credit towards Allstate's retiree life insurance eligibility requirement that an employee must have participated in the Group Life and Accidental Death and Dismemberment Insurance Plan for ten (10) continuous years immediately prior to retirement.  (*id* Ex. D, at AICTurner00012484-485, AICTurner00012495).

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

47.     At the time of the SRO, Allstate offered retiree life insurance through its Group

Life Plan, which is described in Section I.A.

**RESPONSE: None**

---

[3] Allstate first submitted the Declaration of Gregory Burns in Support of Allstate's Opposition to the *Klaas* Plaintiffs' Motion for Class Certification, Doc. 269-1.  For the Court's convenience, Allstate resubmits it here as Ex. 43.

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

48.     The Group Life SPD was distributed to all Allstate employees, including those eligible for the SRO, as a matter of Allstate's routine business practice.  Ex. 1, Supp. Decl. of Jane Mellon ¶ 8.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

49.     After the SRO was announced in September 1994, Allstate provided the following written materials to eligible SRO employees (Ex. 43, Decl. of Gregory Burns, Ex. E  at AICTurner00012455 (listing components of SRO Kit distributed to each SRO eligible employee)):

a.     **Special Retirement Opportunity Fact Sheet for Employee Briefing** ("SRO Fact Sheet") - The SRO Fact Sheet was a one page "brief overview" of the SRO, which stated at the top of the page, "The information shown is subject to the terms and conditions described in the Summary Plan Description contained in the SRO Details booklet and the plan documents and Summary Plan Descriptions for the specific plans.  If there are any discrepancies between the fact sheet and the actual plan documents, the plan documents will govern.  The benefits, plans, and programs described or referred to in this fact sheet may be amended or terminated at any time."  *Id.*, Ex. C at AICTurner00012452.  In listing the SRO Components, it described the Retiree Life Enhancement as "three years credited to the ten year participation requirement in the plan." *Id.*

b.     ***SRO Details* Booklet** -The SRO Details Booklet contained the details of the SRO offering.  It stated that "[t]he Special Retirement Opportunity is governed by the provisions in

this booklet.  The salary continuation portion of the SRO is governed by the 'Salary Continuation

Summary Plan Description' section of this booklet.  ***Other benefits outlined in this booklet are***

***governed by the provisions of other plans.  Please refer to the applicable summary plan***

***descriptions for those plans." Id***., Ex. D at AICTurner00012483 (emphasis added.)  When

discussing retiree life insurance, it referred to the "Group Life and Accidental Death and

Dismemberment Insurance Plan," and described the modification to the eligibility criteria as

follows: "[w]hen you retire, you will receive a credit of an additional three years of service

toward your 10 year participation requirement for retiree life insurance."  *Id.*at

AICTurner00012485.  It further explained that "[r]etiree life insurance is provided at no cost to

you.  See your summary plan description for details."  *Id.* at AICTurner00012495.  The Booklet

also contained the following reservation of rights: "[t]he benefits, plans, and programs described

or referred to in this booklet may be modified or terminated at any time. "  *Id.* at

AICTurner00012497.

        c.        **SRO Your Decision Guide** ("SRO Decision Guide") - The SRO Decision Guide

was a workbook designed to help SRO eligible employees determine if they could afford to

retire.*Id.*., Ex. E at AICTurner00012455.  It contained the following reservation of rights: "[i]f

there is any disagreement between this guide, the *SRO Details* booklet and the summary plan

documents, the *SRO Details* booklet and the summary plan documents will govern."  *Id*. at

AICTurner00012466.

        d.        **Personalized Statement of SRO Benefits** ("Personalized SRO Benefit

Statement") - The Personalized SRO Benefit Statement listed the specific benefits available to an

eligible employee.  *Id*., Ex. F at AICTurner00012472-2475.  It contained the following

reservation of rights:  "Legal documents govern the specific plans described or referred to in this

statement and are available for you to review.  Please refer to the plan documents, summary plan descriptions, and Profit Sharing Fund prospectus for the terms and conditions of each plan.  If there are any discrepancies between this statement and the actual plan documents, the plan documents will govern. Allstate and Sears reserve the right to amend or terminate their respective plans at any time."  *Id.* at AICTurner00012475.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

50.     Allstate also provided all SRO eligible employees with a take-home video that discussed the SRO opportunity.  *Id.* ¶ 32.  According to the video's script, the video concluded by displaying the following written statement:

> This videotape provides only a brief overview of the Special Retirement Opportunity and the retirement benefits for which certain employees may be eligible.  The information in the videotape is subject to the terms and conditions described in the Summary Plan Description contained in the "SRO Details" booklet and the plan documents and Summary Plan Descriptions for the specific plans.  If there are any discrepancies between the videotape and the actual plan documents, the plan documents will govern.  The benefits, plans and programs described or referred to in this videotape may be amended or terminated at any time.

*Id.*, Ex. J at AICTurner00077290.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

51.     On December 2, 1994, Allstate required all SRO-eligible employees to turn in an SRO Election Form, which indicated whether or not he or she had decided to accept the SRO. If an employee had decided to accept the SRO, they were also required to complete the portion

of the SRO Election Form that contained a General Release and Waiver Agreement ("SRO

Release").  *Id*., Ex. D at AICTurner00012508-2510.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for
purposes of Allstate's motions for summary judgment.

52.     None of the above-described documents—the Group Life SPD, the SRO Fact

Sheet, the SRO Details Booklet, the SRO Decision Guide, the Personalized SRO Benefit

Statement, the videotape script, or the SRO Release—use the terms "vested," "lifetime,"

"permanent," or any other language suggesting an irrevocable benefit to describe Allstate's

welfare benefits, including retiree life insurance.  *See generally Id*., Ex. B, C, D, E, F and J.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for
purposes of Allstate's motions for summary judgment.

