UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GARNET TURNER,<br>individually and on behalf of all others<br>similarly situated, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE CO.,<br><br>    Defendant. | CIVIL ACTION NO. 2:13-CV-685-WKW |
| JOHN E. KLAAS,<br>individually and on behalf of all others<br>similarly situated, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE CO.,<br><br>    Defendant. | CIVIL ACTION NO. 2:15-CV-406-WKW |

**DEFENDANT'S REPLY IN SUPPORT OF SUMMARY JUDGMENT ON KLAAS
PLAINTIFFS' UNIQUE CLAIMS UNDER ERISA SECTIONS 502(a)(3) AND 502(a)(1)(B)**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

    I.   The SRO Did Not Disturb Allstate's Unambiguous Right, Under the Group Life Plan, to Terminate the Retiree Life Benefit at Any Time. ................................................... 2

        A.  The SRO Did Not Amend or Supersede the Plan Because the Retiree Life Benefit Was Not One of the Benefits Offered by the SRO.
*(Replying to Klaas Opposition, Argument Sections A, B)* ............................................. 3

        B.  Plaintiffs Cannot "Create" an Ambiguity by Contradicting the Terms of the Plan or Relying on Extrinsic Evidence.
*(Replying to Klaas Opposition, Argument Sections B, D)* ............................................. 6

            1.  Plaintiffs Cannot Rely on Extrinsic Evidence, Like the ADEA/OWBPA Waivers, to Argue That the Plan Documents Are Ambiguous. .............................. 7

            2.  The Retiree Life Benefit Was Never Part of the Consideration for the ADEA/OWBPA Waiver. ....................................................................................... 7

    II.  Plaintiffs' 502(a)(3) Claim is Unquestionably Time-Barred.
*(Replying to Klaas Opposition, Argument Section E)* ......................................................... 9

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alday v. Container Corp. of Am.*,
   906 F.2d 660 (11th Cir. 1990) .................................................................................2, 7, 9

*Barrett v. Fox and Grove Chartered*,
   No. 01C5910, 2002 WL 31761410 (N.D. Ill. Dec. 9, 2002) ........................................8

*Gallo v. Moen Inc.*,
   813 F.3d 265 (6th Cir.), *cert denied*, 137 S. Ct. 275 (2016).........................................9

*M & G Polymers USA, LLC v. Tackett*,
   135 S. Ct. 926 (2015).................................................................................2, 5, 8, 9

*Musto v. Am. Gen. Corp.*,
   861 F.2d 897 (6th Cir. 1986) .......................................................................................9

*Senior Exec. Benefit Plan Participants v. New Valley Corp. (In re New Valley Corp.)*,
   89 F.3d 143 (3d Cir. 1996)........................................................................................8, 9

*Snow v. Boston Mut. Life Ins. Co.*,
   590 F. App'x 832 (11th Cir. 2014) ...............................................................................7

*Sprague v. General Motors Corporation*,
   133 F.3d 388 (6th Cir. 1998) ...................................................................................6, 8

*Wise v. El Paso Natural Gas Co.*,
   986 F.2d 929 (5th Cir. 1993) ...................................................................................5, 8

**Statutes**

29 U.S.C.
   § 1051(1).......................................................................................................................6
   § 1053...........................................................................................................................6
   § 1113...........................................................................................................................9
   § 1113(1).......................................................................................................................2

Employee Retirement Income Security Act (ERISA)
   § 502(a)(1)(B) ...............................................................................................1, 2, 3, 10
   § 502(a)(3) .......................................................................................................... *passim*

**Other Authorities**

29 C.F.R. § 1624.22(d)(2).....................................................................................................7

Defendant Allstate Insurance Co. ("Defendant" or "Allstate") submits the following reply brief in support of its motion for summary judgment on the *Klaas* Plaintiffs' ("Plaintiffs") separate claims under ERISA Section 502(a)(1)(B) and 502(a)(3) (Docs. 305 and 309).[1]

## INTRODUCTION

The *Klaas* Plaintiffs' Opposition to Allstate's motion for summary judgment on their separate Section 502(a)(1)(B) and 502(a)(3) claims ignores the language actually contained within the Plan documents that govern the retiree life insurance benefit. Instead, Plaintiffs' entire argument centers on the incorrect assertion that the special retirement opportunity ("SRO") somehow entitles them to a permanent retiree life benefit.

