## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| GARNET TURNER,<br>individually and on behalf of all others<br>similarly situated, et al.,<br><br>     Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE CO.,<br><br>    Defendant. | CIVIL ACTION NO. 2:13-CV-685-WKW |
| JOHN E. KLAAS,<br>individually and on behalf of all others<br>similarly situated, et al.,<br><br>     Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE CO.,<br><br>    Defendant. | CIVIL ACTION NO. 2:15-CV-406-WKW |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR
## SUMMARY JUDGMENT AGAINST PLAINTIFFS' ERISA SECTION 502(a)(3) CLAIM

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

ARGUMENT ..................................................................................................................3

I.  Plaintiffs' Section 502(a)(3) Claims Are Time Barred Under the Undisputed Facts.
    *(Replying to Turner Opposition, Section V(b))* ......................................................3

    A.  Plaintiffs Asserted Their Claims More Than Six Years After the Alleged
        Breach.
        *(Replying to Turner Opposition, Section V(b)(i)-(ii))* ....................................4

    B.  Plaintiffs Have Not Established That a Fraud or Concealment Occurred to
        Toll the Limitations Period. ..........................................................................7

II.  Even Under *Amara*, Plaintiffs Must Still Present Evidence That the Harm Giving
     Rise to an Equitable Surcharge Remedy Is Causally Connected to a Fiduciary
     Breach.
     *(Replying to Turner Opposition, Section V(c))* ...................................................11

    A.  The "Decision" to Terminate the Retiree Life Insurance Was No More a
        Fiduciary Act Than the Termination Itself.
        *(Replying to Turner Opposition, Section V(a)(4))* ......................................11

    B.  Plaintiffs Must Still Show an Actual Harm or Injury Caused by an Alleged
        Breach of Fiduciary Duty.
        *(Replying to Turner Opposition, Section V(c))* ..........................................13

CONCLUSION ..............................................................................................................17

i

## TABLE OF AUTHORITIES

Page(s)

CASES

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...................................................................................................8

*CIGNA Corp. v. Amara*,
    563 U.S. 421 (2011)........................................................................................... passim

*Curtiss-Wright Corp. v. Schoonejongen*,
    514 U.S. 73 (1995)..................................................................................................12

*Edes v. Verizon Commc'ns, Inc.*,
    417 F.3d 133 (1st Cir. 2005) ....................................................................................3

*Edmonson v. Lincoln Nat'l Life Ins. Co.*,
    725 F.3d 406 (3d Cir. 2013)...............................................................................15, 16

*Hozier v. Midwest Fasteners, Inc.*,
    908 F.2d 1155 (3d Cir. 1990)..................................................................................12

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999)..........................................................................................2, 5, 12

*Larson v. Northrop Corp.*,
    21 F.3d 1164 (D.C. Cir. 1994) ..............................................................................3, 7

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996)..........................................................................................2, 5, 12

*M & G Polymers USA, LLC v. Tackett*,
    135 S. Ct. 926 (2015).............................................................................................14

*McCravy v. Metro. Life Ins. Co.*,
    690 F.3d 176 (4th Cir. 2012) .................................................................................16

*McGuire v. Metro. Life Ins. Co.*,
    No. 12-10797, 2014 WL 3894363 (E.D. Mich. Aug. 8, 2014)................................10

*Pielage v. McConnell*,
    516 F.3d 1282 (11th Cir. 2008) ...............................................................................9

*Ret. Comm. of DAK Americas LLC v. Brewer*,
    867 F.3d 471 (4th Cir. 2017) .................................................................................15

*Sec'y, U.S. Dep't of Labor v. Preston*,
    No. 17-10833, — F.3d —, 2017 WL 4545962 (11th Cir. Oct. 12, 2017) ............3, 7

*Stocks v. Life Ins. Co. of North Am.*,
    861 F. Supp. 2d 948 (E.D. Wis. 2012) ....................................................................14

*U.S. Airways v. McCutchen*,
    569 U.S. 88 (2013) ..............................................................................................15

*United States v. Kubrick*,
    444 U.S. 111 (1979) ..............................................................................................6

*Willett v. Blue Cross & Blue Shield of Ala.*,
    953 F.2d 1335 (11th Cir. 1992) .............................................................................15

*Wise v. El Paso Natural Gas Co.*,
    986 F.2d 929 (5th Cir. 1993) ................................................................................14

## STATUTES

18 U.S.C. § 1030(g) ......................................................................................................5

29 U.S.C.
    § 502(a)(3) ........................................................................................... passim
    § 1113 .................................................................................................... passim

42 U.S.C. § 9612(d)(2) ................................................................................................5

## RULES AND REGULATIONS

Federal Rules of Civil Procedure Rule 12 ....................................................................9