53.     Ultimately, approximately 600 employees accepted the SRO.  Ex. 66, J. Wilson

Dep. 175:5-11.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for
purposes of Allstate's motions for summary judgment.

54.     Of those who accepted the SRO, just over 400 were eligible for Allstate's retiree

life insurance benefit.  Ex. 66, J. Wilson Dep. 175:12-22.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for
purposes of Allstate's motions for summary judgment.

55.     Of the more than 400 SRO retirees who were eligible for retiree life insurance, 16

benefited from the three years of additional participation credit offered under the SRO—the

remainder had already participated in the Group Life Plan for 10 years prior to retirement and would have received retiree life insurance on the date of their retirement, regardless of whether they had accepted the SRO or signed the SRO Waiver.  Ex. 66, J. Wilson Dep. 173:1-176:6, 296:9-12.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

56.     None of the SRO named Plaintiffs received any benefit from the three-year participation credit because they already met the participation eligibility requirement.  Opp. to *Turner* Mot. To Class Cert, Ex. 112, Doc. 265-12 ¶¶ 122-134 (hereinafter "Doc. 265-12, Terry Report").

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

57.     There is no evidence that any named *Klaas* Plaintiff received an alleged misrepresentation about Allstate's retiree life insurance after they formally retired under the SRO.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

**V.     Allstate's Termination of the Retiree Life Insurance Benefit**

58.     On September 9, 2013, Allstate exercised the Amendment provisions of the Insurance Plans for Former Claims and Non-Claims Employees to terminate the retiree life insurance benefit, to be effective as of January 1, 2016.  Ex. 36, 2013 Plan Amendments, AICTurner00054308-322.

**RESPONSE: Plaintiffs state:**

**In truth, Tom Wilson, Allstate's CEO, and Jim DeVries, Executive Vice President, exercised their authority to terminate the benefit long before the plan was ever amended.  See Section III(c), supra.  The amendment of the plan was merely the "fait accompli."  The decision to terminate the benefit, and the letter sent in July, 2013 advising the retirees of the cancelation, preceded the perfunctory amendment of the plan.  Id.  Tellingly, the July 2013 letter alerting the retirees of the termination of the benefit made no mention of any amendment of the plan.  Id.  The deed was done.  Allstate made the decision to cancel the retiree life insurance benefit, and communicated that shocking fact to 14,000 retirees before it put pen to paper and amended the plan.  Doc. 293-17, Rozanski Depo., 123:1-12.**

Turner Opp. at 23.

Allstate's Reply:  The evidence cited by Plaintiffs does not dispute the cited fact. This fact does not state that the amendment of the plan occurred prior to the July 2013 letter notifying retirees of termination of their retiree life benefit. Because Plaintiffs  do not cite any evidence that contradicts this fact, it is "undisputed for the purposes of the motion" under Federal Rule of Civil Procedure 56(e).

59.    No evidence exists that Allstate considered terminating the retiree life insurance

benefit until late 2012, when it reviewed its benefit programs in connection with an overall

assessment of competitive position and cost-control.  See Ex. 72, T. Wilson Dep. 36:8-37:22.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

## VI.    The Named Plaintiffs

60.    Each of the named Plaintiffs in both *Turner* and *Klaas* alleges receiving or

hearing statements—before or during their employment with Allstate and prior to their

retirement—that they claim misrepresented the nature of the retiree life insurance benefit.  *See*

*generally* Doc. 260-2, App'x A to *Turner* Pls.' Mot. for Class Cert.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

61.     No named Plaintiff claims to have heard or received any alleged misrepresentation after June 2006.  *Id.*

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

62.     Allstate paid the retiree life insurance premiums for both the *Turner* and *Klaas* named Plaintiffs from the date of their retirement through December 31, 2015.  *See*, *e.g.*, Ex. 45, Master Retiree List Excerpt,  (showing monthly premium payments for named Plaintiffs). [5] Thereafter, Allstate continued to pay premiums for the named Plaintiffs' retiree life insurance as ordered by the Court's preliminary injunction.  Doc. 121, Memo. Op. and Order at 28-29.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

**A.     The *Turner* Named Plaintiffs**

63.     The fourteen named *Turner* Plaintiffs[6] retired on the following dates (listed in chronological order):

    a.  Donald Kerr - August 30, 1991

    b.  Theodore Spiewak - December 30, 1994

    c.  Alberta Nixon - December 31, 1994

    d.  Suzanne Willingham - December 31, 1996

    e.  Herbert Vidales - December 30, 1999

---

[5] The premium information summarized in Ex. 45 comes from Allstate's premium files which are available for inspection upon request.

[6] The Second Amended Complaint in the *Turner* action included 17 named Plaintiffs, but only 14 remain. Plaintiffs Fichter and Harbin died after this action was filed, and Allstate has filed Suggestions of Death with the Court. Doc. 218, Fichter Suggestion of Death; Doc. 219, Harbin Suggestion of Death.  Plaintiff Dructor voluntarily dismissed her claim on June 29, 2017, following her deposition.  Doc. 233, Stipulation of Dismissal of Dructor.

      f.   James Cartrette - December 31, 1999

      g.   Judith Cuddington - March 14, 2000

      h.   William Huff - May 31, 2000*

      i.   Charlie Drake - January 18, 2002

      j.   Richard Scholl - April 30, 2002

      k.   Herbert Wofford - November 29, 2002

      l.   Garnet Turner - June 30, 2003*

      m.   Kathryn Shepherd - January 1, 2007

      n.   Vernon Bentley - October 31, 2010*

Ex. 45, Master Retiree List Excerpt[7]; *see also* Ex. 56, Bentley Dep. 13:7-8; , 43:12-13; Ex. 63,

Deposition transcript of Garnet Turner ("Turner Dep.") 33:1-4, 64:7-18; Ex. 58, Deposition

transcript of William Huff ("Huff Dep.") 11:11-15.)