Retiree life insurance was not a benefit offered with the SRO. The SRO simply granted SRO participants three years of additional participation credit toward eligibility under the existing retiree life insurance plan—additional credit which none of the *Klaas* Plaintiffs needed because they had already satisfied the eligibility requirements. Doc. 309 at 9-11. The SRO offering materials specifically stated that the various benefit Plans were governed by their own respective Plan Documents and SPDs, and those documents in turn unquestionably reserved Allstate's right to modify, amend, or terminate benefits at any time. SOF ¶¶ 49(a)-(d).[2] They also provided that no "Participant"—a term which by definition includes retirees—had a vested

---

[1] The *Klaas* Plaintiffs filed a consolidated opposition to Allstate's dispositive motion filings. *See* Doc. 329, Klaas Plaintiffs' Omnibus Opposition to Defendant's Multiple Motions for Summary Judgment Against Klaas Plaintiffs (hereinafter, "Klaas Opp."). While Allstate does not object to the consolidated opposition, the issues and facts differ for the different claims brought by different plaintiffs. Accordingly, Allstate is filing its reply briefs separately in support of each motion, as explained in its overviews of its dispositive motion filings. Docs. 304-305.

[2] Citations to "SOF ¶ _" refer to Defendant's Reply in Support of its Combined Statement of Undisputed Facts in Support of its Motions for Summary Judgment, filed concurrently herewith, which summarizes Plaintiffs' responses (if any) to Allstate's original statement of undisputed facts (Doc. 306).

1

right to *any* Plan benefits.  SOF ¶ 14.  And the SRO materials themselves contained similar provisions.[3]

Accordingly, the *Klaas* Plaintiffs' separate claim for benefits under Section 502(a)(1)(b) fails as a matter of law.  The Court has no basis to look beyond the clear and unambiguous language of the Plan, or to consider extrinsic documents or verbal statements that Plaintiffs themselves concede were not part of the Plan.  *Alday v. Container Corp. of Am.*, 906 F.2d 660, 665-66 (11th Cir. 1990).  Allstate at all times had the right to amend, modify, or terminate the Plan with respect to active employees and retirees alike, and Plaintiffs have no right to the benefit.

As for the *Klaas* Plaintiffs' separate breach of fiduciary duty claim under Section 502(a)(3), it is indisputably time-barred under ERISA's six-year statute of repose.  Plaintiffs admit that their claim for fiduciary breach is based on alleged misrepresentations that occurred no later than 1995.  ERISA's six-year statute of repose therefore expired by 2001, at least 12 years before the *Turner* action was filed in 2013.  28 U.S.C. § 1113(1); Doc. 1.

## ARGUMENT

**I.    The SRO Did Not Disturb Allstate's Unambiguous Right, Under the Group Life Plan, to Terminate the Retiree Life Benefit at Any Time.**

Plaintiffs' Opposition contains almost no discussion of the language that actually appears in Allstate's Governing Plan Documents and SRO offering materials.  That language is dispositive of Plaintiffs' Section 502(a)(1)(B) claim.  In support of its argument that the Plan

---

[3] Neither the SRO documents nor the Plan Documents contained any language to the effect that the retiree life insurance benefit was irrevocable or not subject to modification or termination. SOF ¶¶ 9-10, 52. Accordingly, and even if there had been no express reservation of rights, these documents simply cannot be construed as containing a lifetime promise or a forfeiture of Allstate's right under ERISA to amend, modify, or terminate the Plan at any time or for any reason. *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933, 937 (2015) (explaining that "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans," and therefore, "when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life" (quotation and citation omitted)).