Defendant Allstate Insurance Co. ("Defendant" or "Allstate") submits the following reply brief in support of its motion for summary judgment on the *Turner* and *Klaas* Plaintiffs' (collectively "Plaintiffs") ERISA Section 502(a)(3) claims and, alternatively, for partial summary judgment on their requested surcharge relief.[1] Docs. 304, 305, and 308

## INTRODUCTION

Plaintiffs' Section 502(a)(3) claims are time-barred under both prongs of 29 U.S.C. § 1113, which requires that Plaintiffs bring their fiduciary breach claims within "the earlier of" the statute's three- and six-year periods. Notwithstanding Plaintiffs' efforts to confuse and obfuscate the provisions of Section 1113, the statutory directive is clear: Plaintiffs were required to bring their claims within six years of the alleged breach of fiduciary duty, or within three years of the date Plaintiffs had actual knowledge of that breach, whichever was *earlier*.

The alleged breaches of fiduciary duty here were the supposed misrepresentations made to Plaintiffs during the course of their employment regarding the retiree life insurance benefit, and, as demonstrated in Allstate's opening brief, those misrepresentations in each case occurred more than six years prior to this action being filed. So even putting aside when Plaintiffs may have had "actual knowledge" of the claim, the claim is barred because it was not brought within six years of the alleged fiduciary breach.

Plaintiffs say that the action is not time-barred because (i) the breach of fiduciary duty should be deemed to be Allstate's decision to terminate the benefit in 2013, and (ii) that the statute should be tolled because of alleged "fraud" or "concealment." But Allstate's decision to

---

[1] The *Turner* and *Klaas* Plaintiffs each filed a consolidated opposition to Allstate's dispositive motion filings. *See* Doc. 329, *Klaas* Plaintiffs' Omnibus Opposition to Defendant's Multiple Motions for Summary Judgment Against *Klaas* Plaintiffs (hereinafter, "Klaas Opp."); Doc. 332, *Turner* Plaintiffs' Opposition to Defendant's Motion for Summary Judgment Against *Turner* Plaintiffs (hereinafter "Turner Opp."). While Allstate does not object to the consolidated opposition, the issues and facts differ for the different claims brought by different plaintiffs. Accordingly, Allstate is filing its reply briefs separately in support of each motion, as explained in its overviews to its dispositive motion filings. Docs. 304-305.

modify or terminate the benefit was, as a matter of law, simply ***not*** a fiduciary act and was in no way part of the fiduciary breach.  The United States Supreme Court has repeatedly held that plan sponsors who amend or terminate employee benefit plans "do not act as fiduciaries, but are analogous to settlors of a trust."  *Lockheed Corp. v. Spink,* 517 U.S. 882, 890 (1996); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1999).

As for alleged "fraud," there is absolutely no evidence that Allstate had any intention of terminating the retiree life insurance benefit at the time any alleged misrepresentations were made.  Allstate did not even begin to consider modification of the Plan until late 2012, in connection with an overall cost reduction analysis.  And, far from concealing its right to terminate the Plan benefits, the undisputed facts establish that between 1990 and 2013, in both official and unofficial communications to its employees and retirees, Allstate repeatedly and regularly stated that it reserved the right to modify or terminate the Plan, and that no Plan Participants or Beneficiaries had any vested right to benefits.  On this record, there is simply no viable claim of "concealment" or "fraud," and therefore no genuine issue of material fact for trial.  Plaintiffs' 502(a)(3) claims are time-barred, and Allstate is entitled to summary judgment.

Alternatively, the Court should grant partial summary judgment on Plaintiffs' request for a surcharge remedy.  The only evidence to support this requested relief is based on an injury—the loss of the retiree life benefit itself—that arose from Allstate's non-fiduciary and perfectly lawful act of terminating the retiree life insurance benefit.  Plaintiffs, therefore, cannot show their requested relief remedies any injury caused by a fiduciary breach.

**ARGUMENT**

I.    **Plaintiffs' Section 502(a)(3) Claims Are Time Barred Under the Undisputed Facts.**
      *(Replying to Turner Opposition, Section V(b))*

Plaintiffs place their entire defense for the timeliness of their claims on a fundamental

misreading of the relevant statute.  By its terms, 29 U.S.C. § 1113 applies to Plaintiffs' Section

502(a)(3) claims and bars claims made "after the earlier of" three years after Plaintiffs had actual

knowledge of the breach, or six years after the last action that constituted the fiduciary breach.

*See Edes v. Verizon Commc'ns, Inc.*, 417 F.3d 133, 140 (1st Cir. 2005) (noting requirement that

claims be made "within six years of the breach . . . *and* within three years of the date on which

the plaintiff had actual knowledge of the breach." (emphasis added)).  And contrary to Plaintiffs'

argument, Turner Opp. at 41, n.10, the Eleventh Circuit in recent days has held that ERISA's six-

year time bar "is properly classified as a statute of repose" that bars the action based on the date

that the defendant acted, without regard to when the cause of action or any damages may

ultimately have accrued. *Sec'y, U.S. Dep't of Labor v. Preston*, No. 17-10833, — F.3d —, 2017

WL 4545962, at *4 (11th Cir. Oct. 12, 2017).