    **RESPONSE: None**

    <u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

        1.    <u>Vernon Bentley</u>

    64.     Bentley retired from Allstate on October 31, 2010.  Ex. 56, Bentley Dep. 13:7-8,

43:12-13.

    **RESPONSE: Plaintiffs state: "Bentley . . . retired July 1, 2000. Exh. 5, Bentley Depo., 38:7-8; 200:3-2."  Turner Opp. at 60.**

    <u>Allstate's Reply:</u>  Plaintiffs have failed to expressly admit or deny this fact; therefore it is uncontroverted.  The date Plaintiffs cite as Bentley's retirement date is actually the date he converted to an exclusive agent.  Bentley terminated his exclusive agency agreement, and became entitled to his retirement benefits, on October 31, 2010.  Ex. 56, Bentley Dep. 13:7-8, 43:12-13; 200:3-2.

---

[7] The retirement dates summarized in Ex. 45 originate from Hewitt and Allstate records that have been produced in the litigation.  The retirement dates listed in Ex. 45 for Bentley, Turner, and Huff are the dates these named Plaintiffs converted to exclusive independent agents.  Their deposition transcripts provide the date they retired from their exclusive independent agent status.

65.     Bentley stated that he was told in the early 1980s—during the hiring process and shortly after starting at Allstate— by his supervisor, Ron Corbin, and a state sales manager, Dale Wilson, that the retiree life insurance benefit was "paid up."  *Id*. at .38:23-39:3; 83:1-22; 86:8-23;89:3-90:17;129:12-21;130:1-21.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

66.     At a minimum, Bentley received the 1991 Group Life SPD, because he produced it before his deposition.  *Id*. at 112:15-113:5.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

67.     Bentley's former employer did not offer him medical insurance, disability benefit, stock, paid vacation, life insurance or retiree life insurance.  *Id.* at 84:21-86:7.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

68.     In 2000, Bentley converted from being an Allstate employee to an independent exclusive agent under the Preparing for the Future Program.  *Id.* at 197:5-198:4, 199:2-200:25.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

69.     As a part of the Preparing for the Future Program, Bentley acknowledged in writing that he received and understood a booklet that explained the impact of the conversion to his plan benefits.  Ex. 70, Bentley Ltr. of Understanding.  The booklet directed Bentley to

Allstate's SPDs and clearly stated "Allstate reserves the right to change, amend or terminate the plans or programs at any time." Ex. 71, Decl. of Patrick Cochrane,[8] Ex. 63.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

70.   He then retired in 2010 because his agency was "becoming uncompetitive" and losing money. Ex. 56, Bentley Dep. 70:1-18.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

71.   His wife's health and his age were also a factor in his retirement decision. *Id.* at 70:17-25.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

72.   When asked whether there were any other concerns that led to his retirement decision, Bentley responded "no." *Id.* at 71:1-4.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

73.   At the time of his retirement, Bentley had a separate $200,000 life insurance policy which he still maintains. *Id.* at 55:11-57:6; Ex. 53, Bentley Gen. Am. Life Ins. Pol., Bentley_0030-0081.

---

[8]Allstate first submitted the declaration of Patrick Cochrane in Support of Allstate's Opposition to the *Turner* Plaintiffs' Motion for Class Certification, Doc. 266-2.  For the Court's convenience, Allstate resubmits it here as Ex. 71.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

74.     Bentley purchased the policy in 2003.  *Id.*, Bentley_0030-0081.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

75.     Bentley has never considered what he would have done if Allstate had not offered

the retiree life insurance benefit.  Ex. 56, Bentley Dep. 85:21-86:7.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

76.     Bentley acknowledges that he never communicated with anyone in human

resources about the retiree life insurance benefit.  *Id*. at 92:1-25; 207:1-208:2.

**RESPONSE: Plaintiffs state:**

**Bentley's testimony on two occasions is that he does "not recall any of that."
Exh. 5, Bentley Depo., 92:5-21; 207:18-21.  A failure to recall is not
tantamount to an admission that an event occurred or did not occur, as
Allstate should know.**

**Turner Opp. at 22.**

Allstate's Reply:  Plaintiffs cite no support for their proposition that a "failure to recall is not tantamount to an admission."  Bentley clearly testified when asked if he communicated with anyone in HR, "No, ma'am, that I recall."  Ex. 56, Bentley Dep. 92:5-8.

2.     Donald Kerr

77.     Kerr retired from Allstate in 1991.  Ex. 59, Kerr Dep. 27:20-24.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

78.     Kerr started thinking about retiring from Allstate in 1989 because he wanted to do

"catastrophe work." *Id.* at 35:15-37:3.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for
purposes of Allstate's motions for summary judgment.

79.     Kerr ultimately made the decision in approximately July, 1991 to retire from

Allstate because he "didn't want to go through another winter."  *Id.* at 32:10-33:3, 35:15-37:3.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for
purposes of Allstate's motions for summary judgment.

80.     Kerr alleges that after making the decision to retire, he was told by Don McGill,

the officer manager in August 1991, that he would receive a "paid-up" life insurance policy that

"wouldn't cost [him] anything."  *Id.* at 39:24-42:25.