2

unambiguously allowed Allstate to terminate the retiree life benefit at any time, Allstate incorporates by reference the arguments made in its Reply Brief in Support of Motion for Summary Judgment Against Plaintiffs' ERISA Section 502(a)(1)(B) Claim.

> **A.   The SRO Did Not Amend or Supersede the Plan Because the Retiree Life Benefit Was Not One of the Benefits Offered by the SRO.**
> *(Replying to Klaas Opposition, Argument Sections A, B)*

Rather than addressing the clear language of the Plan, Plaintiffs argue that the retiree life benefit was part of the SRO and, thus, was "not susceptible to cancellation or modification" because the SRO "amended and superceded [sic] Allstate's welfare benefits plan." Klaas Opp. at 19. In support of their argument, Plaintiffs point to several SRO documents that reference the retiree life benefit. But these documents on their face fail to establish that the retiree life benefit itself was part of the SRO or that the SRO had any impact on Allstate's ability to amend, modify or terminate the retiree life insurance benefit. The only interplay between the SRO and the retiree life insurance plan was that employees who accepted the SRO received three years additional participation credit toward retiree life insurance eligibility—a feature that affected none of the Klaas Plaintiffs because they had all independently met the eligibility requirements. SOF ¶ 56.

The SRO documents referenced by Plaintiffs show that the retiree life benefit was unaffected by the SRO. For example, the SRO Details booklet expressly provided:

> The Special Retirement Opportunity is governed by the provisions in this booklet. The salary continuation portion of the SRO is governed by the "Salary Continuation Summary Plan Description" section of this booklet. *Other benefits outlined in this booklet are governed by the provisions of other plans.* Please refer to the applicable summary plan descriptions for those plans.

SOF ¶ 49(b). The retiree life benefit was one of these "other benefits" that was not governed by the provisions in the booklet. And when the SRO Details booklet discussed retiree life insurance, it made specific reference to the Allstate Employee "Group Life and Accidental Death and

3

Dismemberment Plan" SPD that included the retiree life insurance benefit. SOF ¶¶ 47, 49(b); *see also* SOF ¶¶ 11-15. The booklet further explained that "[r]etiree life insurance is provided at no cost to you. See your summary plan description for details." SOF ¶ 49(b).

Plaintiffs do not address these clear and unambiguous provisions. Instead, Plaintiffs continue to point to a provision in the Salary Continuation SPD included in the SRO Details booklet—a provision that has nothing to do with retiree life insurance—and argue that the terms of the Group Life Plan were expressly amended or superseded notwithstanding the express references to the Group Life Plan set forth above. Klaas Opp. at 5, 19. That provision reads as follows:

> Benefits payable pursuant to the SRO, including benefits payable under the [Salary Continuation] Plan, supersede all salary continuation, service allowance, and severance benefits payable under any other Allstate plan, policy, or agreement.

Klaas Opp. at 5 (quoting SRO Details booklet at 24). Plaintiffs take this provision wholly out of context. The provision on its face does not say that the terms, conditions, or limitations of any plans are superseded, only that salary continuation, severance and service allowance *"benefits"* are superseded. The obvious purpose of this provision was to prohibit employees from "double dipping" and collecting additional severance, service allowance or salary continuation benefits beyond those offered under the SRO. Retiree life insurance is not a "salary continuation, service allowance, [or] severance benefit" and this provision simply does not apply. And, if it did apply, it would mean that the Salary Continuation benefit would supersede the retiree life insurance benefit, which would make no sense at all.