Accordingly, there is no merit to Plaintiffs' argument that if they brought the action

within three years after receiving "actual knowledge" of the claim, then they have satisfied the

statutory limitations period regardless of when the fiduciary breach supposedly occurred.  That

argument is based on a patent misreading of the statute that contradicts both the statute's plain

language and its universal application by federal courts.  *See, e.g.*, *Preston*, 2017 WL 4545962,

at *4 ("[B]y its plain terms Section 1113(1) bars any action brought more than six years after the

date of the fiduciary's 'last action' that constituted the alleged breach"); *Larson v. Northrop

Corp.*, 21 F.3d 1164, 1168 (D.C. Cir. 1994) (declining to consider issue of actual knowledge

because "the six-year statute of limitations in § 1113(1)(A) would have run out by the time

Larson sued and would be the earlier of the two limitations period to expire"). Summary judgment is thus proper because Plaintiffs' claims are barred as a matter of law under Section 1113's six-year statute of repose.

### A. Plaintiffs Asserted Their Claims More Than Six Years After the Alleged Breach.
*(Replying to Turner Opposition, Section V(b)(i)-(ii))*

Plaintiffs do not dispute that their Section 502(a)(3) claims are based on Allstate's alleged misrepresentations, supposedly made to different plaintiffs at various times and in varying ways, that the retiree life insurance benefits were lifetime benefits, when in fact they were subject to amendment or termination at any time.[2] Nor do Plaintiffs dispute either that the last such fiduciary misrepresentation claimed by any of the named Plaintiffs occurred in June 2006, more than seven years before Plaintiffs filed this action in September, 2013, or that most of the asserted fiduciary misrepresentations are alleged to have taken place well before then, even as far back as the early 1980s. This alone should conclude the analysis, as Plaintiffs' claims are plainly time-barred by ERISA's six-year statute of repose. 29 U.S.C. § 1113(1).

Despite this, Plaintiffs say that the six-year repose period actually began on July 2, 2013, when Allstate elected to terminate the benefit. Turner Opp. at 45. Plaintiffs argue this decision was the "last action" of the fiduciary breach because without it, Plaintiffs had "no way of 'actually knowing' about [Allstate's] misrepresentations . . . ." *Id*. at 42-43. But the date on which Plaintiffs may have acquired "actual knowledge" of the fiduciary breach, or the date on which they may have suffered injury, is irrelevant to the application of Section 1113's six year

---

[2] Allstate's opening brief further explained why Plaintiffs' claims are time-barred under Section 1113(1), even if Plaintiffs attempted to characterize Allstate's alleged misstatements as "omissions" rather than affirmative "misrepresentations." Plaintiffs' response, however, does not argue that the alleged fiduciary breaches involved "omissions." Allstate therefore rests on the argument and support within its opening brief for this position. Doc. 308 at 5-6.

statute of repose.  The alleged breaches of fiduciary duty here were the supposed misrepresentations, and those occurred well outside of the six-year window.

If Congress had intended to commence the statutory limitation period from the date of injury, it would have done so.[3]  Instead, it chose to commence the six-year repose period from the date that the fiduciary breach occurred.  The breaches here were the alleged misrepresentations, all of which occurred more than six years before this action was filed.

Plaintiffs' argument, moreover, flatly ignores the record evidence.  Throughout the relevant period, Allstate repeatedly issued Plan documents and other communications that contained Allstate's reservation of rights to amend or terminate the Plan.  So Plaintiffs' claim that they could not have known about the alleged misrepresentation before 2013 is simply not true.  Turner Opp. at 42-43.  As Plaintiff Mountford testified, Allstate's reservation of its right to amend, modify or terminate the Plan was "boilerplate throughout the benefits."  SOF ¶ 41.[4]

In addition, the Supreme Court has made explicitly clear that a plan sponsor's decision to modify or terminate benefits is not a fiduciary action, and it therefore cannot be deemed to constitute a fiduciary breach.  *Lockheed,* 517 U.S. at 890; *Hughes Aircraft Co.*, 525 U.S. at 443. Plaintiffs cannot turn that decidedly non-fiduciary function into a fiduciary act simply by asserting that it "completed" a breach by misrepresentation that occurred years or even decades earlier.  Carried to its logical extreme, Plaintiffs' argument would eviscerate ERISA's repose

---

[3] *Compare* 29 U.S.C. § 1113 (requires any claim under ERISA Section 502(a)(3) be brought within the earlier of six years of (i) "the date of the last action which constituted part of the breach or violation," or (ii) "in the case of an omission," within six years of "the latest date on which the fiduciary could have cured the breach or violation," or (iii) within "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation."), *with* 42 U.S.C. § 9612(d)(2) (barring claims against Hazardous Waste Superfund "unless the claim is presented within 3 years after the later of the following:  (A) The date of the discovery of the loss and its connection with the release in question. . . . "), *and* 18 U.S.C. § 1030(g) (barring Computer Fraud and Abuse Act claims "unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damages.").