**RESPONSE: Plaintiffs state:**

**In actuality, Kerr made the decision to retire "two months prior to" his
retirement date of September 1991.  Exh. 14, Kerr Depo., 35:15-20.  He
testified that he attended a "retirement seminar" in about "1990."  Id. at
28:15-17.  Simple math confirms that the retirement seminar occurred prior
to Kerr making his decision to retire.  When asked by Allstate whether he
heard anyone at that seminar in about 1990 represent the retiree life
insurance as "paid-up," Kerr responded "Yes, yes.  In one of the seminars it
was – it was told."  42:22-45:4.**

**Turner Opp. at 71.**

Allstate's Reply:  Plaintiffs' response inaccurately describes Kerr's testimony and the
evidence cited.  The only time Kerr testified that he recalls the term "paid up" being used was
after he made the decision to retire.  When asked whether he recalled the term "paid up" being
used during the retirement seminar in 1990, Kerr responded "No I don't recall it precise"  Kerr
Dep. 45:3-47:25.

81.     Nixon retired from Allstate in December 1994. Ex. 61, Nixon Dep. 101:11–18.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

82.   Nixon started thinking about retirement about two years before her eventual retirement because she was "ready to leave."  *Id*. at. 30:16-31:13.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

83.   Sometime in 1994, Nixon decided to retire from Allstate.  Nixon alleges that after announcing her decision to retire, she was told by Pat McCullar, a HR representative in the Woodlands, Texas region, that she would receive $20,800 in retiree life insurance for the rest of her life.  *Id.* at 46:1–47:2.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

84.   After announcing her retirement, Nixon also received a letter in 1994 indicating that her $20,800 in retiree life insurance would "remain at that amount without premiums for the remainder of your life."  *Id.* at 85:22–86:15; Ex. 52, Allstate Ltr. To Nixon, Nixon 2_000005–06.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

85.   Nixon admitted that the alleged representations about the retiree life insurance benefit occurred after she had notified Allstate of her intent to retire.  Ex. 61, Nixon Dep. 46:1–47:2.

**RESPONSE: Plaintiffs state:**

**Allstate conflates the date Nixon began thinking about retirement, which was two years before her actual retirement date, with the date of her actual**

**decision to and date of actual retirement.  Doc. 310 at 29.  Nixon retired on December 31, 1994.  Exh. 13, Nixon Depo. 63:24-64.  Allstate conveniently fails to inform this Court that Allstate's Houston Regional Office Human Resources Department sent her a letter on October 13, 1994, prior to her retirement date, that states upon her retirement her retiree life insurance "will reduce to $20,800 and remain at that amount <u>without premium for the remainder of your life</u>."  Doc. 44-11 at 2 (emphasis added).  Her testimony, although characterized otherwise by Allstate, is that she notified her <u>family</u> that she wanted to retire but there is no testimony that she notified Allstate of her intent to retire prior to being promised free life insurance for the remainder of her life.  Exh. 13, Nixon Depo., 30:16- 32:11.**

**Turner Opp. at 72.**

<u>Allstate's Reply:</u>  Plaintiffs' response inaccurately describes Nixon's testimony and the evidence cited.  Nixon's deposition testimony is clear that she received the alleged misrepresentation after she had notified her family *and* "the company" of her decision to retire. Nixon Dep. 30-33, 46:1-47:2.

### 3.   Kathy Shepherd

86.   Shepherd began her career at Allstate on or around April 25, 1972.  Ex. 62,

Shepherd Dep. 7:11-12.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

87.   Shepherd retired from Allstate in January 2007.  *Id.* at 20:4-6, 39:4-6.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

88.   Shepherd testified that she retired at age 55 because she had "planned for it [her]

whole Allstate career."  *Id.* at 94:25-95:22.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

89.     Shepherd claims that in 2006 presenters at a pre-retirement seminar held in Roanoke, Virginia told employees that they "would receive paid-up life insurance at no cost until our death." *Id.* at 93:2-94:3.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

90.     In response to an email from Al Baughman of Baughman & Associates Insurance stating that "No, I think you have to officially retire fro[m] Allstate for that benefit.  What employees are experiencing has become quite the norm.  Benefits get changed after you retire w/no recourse available.  That's the precise reason tha[n] I tell folks to rely on your personal policy (one that you own and pay for) rather that a company policy (that's extra)," Shepherd stated, "I agree with you.  I did plan ahead however [s]o many didn't and now they're having to deal with the change." Ex. 55, Corr. Re: Allstate Ret. Life Ins. Update, Shepherd Email_00000279.

**RESPONSE: Plaintiffs state:**

**Contrary to Allstate's innuendos, Shepherd does not testify that she purchased this additional insurance because she knew that Allstate could take away her retiree life insurance.  In fact, she testifies that she was told at retirement seminars prior to her retirement that "Allstate was going to provide the employee – retirees life insurance at no cost until death." Exh. 9, Shepherd Depo., 44:10-18.  Further, in response to Allstate's question of "Did the availability of retiree life insurance in any way affect your decision about when to retire?," Shepherd testified that "All aspects of everything going into my retirement counted.  My pension.  My life insurance." Id. at 94:20-24.**

**Turner Opp. at 73.**

Allstate's Reply:  Plaintiffs have failed to expressly admit or deny this fact; therefore it is uncontroverted.  Further Plaintiffs response does not dispute the fact stated in paragraph 90 but merely introduces extraneous evidence on how Shepherd's statement that  she "planned ahead" should be interpreted.

91.     In 1994, Shepherd purchased a life insurance policy with Jackson National Life

Insurance Company.  Ex. 54, Kathryn Shepherd Jackson National Life Insurance Policy,

Shepherd_0139-76.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for
purposes of Allstate's motions for summary judgment.

92.     Shepherd testified that the retiree life insurance benefit was important to her, but

she never considered how her retirement plans might have changed if she did not have the

benefit.  Ex. 62, Shepherd Dep. 94:20-24, 95:23-97:5.