Moreover, even if these provisions could reasonably be construed in the manner Plaintiffs suggest, they stop well short of saying that welfare benefits under the SRO are permanent or that they may not be amended, modified or terminated. Accordingly, the documents cannot be

4

construed to create a permanent or lifetime welfare benefit, particularly since the SRO brochure elsewhere contains an explicit reservation of rights to amend, modify, or terminate the benefits. *M & G Polymers*, 135 S. Ct. at 933 (explaining that "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans," and therefore, "when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life" (quotation and citation omitted)); *see also Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 934-35 (5th Cir. 1993) (explaining that "ERISA simply does not prohibit a company from eliminating previously offered benefits that are neither vested nor accrued.") (quoting *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir. 1986))). Much like the Group Life Plan, the SRO documents also contained a reservation of rights providing "[t]he benefits, plan, and programs described or referred to in this booklet may be modified or terminated at any time." SOF ¶¶ 49(a)-(c)*; see also* Klaas Opp. at 25. While Plaintiffs would limit the effect of those words to "at any time before acceptance," that limitation does not appear in the written document or in the words used. None of the SRO documents use the words "vested," "lifetime," "permanent," or any other language suggesting an irrevocable right to *any* welfare benefit, including retiree life insurance. SOF ¶ 52. Thus, under either the Group Life Plan or the SRO documents, Allstate still would have had the ability to amend or terminate the retiree life benefit at any time.

Plaintiffs have from time to time posited the rhetorical question whether Allstate's argument regarding its right to amend or terminate the retiree life insurance benefit means that Allstate could terminate any SRO benefit and essentially renege the day after Plaintiffs accepted. The answer is no. First, terminating the retiree life insurance benefit did not terminate any benefit afforded Plaintiffs under the SRO. All the SRO provided with respect to the retiree life

5

benefit was three years additional credit toward eligibility for retiree life insurance, and each of the Plaintiffs here had independently satisfied the eligibility requirement without the three year enhancement.  Second, non-welfare benefits, such as pension and retirement income benefits, stand on an entirely different footing because they are subject to ERISA's vesting requirements.  29 U.S.C. §1053.  Welfare plans like retiree life insurance, on the other hand, "are specifically exempted from vesting requirements to which pension plans are subject." *Sprague v. General Motors Corporation,* 133 F.3d 388, 400 (6th Cir. 1998) (citing 29 U.S.C. § 1051(1)).  Third, and finally, a termination of SRO benefits occurring within a short time after acceptance, as posited in Plaintiffs' hypothetical, could suggest fraudulent inducement.  That is not the case here: Allstate continued to maintain Plaintiffs' life insurance benefit for 20 years before deciding to reduce its welfare benefit costs as part of an overall cost-reduction initiative.  SOF ¶ 62.  There is absolutely no evidence that Allstate had any intention of terminating the retiree life insurance benefit at the time the SRO was offered.  So, Plaintiffs' rhetorical question, while fair, does not advance their cause.

> **B.     Plaintiffs Cannot "Create" an Ambiguity by Contradicting the Terms of the Plan or Relying on Extrinsic Evidence.**
> *(Replying to Klaas Opposition, Argument Sections B, D)*

Despite the undisputed language in both the Group Life Plan and the SRO documents, Plaintiffs nevertheless argue that Allstate's reservation of rights is ambiguous.  Pointing to the ADEA/OWBPA waiver they signed in connection with the SRO, Plaintiffs argue that the consideration for waiver would have been illusory if Allstate could terminate the benefits, including retiree life insurance.  Klaas Opp. at 25-28.  From there, they speculate that Allstate must have intended its reservation of rights to mean only that it could terminate benefits "prior to their retirement, not after." *Id.*  Plaintiffs' argument is flawed for several reasons.

6

1. <u>Plaintiffs Cannot Rely on Extrinsic Evidence, Like the ADEA/OWBPA Waivers, to Argue That the Plan Documents Are Ambiguous.</u>

First, there is simply no reason to consider any extrinsic evidence to interpret the Plan documents and the unambiguous reservation of rights contained therein. Courts cannot use extrinsic evidence to change or contradict the terms of ERISA plan documents. *Alday v. Container Corp. of Am.*, 906 F.2d 660, 665-66 (11th Cir. 1990) (refusing to consider written and verbal extrinsic evidence that would change the terms of the official plan documents); *Snow v. Boston Mut. Life Ins. Co.*, 590 F. App'x 832, 834 (11th Cir. 2014) (applying parol evidence rule to ERISA plan to hold that "extrinsic evidence" cannot be used to "vary or contradict, rather than to explain and interpret, the terms of an integrated contract" (quotation and citation omitted)). Plaintiffs concede that the ADEA/OWBPA waiver is extrinsic evidence (Klaas Opp. at 21), yet they offer no authority explaining how they can use this extrinsic evidence to "prove" the existence of an ambiguity in the first instance.