[4] Citations to "SOF ¶ _" refer to Defendant's Reply in Support of Its Combined Statement of Undisputed Facts in Support of its Motions for Summary Judgment, filed concurrently herewith, which summarizes Plaintiffs' responses (if any) to Allstate's original statement of undisputed facts.  Doc. 306.

period altogether with respect to amendment or modification of plan benefits. All any plaintiff would need to do is claim that the employer at some point in the distant past misrepresented that the plan could not or would not be changed, and the statute would essentially remain open indefinitely because the later amendment or termination of the plan would be the last act necessary to "complete" the fiduciary's misrepresentation. Indeed, Plaintiffs themselves go so far as to argue that ERISA's clear six-year statute of repose somehow does not bar their claims based on representations about "paid up" life insurance going back to the 1980s—more than three decades before Plaintiffs filed suit. Turner Opp. at 43.

That kind of distorted application of ERISA's limitation provisions has no support in the case law, and would frustrate the clear legislative intent behind ERISA's six-year statute of repose. A statute of repose, "although affording plaintiffs what the legislature deems a reasonable time to present their claims, [] protect[s] defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *United States v. Kubrick,* 444 U.S. 111, 117 (1979). That is precisely the case here, where much of the evidence consists of Plaintiffs' faded recollections about what they think they were told some 15 or 20 or 30 years ago by persons who in many cases cannot even be identified, let alone located. For purposes of ERISA's six-year statute of repose, it is simply irrelevant when Plaintiffs knew or should have known about the alleged fiduciary breach. As the Eleventh Circuit recently reiterated:

> Whereas a statute of limitations establishes a time limit "based on the date when the claim accrued," a statute of repose bars "any suit that is brought after a specified time since the defendant acted," without regard to any later accrual. Because by its plain terms Section 1113(1) bars any action brought more than six years after the date of the fiduciary's "last action" that constituted the alleged

<u>breach</u> . . . we think it clear that the time bar is properly classified as a statute of repose.

*Preston*, 2017 WL 4545962, at *4 (internal quotations and citations omitted).  Under the undisputed facts of this case, Section 1113's six-year repose period expired long before Plaintiffs brought their claims.[5]

Implicitly recognizing that they cannot prevail under the plain terms of the statute, Plaintiffs next rely on a policy argument.  Plaintiffs contend they should be excused from the statutory requirements because otherwise a Plan fiduciary could avoid liability if it "waits six years plus one day to reveal its true intention to the beneficiary."  Turner Opp. at 43-44.  This argument, again, ignores the full text of Section 1113.  In rare cases where a plaintiff can prove a "fraud or concealment," the limitations period is extended.  29 U.S.C. § 1113.  But that is the *only* exception.[6]  "That the limitations period in § 1113(1)(A) is six years . . . suggests a judgment by Congress that when six years has passed after a breach or violation, and no fraud or concealment occurs, the value of repose will trump other interests, such as a plaintiff's right to seek a remedy." *Larson*, 21 F.3d at 1172.  And, as explained below, Plaintiffs cannot establish any fraud or concealment here.

> **B.   Plaintiffs Have Not Established That a Fraud or Concealment Occurred to Toll the Limitations Period.**
> *(Replying to Turner Opposition, Section V(b)(iii))*

Plaintiffs seek to toll the statute based on supposed "fraud or concealment."  The burden of proving "fraud" or "concealment" is on the plaintiff, and Plaintiffs here must provide evidence that Allstate "intended to deceive" them so that Plaintiffs would "act upon it to their legal injury."

---

[5] The latest claimed "misrepresentation" supposedly was made to Plaintiff Shepherd in June, 2006, more than seven years before this action was filed.  SOF ¶ 89.  The asserted "misrepresentations" to other plaintiffs occurred at earlier points in time—in some cases decades earlier.

[6] As a statute of repose, ERISA's six-year limitation period is not subject to equitable tolling. *Preston,* 2017 WL 4545962, at *4.

Doc. 308 at 8-9.  In other words, Plaintiffs would need to show that for decades, through numerous CEOs and management changes, Allstate represented to its employees that the retiree life insurance benefit was in effect permanent and would be neither amended nor terminated, all while harboring a secret intention to terminate the Plan years later and take the benefit away. Plaintiffs offer no conceivable rationale as to how Allstate would stand to gain from such a scheme, nor do they provide any evidence to support it.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (holding non-movant must "go beyond the pleadings and … designate specific facts" to defeat summary judgment).