**RESPONSE: Plaintiffs state:**

**[I]n response to Allstate's question of "Did the availability of retiree life
insurance in any way affect your decision about when to retire?," Shepherd
testified that "All aspects of everything going into my retirement counted.
My pension.  My life insurance."  [Exh. 9, Shepherd Depo.,] 94:20-24.**

**Turner Opp. at 73.**

Allstate's Reply:  Plaintiffs have failed to expressly admit or deny this fact; therefore it is
uncontroverted.  Further, this fact expressly acknowledges that the retiree life benefit was
important to Shepherd.

4.      Herbert Vidales

93.     Vidales retired from Allstate on December 30, 1999.  Ex. 64, Vidales Dep. 22:4-5;

Ex. 45, Master Retiree List Excerpt.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for
purposes of Allstate's motions for summary judgment.

94.     Vidales testified that he retired due to health reasons, including hearing loss.  Ex.

64, Vidales Dep.  33:5-34:5.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

95.     When asked at his deposition whether "there was anything else other than the health issues and the hearing concern" that factored into his retirement decision, Vidales answered, "No, not that I remember." *Id.* at 33:13-15.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

96.     Vidales stated that he was told that the retiree life insurance benefit was "fully paid" for the rest of his life.  *Id.* at 46:17-47:7.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

97.     Vidales claimed that a financial advisor from Dean Witter, who was either a broker or a vice president, made the alleged representations upon which his claim is based.  *Id*. at 59:7-61:11.

**RESPONSE: Plaintiffs state:**

**Allstate fails to mention that this financial adviser was there "representing [Allstate]" in order to explain benefits and options available to Allstate retirees. Exh. 1, Vidales Depo., 61:2-20.**

**Turner Opp. at 21.**

<u>Allstate's Reply:</u>  Plaintiffs' cited testimony does not support its statement.  Further, Vidales acknowledged that the Dean Witter employee was there to give advice on what he should do with his assets after retirement. Ex. 64, Vidales Dep. 36:15-37:7.

98.     Vidales acknowledged that the Dean Witter employee's role was to provide him with advice regarding investment options.  *Id.* at 36:15-37:7.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

99.     Vidales also claimed that his co-workers had the expectation that the retiree life insurance benefit would be "fully paid by the company for the rest of [their lives]."  *Id*. at 46:2-9.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

100.    Vidales also claimed that his managers, not anyone in Human Resources, made representations that the Retiree Life Insurance benefit was "fully paid," but cannot recall specific names or instances.  *Id.* at 46:17-47:7; 105:5-106:17.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

101.    Vidales stated that Allstate never used the term "paid up."  *Id.* at 43:14-16.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

102.    Vidales admitted that he never asked anyone about the ROR language.  *Id*. at 172:15-173:11.

**RESPONSE: Plaintiffs state:**

**That is not Vidales' complete answer.  When asked if he asked anyone about the ROR language, he answered, "No.  People that came from home office, they never bothered, you know, to explain this."  Exh. 1, Vidales Depo., 173:9-11.**

**Turner Opp. at 21.**

<u>Allstate's Reply:</u>  The evidence Plaintiffs cite does not dispute this fact.

103.    Vidales acknowledged that there was nothing unclear about the ROR language.

*Id.* at 173:12-173:18.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

104.    Vidales stated that had he read the ROR language in the SPDs, he would have understood that his retiree life insurance benefit could be cancelled by Allstate.  *Id.* at 84:5-85:22, 94:4-21, 95:15-97:11, 150:4-151:24.

**RESPONSE: Plaintiffs state:**

**Allstate fails to acknowledge, in response to being asked whether he would have understood that his retiree life insurance could be cancelled had he read a reservation of rights in a document he signed, Vidales testified that he would not have.  Exh. 1, Vidales Depo., at 163:14-164:10.**

**Turner Opp. at 74.**

Allstate's Reply:  Plaintiffs have failed to expressly admit or deny this fact; therefore it is uncontroverted.  Further this fact as stated does not state anything about a reservation of rights in a "document [Vidales] signed" but instead discusses the SPDs.  Therefore, the extraneous evidence Plaintiffs attempt to introduce is immaterial.  The undisputed fact is, Vidales testified that he would have understood the reservation of rights language had he read the SPDs.

105.    Vidales also testified that he purchased an additional $1,000,000 accidental death policy in 2001—two years after retirement—because he did not believe that the retiree life insurance provided him with sufficient coverage.  *Id.* at 66:11-23, 73:22-74:24.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

    5.    Suzanne Willingham

106.    Willingham retired from Allstate on December 31, 1996.  Ex. 45, Master Retiree List Excerpt.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

107.    Willingham stated that she was told the retiree life insurance benefit was a benefit "for life" or "lifetime benefit" that was provided at "no cost" to her.  Ex. 65, Willingham Dep. 90:4–18, 95:7–10, 107:17–108:2, 137:15–20.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

108.    Willingham claims that her managers in the claims group, not anyone in Human Resources, made the alleged representations upon which her claim is based, but she cannot recall specific names or instances.  *Id.* at 90:13-18, 97:16-98:12, 107:5-16, 108:5-19.

**RESPONSE: Plaintiffs state:**

**Willingham actually testifies that she recalled seeing the representation in writing "either in the benefits package or something else that I read that it was a lifetime benefit at no cost to us."  Exh. 8, Willingham Depo., 98:8-12;90:24-91:8.  She was told the retiree life insurance was "a benefit for life" in annual benefit meetings.  Id. 107:17-108:14.  These meetings were run by the office manager, occasionally people from the regional office, human resources, and a few times people from home office.  Id. at 37:21-38:3; 44:11-18.**

**Turner Opp. at 21-22.**

Allstate's Reply:  Willingham repeatedly testified that she could not recall instances and the names of individuals who allegedly made representations to her regarding the retiree life benefit.  Ex. 65, Willingham Dep. 90:13-18, 97:16-98:12, 107:5-16, 108:5-19.  The evidence Plaintiffs cite does not dispute this but merely introduces extraneous evidence that is immaterial.