2. <u>The Retiree Life Benefit Was Never Part of the Consideration for the ADEA/OWBPA Waiver.</u>

Second, Allstate's ability to amend or terminate the retiree life benefit after retirement does not make the consideration for the waiver "illusory." To constitute consideration for the waiver, Plaintiffs would have to show they would not have otherwise been entitled to the retiree life benefit upon their retirement.[4] 29 C.F.R. § 1624.22(d)(2). But it is undisputed that the named Plaintiffs (and more than 400 of the 600 SRO retirees) would have been entitled to the retiree life benefit when they retired, even without the SRO's three-year enhancement. SOF ¶¶ 53-56. In other words, the retiree life benefit was neither one of the benefits offered under the

---

[4] The waiver itself mirrored the requirement in 29 C.F.R. § 1624.22(d)(2), stating that the "SRO benefits . . . represent consideration for signing this Agreement and are not salary, wages, or benefits to which I was already entitled." Klaas Opp. at 6 (quoting exemplar release).

7

SRO, nor was it something that Plaintiffs were otherwise not entitled to. So as a matter of law, it could not have been consideration for the ADEA/OWBPA waiver in the first instance.

Consideration for the ADEA/OWBPA waiver was provided through other generous financial incentives that were granted as part of the SRO and that Plaintiffs would not otherwise have obtained. These included the salary continuation and pension and profit sharing enhancements which, in the case of the *Klaas* Plaintiffs, amounted to hundreds of thousands of dollars each. SOF ¶¶ 126-128, 137. Those benefits were not terminated, they have been fully paid, and they constitute more than adequate consideration.

Plaintiffs' reliance on cases involving top hat plans and pension plans are wide of the mark. Pension plans, unlike welfare benefit plans, are subject to ERISA's vesting requirements. *Sprague, supra,* 133 F.3d at 400. Top hat plans, while generally exempt from ERISA, nonetheless are likewise treated as creating a "vested right in those employees who fulfill the plan's requirements." *Barrett v. Fox and Grove Chartered*, No. 01C5910, 2002 WL 31761410, at *3 (N.D. Ill. Dec. 9, 2002) (noting that in *Senior Exec. Benefit Plan Participants v. New Valley Corp. (In re New Valley Corp.)*, 89 F.3d 143, 151 (3d Cir. 1996), "[t]he Third Circuit found that allowing the employer to terminate the [top hat] benefits even after an employee retired—i.e., after the benefits vested—would make the contract illusory").

Unlike top hat and pension plans, Congress made a deliberate decision to exempt welfare benefits from any vesting requirements and to allow welfare benefit plans to be amended, modified or terminated at any time and for any reason. *M & G Polymers*, 135 S. Ct. at 933; *Wise*, 986 F.2d at 934-35. Accordingly, welfare benefits, such as the retiree life insurance at issue here, are not vested, and welfare benefit plans can generally be amended or terminated at any time. *Id.* Moreover, the cases that have considered the issue all hold that an employer is entitled to amend,

modify or terminate a welfare benefit plan even after retirement.  *E.g.*, *Alday*, 906 F.2d at 662, 666; *Gallo v. Moen Inc.*, 813 F.3d 265, 270 (6th Cir. 2016), *cert denied*, 137 S. Ct. 375 (2016); *Musto v. Am. Gen. Corp.*, 861 F.2d 897, 903, 905–06 (6th Cir. 1988).  Indeed, this distinction between welfare benefit plans and top hat or pension plans was recognized by the Third Circuit in *In re New Valley Corp.*, 89 F.3d 143, a case on which Plaintiffs heavily rely.  Klaas Opp. at 26-28.  There, the Court concluded that "the record in this case, viewed in the light of the special nature of top hat plans, distinguishes this case from prior decisions in which we have held a clause reserving the right to terminate or amend unambiguous and controlling."  *In re New Valley Corp.,* 89 F.3d at 146.  So, Plaintiffs' authorities are therefore inapposite on their face.