The record evidence, in fact, shows precisely the opposite.  The evidence shows that during the 23-year period relevant here, Allstate continued each year to add new retirees to the rolls of retiree life insurance and continued to pay millions of dollars in premiums on their collective behalf each year.  *See* SOF ¶ 62.  There is no reason any employer would do that if the ultimate objective was to deprive participants of their benefit.  In addition, and by Plaintiffs' own account, Allstate gave no consideration to modifying or terminating the availability of the life insurance benefit until late 2012, when Allstate was in the midst of analyzing its cost structure and determining whether changes to its benefit Plans were appropriate.  SOF ¶ 59; *see also* Turner Opp. at 15-16.  Even then, Allstate considered numerous options before deciding to terminate the Plan for persons who retired after 1989.  The ultimate decision was not reached by Allstate's CEO until shortly before Allstate announced that decision in July, 2013.  *See* Ex. 73, T. Wilson Dep. 109:19-114:2; *see also* Turner Opp. at 16.  So, there is no evidence that Allstate had any intent to terminate the retiree life insurance benefit at the time the alleged misrepresentations occurred.

Nor was there any concealment. Again, the record evidence shows precisely the opposite. Between 1990 and 2013, Allstate, in numerous SPDs and other Plan documents, and in informal communications like the annual Employee Statements of Total Compensation, repeatedly and regularly disclosed that it reserved its right to amend, modify, or terminate the retiree life insurance benefit at any time. SOF ¶¶ 5, 11-15, 40-43. This statement in the 1998 SPD is typical:

**Plan Amendment And Termination**

Although Allstate intends to continue the Plan, Allstate necessarily reserves the right to modify, amend, suspend or terminate it at any time, retroactive or otherwise, or to change the contribution amount required from Plan participants, by resolution of the board of Directors of Allstate or by a person duly delegated by the Board to take such action. The Plan's participants or beneficiaries do not have a vested right in any of the Plan's benefits.

SOF ¶¶ 9, 13-14. Given those forthright, explicit and wholly accurate disclosures regarding Allstate's ability to modify, amend or terminate Plan benefits, "at any time, retroactive or otherwise," there is simply no basis on which Plaintiffs can claim that Allstate somehow "concealed" anything.

Plaintiffs say that at the Preliminary Injunction hearing, Allstate "admitted that it harbored a subjective intent to terminate the benefit in the future." Turner Opp. at 42, 46-47. However, the only support Plaintiffs cite for that proposition is not evidence from the Preliminary Injunction hearing at all, but is instead a passage taken entirely out of context from this Court's ruling denying in part Allstate's Motion to Dismiss the Amended Complaints. Doc. 122. In that Rule 12 ruling—where the Court was required to take all allegations as true and to draw all inferences in the light most favorable to Plaintiffs[7]—the Court merely stated that "Allstate contends that its representations regarding the provisions of paid-up, permanent life

---

[7] *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

insurance were not *misrepresentations,* and that Allstate had no subjective intent to mislead Plaintiffs in making the misrepresentations." *Id.* at 11. (italics in original). That statement regarding Allstate's contention is not evidence, nor is it even a ruling or a factual finding, and to cite it as evidentiary support for the proposition that Allstate admitted to a subjective intent to terminate the benefit in the future—when in fact it says that Allstate contends the opposite—is a gross mischaracterization of the record.

Finally, Plaintiffs rely on the non-precedential opinion from *McGuire v. Metro. Life Ins. Co.*, No. 12-10797, 2014 WL 3894363 (E.D. Mich. Aug. 8, 2014), to argue they could meet the "fraud or concealment" exception if there was evidence of a "knowing . . . omission of a material fact." Turner Opp. at 47. That evidence is precisely what Plaintiffs lack here. In *McGuire*, there were accusations—and more importantly, actual evidence—that the defendant intentionally misrepresented plan details in written communications and hid plan changes from the enrollees. *McGuire*, 2014 WL 3894363, at *22-23. Nothing like that exists here. Plaintiffs have provided no evidence that Allstate knowingly omitted information with the intent to deceive Plaintiffs and other Allstate employees, because there is none, nor is there any evidence that Allstate omitted information regarding its decision to terminate the benefit, because no such decision was made until 2013.

Plaintiffs therefore have not come forward with any evidence that would create a genuine issue of material fact with respect to fraudulent concealment. There being no evidence to support fraudulent concealment, Plaintiffs' Section 502(a)(3) claims are barred under Section 1113's six-year statute of repose, and Allstate is entitled to judgment as a matter of law.