109.    Willingham does not claim that there are any other statements that she supposedly relied upon.  *Id.* at 90:4-9, 91:25-92:7.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

110.    Willingham stated that Allstate never used the term "paid up."  *Id.* at 95:11–13.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

111.    Willingham admitted that the language in the SPDs that "[t]his retiree life insurance is provided at no further cost to you" is consistent with her understanding of the benefit.  *Id.* at 101:2–11; Ex. 2, 1990 Group Life SPD at AICTurner00016035.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

112.    Willingham acknowledged that she never paid any money toward her retiree life insurance.  Ex. 65, Willingham Dep. 88:7–10.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

113.    Willingham understands that Allstate in fact provided her retiree life insurance free of charge.  *Id.* at 88:11-13.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

114.    Willingham admitted she received personal statements of total compensation and the 1992 SPD which contained the ROR language but she did not read them.  *Id.* at 91:14-24, 106:23-107:20, 118:2-127:20.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

115.    It was Willingham's practice not to read any of the documents Allstate sent her.

*Id.* at 114:8-16.

**RESPONSE: Plaintiffs state:**

**Willingham actually testified that she read the booklets, in part, that she received at the annual benefits meetings.  <u>Id.</u>, 38:10-40:2.  Willingham went on to explain why she did not read some of the materials she received from Allstate: "Well, to tell you the truth, I probably didn't read this.  I based what I believed on the managers that told us that this was a benefit for life.  I trusted them."  <u>Id.</u> at 107:5-8.  "Sometimes I got something in the mail, but it—it didn't apply to me.  I never—I don't think I ever read a one of them because all my benefits were gone except that one thing, the life insurance."  <u>Id.</u> at 112:8-113:2 (testifying about documents received after retirement).**

**Turner Opp. at 22.**

<u>Allstate's Reply:</u>  The evidence cited by Plaintiffs does not dispute this fact.

116.    Willingham admitted that had she read the ROR language in the SPDs, she would have understood that her retiree life insurance could be cancelled by Allstate.  *Id.* at 141:3-10.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

117.    Willingham stated that, in her position as a casualty adjuster, she did not deal with anyone in Human Resources.  If employees in her office had questions that a supervisor or manager could not answer, they would get the answers for them.  However, Willingham is not sure who her supervisors and managers talked to or where they got the answers to these questions.  *Id.* at 29:13-30:4, 36:21-37:8.

**RESPONSE: Plaintiffs state:**

**Paragraph 117, although a stretch of the actual testimony, in no way discusses discretion or fiduciary status of the managers that she alleges made representations to her about retiree life insurance.  In any event, Willingham's testimony is clear that the managers that she received representations from about her retiree life insurance received that information from the Human Resources Department because the office did not have a Human Resources Department.**

Turner Opp. at 64.

<u>Allstate's Reply:</u>  Plaintiffs response does not dispute the fact stated in paragraph 117 but merely introduces extraneous evidence on how Willingham's testimony should be interpreted.

118.    Willingham cannot identify a single benefit question that she asked her supervisor or manager, let alone a question related to the retiree life insurance benefit.  *Id.* at 37:9-11.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

6.    <u>Herbert Wofford</u>

119.    Wofford retired from Allstate on November 29, 2002.  Ex. 67, Wofford Dep. 219:5-18.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

120.    Wofford testified that the "decision by Allstate to consolidate the office location [he was] in [was] the main driver for [his] decision to retire."  *Id.* at 64:2-21.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

121.     When asked whether he considered anything else in his decision to retire,

Wofford answered that he considered the fact he was unable to continue working out of his home

or out of the Columbia office.  *Id.* at 64:22-65:9.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for
purposes of Allstate's motions for summary judgment.

122.     Wofford chose to retire rather than to relocate because he wanted to stay close to

his elderly parents.  *Id.* at 64:2-13.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for
purposes of Allstate's motions for summary judgment.

123.     Wofford alleges that during the hiring process in 1974, during his employment

and at retirement seminars he was told he would receive "paid up" retiree life insurance.  *Id.* at

88:15-104:22; Ex. 45, Master Retiree List Excerpt.

**RESPONSE: Plaintiffs state:**

**Allstate inaccurately cites Wofford's testimony because throughout his
career, not just "28 years" before retirement as Allstate incorrectly argues,
he was told by almost all of his managers and some human resource
personnel that his retiree life insurance was "paid up."  Exh. 3, Wofford Dep.,
88:9-112:2.**

**Turner Opp. at 75.**

Allstate's Reply:  Plaintiffs have failed to expressly admit or deny this fact; therefore it is
uncontroverted.  Further, this fact as stated expressly acknowledges that Wofford alleges he was
told he would receive 'paid up' retiree life insurance "during his employment.  Therefore, the
extraneous evidence Plaintiffs attempt to introduce is immaterial.

124.     Wofford continues to maintain a life insurance policy that was in effect at the time

of his retirement.  *Id.* at 68:11-69:12.