## II.     Plaintiffs' 502(a)(3) Claim is Unquestionably Time-Barred.
*(Replying to Klaas Opposition, Argument Section E)*

Plaintiffs' Section 502(a)(3) claim is time-barred under 29 U.S.C. § 1113, which requires that Plaintiffs bring their fiduciary breach claims within "the earlier of" the statute's three- and six-year periods.  Plaintiffs now admit that the alleged fiduciary breaches upon which their claim is based are the alleged misrepresentations of "paid up" retiree life insurance.  Klaas Opp. at 34.  It is undisputed that these supposed misrepresentations occurred in 1994-1995—far more than six years prior to this action being filed.  *Id.* at 12.  So even putting aside when Plaintiffs may have had "actual knowledge" of the claim, the claim is barred because it was not brought within six years of the alleged fiduciary breach.  In further support of its arguments that Plaintiffs' Section 502(a)(3) claim is time-barred—including arguments that the "actual knowledge" prong and the "fraud or concealment" tolling exception would not apply here—Allstate incorporates by reference the arguments made in its Reply Brief in Support of Motion for Summary Judgment Against Plaintiffs' ERISA Section 502(a)(3) Claim.

9

## CONCLUSION

For all the foregoing reasons, there is no genuine issue of material fact with respect to the *Klaas* Plaintiffs' separate Section 502(a)(1)(B) and 502(a)(3) claims, and Allstate is entitled to judgment on those claims as a matter of law.

Dated: October 30, 2017

/s/ Richard L. Fenton
Richard L. Fenton
(Admitted *pro hac vice* /IL Bar: 3121699)
Christopher Q. King
(Admitted *pro hac vice* /IL Bar: 6189835)
Amanda M. Moeller
(Admitted *pro hac vice* /IL Bar: 6286890)
DENTONS US LLP
233 South Wacker Drive. Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

Dara D. Mann
(Admitted *pro hac vice* /GA Bar: 469065)
Uchenna Ekuma-Nkama
(Admitted *pro hac vice* /GA Bar: 957861)
Deborah F. Lempogo
(Admitted *pro hac vice* /MO Bar: 68516 & IL Bar: 6324234)
DENTONS US LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198

Wade P. K. Carr
(Admitted *pro hac vice* /MO Bar:62786 & KS Bar: 25105)
Samantha J. Wenger
(Admitted *pro hac vice* /MO Bar: 25322 & KS Bar: 64230)
DENTONS US LLP
4520 Main Street
Suite 1100
Kansas City, Missouri 64111

    Telephone: (816) 460-2400
    Facsimile: (816) 531-7545

    Meagan D. Self
    (Admitted *pro hac vice* /TX Bar: 24078453)
    DENTONS US LLP
    2000 McKinney Avenue
    Suite 1900
    Dallas, Texas 75201
    Telephone: (214) 259-0900
    Facsimile: (214) 259-0910

    David J. Middlebrooks
    ASB- 8553-D58D
    Albert L. Vreeland, II
    LEHR MIDDLEBROOKS & VREELAND, P.C.
    P.O. Box 11945
    Birmingham, AL 35202-1945
    Telephone: (205) 323-9262
    Facsimile: (205) 326-3008

    *Attorneys for Defendant*

12

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2017, I filed the foregoing with the Clerk of the Court via the ECF system, which will send notice and a copy of the same to all counsel of record.

*/s/ Richard L. Fenton*
An attorney for Defendant