## II.     Even Under *Amara*, Plaintiffs Must Still Present Evidence That the Harm Giving Rise to an Equitable Surcharge Remedy Is Causally Connected to a Fiduciary Breach.
*(Replying to Turner Opposition, Section V(c))*

Allstate has alternatively moved for partial summary judgment on Plaintiffs' requested surcharge remedy because, as a matter of law, Allstate's termination of the retiree life insurance benefit was not a fiduciary action subject to a fiduciary surcharge.  Doc. 308 at p. 9-11.  In response, Plaintiffs argue that the Supreme Court's decision in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), is a "game changer," as if that label somehow entitles them to an equitable surcharge remedy here.  While *Amara* may have expanded the types of equitable remedies available for a breach of fiduciary duty under ERISA, the Court's decision reaffirmed that those remedies must be based on a harm or injury resulting from or caused by a fiduciary breach.  *Id.* at 444-45. Plaintiffs have described their requested surcharge remedy here as an amount equivalent to the "savings" Allstate gained from terminating the retiree life benefit or, conversely, the "money Allstate would have spent" had it not terminated the retiree life benefit.  SOF ¶¶ 139, 141-142. But Allstate's termination of the retiree life benefit was not a fiduciary act and therefore cannot be a fiduciary breach.  Accordingly, and *Amara* notwithstanding, the surcharge remedy based on Allstate's supposed "savings" from terminating the benefit is not available.

### A.     The "Decision" to Terminate the Retiree Life Insurance Was No More a Fiduciary Act Than the Termination Itself.
*(Replying to Turner Opposition, Section V(a)(4))*

Plaintiffs' only evidence to support their requested surcharge relief is tied directly to Allstate's non-fiduciary act of terminating the retiree life benefit.  In an attempt to circumvent the clear case law that provides the termination of a plan is a settlor function, and not a fiduciary function, Plaintiffs repeatedly attempt to frame the fiduciary breach as Allstate's decision to terminate the benefit, rather than the termination itself.  Turner Opp. at 31.  Plaintiffs posit a

metaphysical distinction between the decision to terminate benefits and the act of terminating benefits.  The latter, they say, is not a fiduciary function, but the former somehow is.

Plaintiffs' distinction between the termination of the benefit and the decision to terminate the benefit is not supported by any relevant authority.  On the contrary, the Supreme Court has made abundantly clear that a plan sponsor—like Allstate—does not act in a fiduciary capacity when it terminates or amends a plan.  *Lockheed Corp.*, 517 U.S. at 890; *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995); *see also Hughes Aircraft Co.*, 525 U.S. at 443.  These holdings would be gutted if the distinction urged by plaintiffs were applied.  A plan sponsor's termination or amendment of a plan will always be preceded by a *decision* to amend or terminate, and it makes no sense to hold one to a fiduciary standard and not the other.  Allstate's decision to terminate the benefit—like the actual termination itself—was a non-fiduciary act.  "[A]n employer's *decision* to amend or terminate an employee benefit plan is unconstrained by the fiduciary duties that ERISA imposes on plan administration."  *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1162 (3d Cir. 1990) (emphasis added)).

Plaintiffs also suggest that the timing of Allstate's decision to terminate the benefit—a decision made in 2013 to be effective in 2015—somehow makes the formal termination in 2015 a "discretionary act of the administrator and fiduciary."  Turner Opp. at 32.  Again, plaintiffs cite no factual or legal support for this proposition, and it makes no sense.  If the Company has decided to terminate the benefit, signing the documents needed to implement that termination on or before the effective date of the decision involves no "discretion" at all: it is very much a ministerial act.  In any event, both amending and terminating a welfare benefit plan are indisputably settlor functions.  *Lockheed*, 517 U.S. at 890.  They thus cannot give rise to a claim for breach of fiduciary duty that Plaintiffs' requested surcharge remedy could address.  *Id.*

**B.** **Plaintiffs Must Still Show an Actual Harm or Injury Caused by an Alleged Breach of Fiduciary Duty.**
    *(Replying to Turner Opposition, Section V(c))*

Because Plaintiffs' purported loss of benefits was the result of Allstate's non-fiduciary decision to terminate the retiree life insurance benefit, that act cannot form the basis of Plaintiffs' requested surcharge remedy.  Instead, Plaintiffs must identify some other fiduciary breach that caused them "actual harm."  They have not done so.

Plaintiffs argue that, under *Amara*, a change in plan terms alone supports a surcharge remedy under Section 502(a)(3).  Plaintiffs contend that:

> In <u>Amara</u>, Cigna "changed the terms" of its pension plan, thereby reducing the benefits to some of its employees. <u>Id.</u> at 1870.  That decision—the "changing of the terms of the plan"—gave rise to the <u>Amara</u> holding that several equitable remedies, among them "surcharge," were available to the plaintiffs as redress for Cigna's breach of fiduciary duty, or "breach of trust" by changing the terms of the plan. <u>Id.</u> at 1880.