**RESPONSE: None**

43

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

**B.     The *Klaas* Named Plaintiffs**

125.     The four named *Klaas* Plaintiffs retired on November 30, 1995.  Ex. 45, Master Retiree List Excerpt.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

1.     Frank Berardi

126.     As a result of retiring under the SRO, Berardi's retirement package increased by $415,000 because of enhancements to Berardi's pension and profit sharing benefits and the salary continuation benefit offered as part of the SRO. None of that amount was attributable to his retiree life insurance benefit, however, because he would have received the same benefit without the SRO.  Doc. 265-12, Terry Report at 50.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

2.     John Klaas, Sr.

127.     As a result of retiring under the SRO, Klaas's retirement package increased by $429,000 because of enhancements to Klaas's pension and profit sharing benefits and the salary continuation benefit offered as part of the SRO. None of that amount was attributable to his retiree life insurance benefit, however, because he would have received the same benefit without the SRO.  *Id.*at 51.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

3.      Terry Mountford

128.    As a result of accepting the SRO, the estimated value of Mountford's retirement package increased by $365,000 because of enhancements to Mountford's pension and profit sharing benefits and the salary continuation benefit offered as part of the SRO.  *Id.*at 49.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

129.    None of that value, however, came from retiree life insurance, because Mountford was eligible for the retiree life insurance benefit on retirement regardless of whether he accepted the SRO.  *Id.*; *see also* Ex.60, Mountford Dep. 75:24-76:7.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

130.    Mountford testified that he was told in connection with accepting the SRO that the retiree life insurance benefit was "fully paid."   Ex. 60, Mountford Dep. 112:25-113:19, 114:14-17.  However, Mountford acknowledged that he regularly received SPDs from Allstate.  *Id.* at 110:22-111:4.  Mountford also confirmed that, when he accepted the SRO, he knew the Plans contained language reserving Allstate's the right to amend or terminate Plan or benefits.  *Id.* at 154:21-155:2.

**RESPONSE: Plaintiffs state:**

**Mr. Mountford most certainly understood that the retiree life insurance benefit was unqualified and not subject to cancellation because Allstate's right to amend or terminate this benefit was limited to the period prior to the retiree's acceptance of the SRO.  (Evidentiary Submission, Exhibit J, Terry Mountford Deposition, p. 125).**

**Klaas Opp. at 37.**

Allstate's Reply:  Plaintiffs have failed to expressly admit or deny this fact; therefore it is uncontroverted.  Further, this fact as stated does not discuss Mountford's subjective understanding of the reservation of right.  Mountford expressly testified that he recalled reading the reservation of rights in plan documents because it was "boilerplate throughout the benefits." Ex. 60, Mountford Dep. 154:21-155:2.

131.    When shown a sample of the reservation of rights language in the Group Life

SPD, Mountford testified that he had seen the language before, because it "was boilerplate

throughout the benefits."  *Id.* at 110:22-111:25, 153:23-155:15.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

132.    Mountford reviewed materials given to potential retirees in connection with the

SRO and recalls a statement in the SRO materials, which said that benefits may be modified or

terminated at any time.  *Id.* at 77:16–78:5, 122:20–129:13.

**RESPONSE: Plaintiffs state:**

**Mr. Mountford most certainly understood that the retiree life insurance benefit was unqualified and not subject to cancellation because Allstate's right to amend or terminate this benefit was limited to the period prior to the retiree's acceptance of the SRO.  (Evidentiary Submission, Exhibit J, Terry Mountford Deposition, p. 125).**

**Klaas Opp. at 37.**

Allstate's Reply:  Plaintiffs have failed to expressly admit or deny this fact; therefore it is uncontroverted.  Further, this fact as stated does not discuss Mountford's subjective understanding of the reservation of right.  Mountford expressly testified that he recalled reading the reservation of rights in plan documents because it was "boilerplate throughout the benefits." Ex. 60, Mountford Dep. 154:21-155:2.

133.    Mountford received a letter from Jerry Choate in October 1994 that contained the

following reservation of rights language:

Legal documents govern the specific plans described or referred to in this statement and are available for your review.  Please refer to the plan documents, summary plan descriptions, and profit sharing prospectus for terms and conditions of each plan.  If there are any discrepancies between this statement and the actual

46

plan documents, the plan documents will govern.  Allstate and Sears reserve the right to amend or terminate their respective plans at any time.

*Id.* at 167:10–171:5.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

134.     Mountford understood Allstate was continuing to pay premiums for the retiree life insurance benefit on an ongoing basis notwithstanding the statements allegedly made to him that the benefit was "fully paid."  *Id.* 193:19-195:9.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

135.     Mountford testified that he is unsure whether he would have accepted the SRO if he had known the retiree life insurance benefit would be terminated.  *Id.* at 121:16–122:19.

**RESPONSE: Plaintiffs state:**

**Mr. Mountford had not even considered retiring until the SRO.  (Evidentiary Submission, Exhibit J, Terry Mountford Deposition, p. 64).  And the retiree life component of the SRO was central to his decision, since he considered the retiree life insurance to be "part of my savings."  Furthermore, his father had passed at an early age and Mr. Mountford knew " . . . [if] I die at 60, my wife's going to need this."  (Evidentiary Submission, Exhibit J, Terry Mountford Deposition, pp.92-3).**

**Klaas Opp. at 36-37.**

Allstate's Reply:  Plaintiffs have failed to expressly admit or deny this fact; therefore it is uncontroverted.  Further, the evidence cited does not dispute this fact.  Mountford clearly testified that although the retiree life was important to him he "can't say" whether he would have accepted the SRO if he had known the retiree life insurance benefit would be terminated.  Ex. 60, Mountford Dep. 121:16–122:19.

136.     Mountford continues to maintain a life insurance policy that was in effect at the time of his retirement.  *Id.* at 102:21–104:24.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

>   4.   David Sangston

137.    As a result of retiring under the SRO, Sangston's retirement package increased by $520,000 because of enhancements to Sangston's pension and profit sharing benefits and the salary continuation benefit offered as part of the SRO. None of that amount was attributable to his retiree life insurance benefit, however, because he would have received the same benefit without the SRO.  Doc. 265-12, Terry Report at 48.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

## VII.    Plaintiffs' Allegations Regarding Their Requested Surcharge Remedy

138.    Plaintiffs have asserted a claim under Section § 502(a)(3), based on allegations that Allstate breached its ERISA fiduciary duties by not accurately communicating to the retirees that the life insurance benefit could be terminated.  Doc. 44, *Turner* Pls.' Second Am. Compl. ¶¶ 22(a), 35, 37, 40, 44, 46, 48, 81, 88; Doc. 62, *Klaas* Pls.' Am. Compl. ¶¶ 24-25, 29, 31-32, 45, 51-53.