Turner Opp. at 51.  This is an egregious misreading of *Amara*.  In *Amara*, the breach of fiduciary duty claim was not based on Cigna's decision to change the plan terms.  The breaches of fiduciary duty in *Amara* were deliberate misrepresentations and omissions in the official plan documents, including the SPD's, regarding the impact the changes would have on plaintiffs' benefits.  *See Amara*, 563 U.S. at 424-25, 428 (noting Cigna's failure to give adequate notice and disclosures of the changes and the district court's findings that Cigna's descriptions were misleading).  It was in those circumstances that the Supreme Court held that various traditional equitable remedies, including surcharge, might be available to the Plaintiffs as a remedy for the fiduciary breach.  However, the *Amara* court did not decide which of those remedies, if any, should be awarded to the plaintiffs in that case.  Instead, the *Amara* court expressly reserved for the district court the decision about whether "an appropriate remedy may be imposed under

13

§ 502(a)(3)." *Id.* at 442, 445 ("We need not decide which remedies are appropriate on the facts of this case in order to resolve the parties' dispute as to the appropriate legal standard.")

While Plaintiffs argue that *Amara* eliminated the detrimental reliance element for Section 502(a)(3) claims, that is incorrect.  The Court in *Amara*[8] simply stated that in the context of considering whether a surcharge remedy can be imposed, there was no "strict requirement" of detrimental reliance; but it clearly held that "a fiduciary can be surcharged under § 502(a)(3) only upon a showing of actual harm . . . proved by a preponderance of the evidence."  563 U.S. at 444.  The actual harm "*may sometimes consist of detrimental reliance*, but it might also come from the loss of a right protected by ERISA or its trust-law antecedents."  *Id.* (emphasis added).

Awarding Plaintiffs a surcharge here, then, would turn *Amara* on its head.  Unlike the Plaintiffs in *Amara* who had vested pension rights, Plaintiffs here have no "right protected by ERISA or its trust-law antecedents" with respect to the continuation of their life insurance benefit.  On the contrary, ERISA protects the right of the employer to "adopt, modify, or terminate welfare plans" at any time and for any reason, including cost control and competitive concerns.  It would be wholly paradoxical to punish the employer's exercise of that right by imposing a surcharge on the employer's financial savings, which is precisely what ERISA was designed to allow.  *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015).  Because "Congress . . . conspicuously chose[] to exempt welfare benefit plans from the full breadth of ERISA's extensive [vesting and accrual] requirements," the loss of the benefit cannot constitute "actual harm" for purposes of Section 502(a)(3).  *Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 934-35 (5th Cir. 1993).

---

[8] The portion of the *Amara* decision discussing surcharge is arguably dictum as the plaintiffs in that case were not seeking surcharge, but rather reformation of the contract.  *Id.* at 446–49 (Scalia, J., concurring); *Stocks v. Life Ins. Co. of North Am.*, 861 F. Supp. 2d 948, 952 (E.D. Wis. 2012) (finding the Court's discussion of surcharge in *Amara* was not controlling authority).

In other words, whether or not detrimental reliance is still an element of Plaintiffs'

Section 502(a)(3) claim, *Amara* nonetheless requires Plaintiffs to establish some form of "actual

harm" resulting from or caused by the alleged misrepresentations (as opposed to the termination

of the benefit) before a surcharge remedy may be imposed.[9]  *Id.*  Indeed, other courts have held

that the equitable remedy losses must have a causal connection to the fiduciary breach.  *Willett v.*

*Blue Cross & Blue Shield of Ala.*, 953 F.2d 1335, 1343 (11th Cir. 1992); *Edmonson v. Lincoln*

*Nat'l Life Ins. Co.*, 725 F.3d 406, 424 (3d Cir. 2013) ("ERISA requires a plaintiff to show that

the injury was a proximate cause of the breach of duty.").

Plaintiffs argue that "[h]ad Allstate's representations been truthful, then all retirees would

have had paid up life insurance."  Turner Opp. at 50.  That statement is incorrect on its face.

There is no dispute that the Governing Plan Documents, including SPDs that were distributed to

Plaintiffs and the putative class, never mentioned paid up life insurance and at all times provided

that Allstate had a right to amend, modify or terminate the plan.   ERISA likewise allows an

employer to amend, modify or terminate welfare benefits at any time.  The Court cannot rewrite

either the Plan or the law to conform to Plaintiffs' claimed misimpressions.  *See U.S. Airways v.*

*McCutchen,* 569 U.S. 88, 100-01 (2013) (equitable remedies for a breach of fiduciary duty under

Section 502(a)(3) may not be used to override or rewrite clear and unambiguous terms of ERISA

plan); *Ret. Comm. of DAK Americas LLC v. Brewer*, 867 F.3d 471, 485 (4th Cir. 2017) (holding,

"[b]ased on the clear precedent from this Circuit and others, the doctrine of equitable estoppel

cannot be used to require the payment of benefits that conflicts with the express, written terms of

the Plan").  So, if Allstate's alleged representations had been truthful, then all retirees would

have been informed that Allstate reserved the right to amend or terminate the Plan.  Either way,

---

[9] As Allstate pointed out in its opening memorandum, the named Plaintiffs cannot show actual harm because their
benefits have continued in effect notwithstanding Allstate's termination of the benefit for other persons who retired
on or after January 1, 1990.  Doc. 308 at 11-12.

the termination of Plan benefits would have occurred, so the alleged misrepresentations did not cause the loss of the benefit or open the door to any alleged "savings" by Allstate.  *See Edmonson*, 725 F.3d at 424 (granting summary judgment because, among other things, the fiduciary breach did not directly cause the injury for which plaintiff sought relief).