**RESPONSE: None**

Allstate's Reply:  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

139.    As a remedy for their Section 502(a)(3) claim, Plaintiffs seek:

>   A surcharge to prevent Allstate, as a fiduciary, from profiting from the alleged breach of fiduciary duty.  The amount of the surcharge is subject to further discovery and disclosure and should be equal to the amount of money Allstate would have spent to provide the benefit permanently to each Plaintiff and all members of the class of retirees after December 31, 2015.

Ex. 46, *Turner* Pls.' Second Am. Initial Disclosures, at 5.

**RESPONSE: Plaintiffs state:**

**Allstate incompletely quotes the remedy the <u>Turner</u> Plaintiffs seek.  Doc. 306 at ¶ 139.  Allstate cites only one of five paragraphs outlining the equitable relief sought.  <u>Id.</u>  In addition to the surcharge sought and quoted by Allstate, the <u>Turner</u> Plaintiffs seek 1) restoration of the retiree life insurance benefit, 2) payment in full of the retiree life insurance benefit to the beneficiary of each Plaintiff and Class member who deceased during the time period when the benefit remained cancelled, 3) equitable monetary relief of not less than the face value of each Plaintiffs, and 4) equitable monetary relief of not less than the face value of each Class member.  Doc. 319-3 at 5-6.  Thus, to the extent incomplete suggestions of the fact creates disputes, Allstate failed to accurately describe the relief sought.**

**Turner Opp. 22-23.**

<u>Allstate's Reply:</u>  Plaintiffs' response does not dispute the fact stated in paragraph 139. Paragraph 139 fully quotes the surcharge remedy Plaintiffs described in their Second Amended Disclosures, and the other remedies that Plaintiffs identified are immaterial to Allstate's motions for summary judgment.

140.   Plaintiffs claim that the "actual harm" each Plaintiff and each putative class

member has suffered because of Allstate's alleged fiduciary breach is the dollar amount of the

loss of the face amount of each person's retiree life insurance benefit.  Doc. 293, *Turner* Pls.'

Reply in Support of Mot. for Class Cert., at 14.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

141.   Plaintiffs' proffered expert, Ralph Summerford, stated that he was:

[R]etained . . . to render my professional opinion . . . on the amount of saving obtained by Allstate Corporation ["Allstate"] as a result of the termination of the Allstate retiree life insurance Benefit ["the Benefit"] for Allstate retirees.

Ex. 69, Summerford Rprt., at 2.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

142.    Mr. Summerford opined "that Allstate has saved at least $133 million as a result of the termination of the benefit." *Id.* at 3.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.

143.    Plaintiffs have not offered any evidence or calculation of the surcharge they seek, other than Mr. Summerford's calculation.

**RESPONSE: Plaintiffs state:**

**In fact, the <u>Turner</u> Plaintiffs cited in their Reply to the Turner Motion for Class Certification an exhibit which is evidence of the undisputed face amount of insurance for each Class member, including the Plaintiffs.  Doc. 260-21.**

**Turner Opp. at 23.**

<u>Allstate's Reply:</u>  Plaintiffs' response does not dispute the fact stated in paragraph 143, and Allstate stands by its original statement.

144.    Mr. Summerford did not calculate any other form of damages or harm allegedly suffered by any Plaintiff.  *See generally id.*, at 2-3.

**RESPONSE: None**

<u>Allstate's Reply:</u>  Because Plaintiffs have failed to address this fact, it is undisputed for purposes of Allstate's motions for summary judgment.


Dated: October 30, 2017

                                        */s/ Richard L. Fenton*
                                        Richard L. Fenton
                                        (Admitted *pro hac vice* /IL Bar: 3121699)
                                        Christopher Q. King
                                        (Admitted *pro hac vice* /IL Bar: 6189835)
                                        Amanda M. Moeller
                                        (Admitted *pro hac vice* /IL Bar: 6286890)

DENTONS US LLP
233 South Wacker Drive. Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

Dara D. Mann
(Admitted *pro hac vice* /GA Bar: 469065)
Uchenna Ekuma-Nkama
(Admitted *pro hac vice* /GA Bar: 957861)
Deborah F. Lempogo
(Admitted *pro hac vice* /MO Bar: 68516 & IL
Bar: 6324234)
DENTONS US LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198

Wade P. K. Carr
(Admitted *pro hac vice* /MO Bar: 62786 & KS
Bar: 25105)
Samantha J. Wenger
(Admitted *pro hac vice* /MO Bar: 25322 & KS
Bar: 64230)
DENTONS US LLP
4520 Main Street
Suite 1100
Kansas City, Missouri 64111
Telephone: (816)460-2400
Facsimile: (816) 531-7545

Meagan D. Self
(Admitted *pro hac vice* /TX Bar: 24078453)
DENTONS US LLP
2000 McKinney Avenue
Suite 1900
Dallas, Texas 75201
Telephone: (214) 259-0900
Facsimile: (214) 259-0910

David J. Middlebrooks
ASB- 8553-D58D
Albert L. Vreeland, II
LEHR MIDDLEBROOKS & VREELAND, P.C.
P.O. Box 11945

51

Birmingham, AL 35202-1945
Telephone: (205) 323-9262
Facsimile: (205) 326-3008

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 30, 2017, I filed the foregoing with the Clerk of the Court

via the ECF system, which will send notice and a copy of the same to all counsel of record.

<u>*/s/ Richard L. Fenton*</u>
An attorney for Defendant