Plaintiffs' reliance on *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 178 (4th Cir. 2012), is misplaced.  In *McCravy*,[10] the plaintiff employee, relying on assurances of coverage by the insurer, paid premiums for life and accidental death and disability insurance coverage for her dependent, which the insurer continued to accept even though the dependent was not eligible to participate in the plan due to age restrictions.  *Id.* at 178.  The plaintiff also detrimentally relied on the insurer's assurances by declining other insurance.  *Id.* at 178-79.  The dependent died while premium payments were still being made and the defendant subsequently denied the claim. *Id.* at 178.  The court determined that in those circumstances, the plaintiff could seek a remedy beyond a mere premium refund, and remanded to the district court to consider whether to assess a surcharge in the amount of the lost insurance benefit.  *Id.* at 183.

That is a far cry from the situation here.  The actions of the fiduciary in *McCravy* were related to Plan administration which, unlike Allstate's decision to terminate the retiree life insurance benefit, are squarely within ERISA's fiduciary functions.  Moreover, the plaintiff in *McCravy* clearly established "actual harm" because she had declined the opportunity to obtain other insurance in reliance on the fiduciaries' assurance of coverage.  Were it not for the fiduciary's misrepresentations, the decedent in *McCravy* would have obtained other insurance that would have covered the claim.  An equitable surcharge in that instance was therefore needed to make the plaintiff whole.  Here, by contrast, Allstate's termination of the benefit would have

---

[10] Unlike the non-fiduciary act that forms the basis of the *Turner* Plaintiffs' claim, the *McCravy* plaintiff's claim was based on fiduciary acts—misrepresentations concerning coverage and denial of individual benefits under a plan.  *Id.* at 178.

occurred even if no misrepresentations had been made, so the termination of the benefit left Plaintiffs no worse off.  Accordingly, it is inappropriate to assess a surcharge based on the loss of the benefit or any savings realized by Allstate as a result.  SOF ¶¶ 143-144.

## CONCLUSION

For all the foregoing reasons, Allstate's motion for summary judgment on Plaintiffs' Section 502(a)(3) claim or, alternatively, for partial summary judgment on their request for a surcharge remedy should be granted.


Dated: October 30, 2017.                      /s/ Richard L. Fenton
                                              Richard L. Fenton
                                              (Admitted *pro hac vice* /IL Bar: 3121699)
                                              Christopher Q. King
                                              (Admitted *pro hac vice* /IL Bar: 6189835)
                                              Amanda M. Moeller
                                              (Admitted *pro hac vice* /IL Bar: 6286890)
                                              DENTONS US LLP
                                              233 South Wacker Drive. Suite 5900
                                              Chicago, IL 60606
                                              Telephone: (312) 876-8000
                                              Facsimile: (312) 876-7934

                                              Dara D. Mann
                                              (Admitted pro hac vice /GA Bar: 469065)
                                              Uchenna Ekuma-Nkama
                                              (Admitted pro hac vice /GA Bar: 957861)
                                              Deborah F. Lempogo
                                              (Admitted pro hac vice /MO Bar: 68516 & IL Bar: 6324234)
                                              DENTONS US LLP
                                              303 Peachtree Street, Suite 5300
                                              Atlanta, Georgia 30308
                                              Telephone: (404) 527-4000
                                              Facsimile: (404) 527-4198

                                              Wade P. K. Carr
                                              (Admitted *pro hac vice* /MO Bar:62786 & KS Bar: 25105)
                                              Samantha J. Wenger
                                              (Admitted *pro hac vice* /MO Bar: 25322 & KS Bar: 64230)

17

DENTONS US LLP
4520 Main Street
Suite 1100
Kansas City, Missouri 64111
Telephone: (816)460-2400
Facsimile: (816) 531-7545

Meagan D. Self
(Admitted *pro hac vice* /TX Bar: 24078453)
DENTONS US LLP
2000 McKinney Avenue
Suite 1900
Dallas, Texas 75201
Telephone: (214) 259-0900
Facsimile: (214) 259-0910

David J. Middlebrooks
ASB- 8553-D58D
Albert L. Vreeland, II
LEHR MIDDLEBROOKS & VREELAND, P.C.
P.O. Box 11945
Birmingham, AL 35202-1945
Telephone: (205) 323-9262
Facsimile: (205) 326-3008

*Attorneys for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 30, 2017, I filed the foregoing with the Clerk of the Court

via the ECF system, which will send notice and a copy of the same to all counsel of record.

_/s/ Richard L. Fenton_
An attorney for Defendant