# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| GARNET TURNER,<br>individually and on behalf of all others<br>similarly situated, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 2:13-CV-685-WKW |
| v. | |
| ALLSTATE INSURANCE CO., | |
| Defendant. | |
| JOHN E. KLAAS,<br>individually and on behalf of all others<br>similarly situated, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 2:15-CV-406-WKW |
| v. | |
| ALLSTATE INSURANCE CO., | |
| Defendant. | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST *TURNER* PLAINTIFFS BENTLEY, KERR, NIXON, SHEPHERD, VIDALES, WILLINGHAM, AND WOFFORD AND FOR SUMMARY JUDGMENT <u>AGAINST *KLAAS* PLAINTIFF MOUNTFORD</u>**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

I.  Bentley, Vidales, and Willingham Lack Individualized Evidence to Show Their
Alleged Misrepresentations Were Made by a Fiduciary.........................................2

    A.  The Mere Fact That Plaintiffs Claim a Manager Made the Misrepresentation
Is Insufficient to Establish Fiduciary Status.
*(Replying to Turner Opposition, Section V(d)(ii))* ...........................................3

        1.  Vernon Bentley
*(Replying to Turner Opposition, Section V(d)(v)(1))* .........................5

        2.  Herbert Vidales
*(Replying to Turner Opposition, Section V(d)(v)(2))* .........................5

        3.  Suzanne Willingham
*(Replying to Turner Opposition, Section V(d)(v)(3))* .........................8

    B.  Plaintiffs' Other Arguments About Alleged Misrepresentations Are
Unconvincing.
*(Replying to Turner Opposition, Section V(d)(iv), (vi)-(vii))* ........................8

II.  Plaintiffs Fail to Present Evidence of Actual Harm Due to Alleged
Misrepresentations.
*(Replying to Turner Opposition, Section V(d)(vii)-(ix))* ....................................11

    A.  Vernon Bentley
*(Replying to Turner Opposition, Section V(d)(ix)(1))* ...................................12

    B.  Donald Kerr
*(Replying to Turner Opposition, Section V(d)(ix)(2))* ...................................13

    C.  Alberta Nixon
*(Replying to Turner Opposition, Section V(d)(ix)(3))* ...................................13

    D.  Kathy Shepherd
*(Replying to Turner Opposition, Section V(d)(ix)(4))* ...................................14

    E.  Herbert Vidales
*(Replying to Turner Opposition, Section V(d)(ix)(5))* ...................................15

    F.  Herb Wofford
*(Replying to Turner Opposition, Section V(d)(ix)(6))* ...................................15

III.  *Klaas* Plaintiff Mountford Lacks Evidence to Support His Section 502(a)(3)
Claim.
*(Replying to Klaas Opposition, Argument Section F)* ......................................16

CONCLUSION....................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell v. Pfizer Inc.*,
   449 F. Supp. 2d. 404 (S.D.N.Y. 2007)......................................................................2

*Brown v. Owens Corning Inv. Review Comm.*,
   622 F.3d 564 (6th Cir. 2010) ................................................................................9

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................................ *passim*

*CIGNA Corp. v. Amara*,
   563 U.S. 421 (2011)...............................................................................................11

*Curtiss-Wright Corp. v. Schoonejongen*,
   514 U.S. 73 (1995)..........................................................................................11, 13

*Estate of Dermady v. Eastman Kodak Co.*,
   136 F. Supp. 2d. 181 (W.D.N.Y. 2001) .................................................................2

*Green Door Realty Corp. v. TIG Ins. Co.*,
   329 F.3d 282 (2nd Cir. 2003)..................................................................................3

*Hammond v. Reynolds Metals Co.*,
   219 F. App'x 910 (11th Cir. 2007) ...................................................................2, 18

*Haviland v. Metro. Life Ins. Co.*,
   730 F.3d 563 (6th Cir. 2013) .........................................................................6-7, 17

*Healthier Choice Flooring, LLC v. CCA Glob. Partners, Inc.*,
   No. 1:11-CV-2504-CAP, 2013 WL 12101905 (N.D. Ga. Jan. 4, 2013).................10

*Hendrian v. AstraZeneca Pharm. LP*,
   No. 3:13-CV-00775, 2015 WL 404533 (M.D. Pa. Jan. 29, 2015).........................11

*Jensen v. Solvay Chemicals, Inc.*,
   721 F.3d 1180 (10th Cir. 2013) ............................................................................17

*Josendis v. Wall to Wall Residence Repairs, Inc.*,
   662 F.3d 1292 (11th Cir. 2011) ..............................................................................6

*Kannapien v. Quaker Oats Co.*,
   507 F.3d 629 (7th Cir. 2007) ..................................................................................4

*Kenseth v. Dean Health Plan, Inc.*,
  610 F.3d 452 (7th Cir. 2010) ...................................................................................8

*Kerber v. Qwest Grp. Life Ins. Plan*,
  656 F. Supp. 2d 1279 (D. Colo. 2009) ....................................................... 6-7, 17

*Lee v. Sec. Check, LLC*,
  No. 3:09-CV-421-J-12TEM, 2010 WL 3075673 (M.D. Fla. Aug. 5, 2010) ...................12, 13

*M & G Polymers USA, LLC v. Tackett*,
  135 S. Ct. 926, 933 (2015).....................................................................................11

*Macuba v. DeBoer*,
  193 F.3d 1316 (11th Cir. 1999) ................................................................................6

*Mertens v. Hewitt Assocs.*,
  508 U.S. 248 (1993)..................................................................................................3

*Monper v. Boeing Co.*,
  104 F. Supp. 3d 1170 (W.D. Wash. 2015).................................................................4

*Parrott v. PNC Bank, Nat. Ass'n*,
  986 F. Supp. 2d 1263 (N.D. Ala. 2013)....................................................................6

*Pell v. E.I. DuPont de Nemours & Co. Inc.*,
  539 F.3d 292 (3d Cir. 2008)....................................................................................12

*Schmidt v. Sheet Metal Workers' Nat. Pension Fund*,
  128 F.3d 541 (7th Cir. 1997) ...................................................................................4

*Shook v. Avaya Inc.*,
  625 F.3d 69 (3d Cir. 2010)......................................................................... 11, 14-15

*Sprague v. Gen. Motors Corp.*,
  133 F.3d 388 (6th Cir. 1998) ....................................................................... 6-7, 17

*Wise v. El Paso Nat. Gas Co.*,
  986 F.2d 929 (5th Cir. 1993) ...................................................................................9

**Statutes**

Employee Retirement Income Security Act (ERISA) Section 502(a)(3) ............................ *passim*

**Other Authorities**

Federal Rules of Civil Procedure Rule 30(b)(6) ...........................................................10

Defendant Allstate Insurance Co. ("Defendant" or "Allstate") submits the following reply brief in support of its motion for summary judgment against *Turner* Plaintiffs Vernon Bentley, Donald Kerr, Alberta Nixon, Kathy Shepherd, Herbert Vidales, Suzanne Willingham, and Herb Wofford and *Klaas* Plaintiff Terry Mountford, on their claim that Allstate breached its fiduciary duty under ERISA Section 502(a)(3) (Docs. 304, 305, and 310).[1]

## INTRODUCTION

As fully discussed in Allstate's opening memorandum (Doc. 310), *Turner* Plaintiffs Bentley, Kerr, Nixon, Shepherd, Vidales, Willingham, and Wofford and *Klaas* Plaintiff Mountford each lack evidence necessary to prove one or more essential elements of their claim. The discovery record is closed as to each Plaintiff, yet none can establish, through supporting record cites to competent evidence, a breach of fiduciary duty based on alleged misrepresentations about coverage under Allstate's Plan.

Rather than present evidence supporting essential elements of their claim, Plaintiffs rely on their conclusory allegations and then improperly seek to shift the burden to Allstate to refute them. But it is Plaintiffs' burden to establish the essential elements of their claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (explaining that summary judgment should be granted when there is no genuine dispute as to any material fact, and the non-moving party "fails to make a showing sufficient to establish . . . an element essential to [its] case" on which it bears the ultimate burden of proof). Thus, to obtain summary judgment, Allstate need only show that the respective Plaintiff lacks evidence sufficient to prove an essential element of their claim. *Id.*

---

[1] The *Turner* and *Klaas* Plaintiffs each filed a consolidated opposition to Allstate's dispositive motion filings. *See* Doc. 329, *Klaas* Plaintiffs' Omnibus Opposition to Defendant's Multiple Motions for Summary Judgment Against *Klaas* Plaintiffs (hereinafter, "Klaas Opp."); Doc. 332, *Turner* Plaintiffs' Opposition to Defendant's Motion for Summary Judgment Against *Turner* Plaintiffs (hereinafter "Turner Opp."). While Allstate does not object to the consolidated opposition, the issues and facts differ for the different claims brought by different plaintiffs. Accordingly, Allstate is filing its reply briefs separately in support of each motion, as explained in its overviews of its dispositive motion filings (Docs. 304-305).

At least eight named Plaintiffs fail that test.  Specifically, they cannot show that (1) Allstate, acting in a fiduciary capacity, (2) made a material misrepresentation or omission, (3) that caused them harm or upon which they detrimentally relied.  *Hammond v. Reynolds Metals Co.*, 219 F. App'x 910, 916-17 (11th Cir. 2007); *accord Bell v. Pfizer Inc.*, 449 F. Supp. 2d. 404, 410 (S.D.N.Y. 2007); *Estate of Dermady v. Eastman Kodak Co.*, 136 F. Supp. 2d. 181, 189 (W.D.N.Y. 2001).  Plaintiffs must satisfy each element to survive summary judgment. *Celotex Corp.*, 477 U.S. at 322-23.

**I.    Bentley, Vidales, and Willingham Lack Individualized Evidence to Show Their Alleged Misrepresentations Were Made by a Fiduciary.**

Plaintiffs must establish the alleged misrepresentations that form the basis of their Section 502(a)(3) claims were made by an individual acting in a fiduciary capacity, at the time the alleged misrepresentation was made.  *See, e.g.*, *Hammond*, 219 F. App'x at 916-17 ("A claim for breach of fiduciary duty requires evidence that the plan fiduciary made material misrepresentations about that plan to the plan participants and the participants relied on that misrepresentation to their detriment.").  To make this showing, Plaintiffs need evidence of: (1) when the misrepresentation allegedly occurred, (2) who made the misrepresentation, and (3) whether that person was a plan fiduciary or authorized by a plan fiduciary.  Plaintiffs have attempted to muddy the waters by conflating events and by omitting key dates from their discussion of the evidence—arguing, for example, that a document created years after the alleged misrepresentation in question somehow shows that the person making the misrepresentation years earlier was a fiduciary or agent of the fiduciary at that time. Turner Opp. at 56-59, 61-64. When the record facts are sorted out, however, it is clear that Allstate is entitled to summary judgment against these named Plaintiffs.

A.     **The Mere Fact That Plaintiffs Claim a Manager Made the Misrepresentation Is Insufficient to Establish Fiduciary Status.**
       *(Replying to Turner Opposition, Section V(d)(ii))*

Much of Plaintiffs' argument focuses on their assertion that their respective "managers" made the alleged misrepresentations about their retiree life insurance benefit.  Plaintiffs attempt to rely on the proposition that the term "fiduciary" is to be "liberally construed."  Turner Opp. at 54-55, 61.  That general principle, however, does not relieve Plaintiffs of their burden to prove the elements of their claim.

Plaintiffs seem to be proceeding on the assumption that any "manager," regardless of whether that manager worked in the benefits group, or in HR, or in claims, or in underwriting, or in accounting, or in janitorial services, *a fortiori* had sufficient "control and authority *over the plan*" to qualify as a plan fiduciary,[2] and that any statements made by a "manager," whether formal, informal, or over the water cooler, constituted official communications regarding the Plan.  But simply labeling someone a "manager" says nothing about their overall duties and responsibilities, much less about whether they had any actual or apparent authority to make the alleged statements attributed to them.  *See Green Door Realty Corp. v. TIG Ins. Co*., 329 F.3d 282, 288-89 (2nd Cir. 2003) ("Under general principles of agency, the authority of an agent 'is the power of the agent to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestations to him.'" (quotation and citation omitted)).  The focus must be on the fiduciary's conduct.  *Id.* at 289 (explaining that apparent authority "exists only where the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act.").  In other words, an employee, even a managerial employee, does not

---

[2] *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993).

transform himself or herself into a plan fiduciary simply by talking about plan benefits. *Monper v. Boeing Co.*, 104 F. Supp. 3d 1170, 1179 (W.D. Wash. 2015) (citing *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007); *Schmidt v. Sheet Metal Workers' Nat. Pension Fund*, 128 F.3d 541, 547 (7th Cir. 1997)).

Plaintiffs make the overly broad assertion that all of Allstate's managers were acting in a fiduciary capacity at all times and claim—without evidentiary support—that Allstate "equates 'managers' with human resources personnel who are indisputably fiduciaries." Turner Opp. at 57. Even if this were true, Plaintiffs still ignore the rule that individuals are not plan fiduciaries merely by virtue of their position, even human resources positions. *See, e.g.*, *Kannapien*, 507 F.3d at 639 (holding neither the employer's plant manager nor human resources manager acted as plan fiduciary in discussing early retirement plan benefits with employees). Plaintiffs' statement merely highlights Plaintiffs' inability to present individualized and admissible facts necessary to establish the essential elements of their claim.

To support their theory that managers were acting as agents of the fiduciary, Plaintiffs point to three general documents—Your Personal Statements of Total Compensation provided between 1991 and 1999, 1998 Human Resources Policy Guide and 1999 RIF Sample Questions & Answers—as purported "confirmation that Allstate managers were fiduciaries when they made representations about benefits, which included retiree life insurance." Turner Opp. at 57-58. These documents did direct individuals to their managers or human resources department for questions (*id.*), but, by themselves, they do not establish that any Plan fiduciary authorized them to make the representations they allegedly made to Bentley, Vidales, and Willingham. These Plaintiffs have failed to present sufficient, individualized evidence regarding each statement to

meet their burden, including when the statements were made and whether the speaker (a manager or otherwise) had actual or apparent authority at that time.

      1.     <u>Vernon Bentley</u>
              *(Replying to Turner Opposition, Section V(d)(v)(1))*

Bentley testified that the alleged misrepresentations were made in the early 1980s, during the hiring process and shortly after starting at Allstate.  SOF ¶ 65.[3]  He now argues that his "supervisor's and manager's authority is apparent and was expressly granted by Allstate in their Plan Documents and Human Resource Documents."  Turner Opp. at 61.  But the documents that supposedly "granted" this authority were not created or distributed until the 1990s—more than a decade after the alleged misrepresentation were made—and cannot retroactively confer fiduciary status or establish any authority.  There is simply no evidence that Bentley's supervisor or sales manager were authorized by a plan fiduciary to tell Bentley that his retiree life insurance would be "paid up."

      2.     <u>Herbert Vidales</u>
              *(Replying to Turner Opposition, Section V(d)(v)(2))*

Vidales offers three arguments that a fiduciary made the alleged misrepresentations to him.  None are persuasive.

First, Vidales asserts that a document provided by Allstate's Human Resources Department—which on its face was clearly not a comprehensive or detailed review of all of the terms and conditions of the Plan—states that "$30,000 will be continued without further contribution," meets the Plan fiduciary requirement.  Turner Opp. at 62.  That, however, is not a misrepresentation.  That was in fact what the Plan provided at the time, and it is undisputed that Vidales did receive $30,000 in retiree life insurance when he retired in 1999, and that the

---

[3] Citations to "SOF ¶ _" refer to Defendant's Reply in Support of its Combined Statement of Undisputed Facts in Support of its Motions for Summary Judgment, filed concurrently herewith, which summarizes Plaintiffs' responses (if any) to Allstate's original statement of undisputed facts (Doc. 306).

coverage continued for the next 16 years without further contribution. *See* SOF ¶ 62, 93. The document does not say that the benefit is "permanent," or "paid up," or represent in any way that Allstate will never exercise its rights under ERISA or under the applicable Plan Documents to amend, modify or terminate the Plan. Doc. 44-15, Ex. 15 to Second Am. Compl. The document was an accurate description of the benefit at that time and therefore was not inaccurate or misleading. *See* Doc. 310 at 5 (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998); *Kerber v. Qwest Grp. Life Ins. Plan*, 656 F. Supp. 2d 1279, 1289–90 (D. Colo. 2009); *Haviland v. Metro. Life Ins. Co.*, 730 F.3d 563, 573 (6th Cir. 2013)).

Second, Vidales cites his own testimony that a Dean Witter employee, Mr. Streitmatter, "was representing the company." Turner Opp. at 63. That testimony, however, consists of little more than Vidales' speculation about whether or to what extent Streitmatter – who was an outside investment adviser and not an Allstate employee – was authorized to make statements regarding the Retiree Life Insurance Plan. *See Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999) ("The general rule is that inadmissible hearsay 'cannot be considered on a motion for summary judgment.'"); *Parrott v. PNC Bank*, *Nat. Ass'n*, 986 F. Supp. 2d 1263, 1266 (N.D. Ala. 2013) ("It has long been the law of this circuit that, when deciding a motion for summary judgment, a district court may not consider evidence which could not be reduced to an admissible form at trial"); *see also Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1317 (11th Cir. 2011) (affirming district court's refusal to consider factual allegations that "principally relied on conjecture and speculation, not admissible evidence based on personal knowledge"). Beyond that, however, Vidales' testimony does not identify any specific statements by Streitmatter regarding Allstate's ability to amend or terminate the Plan. *See* Vidales Dep. 36:7-39-7, 46:17-48:8, 52:8-12. Although Vidales has a general recollection that

Streitmatter said words to the effect that the retiree life insurance would be paid by Allstate for life—which was an accurate description of the Plan at the time—he recalls no specifics about the meeting, the context in which such statements were made, or the words that were used.  Vidales Dep. 52:8-12; 60:2-25.  Vidales also testified that no one ever told him that the retiree life insurance was "paid up."  SOF ¶ 101.

Finally, Vidales says there were "numerous representations made by managers and supervisors" to the effect that the benefit would be paid for life.  Turner Opp. at 63.  Apart from the fact that these vague assertions lack any evidentiary foundation, they fail to establish either misrepresentation or that the statements came from a fiduciary or one authorized to speak regarding plan benefits.  Again, the statement that the benefit would be "paid for life" was an accurate description of the benefit plan at the time and does not constitute a misrepresentation. *See Sprague v. Gen. Motors Corp.*, 133 F. 3d 388 (6th Cir. 1998) (en banc) (statements were not inaccurate or misleading because they accurately described the plan benefits at the time the statements were made); *accord Kerber v. Qwest Grp. Life Ins. Plan*, 656 F. Supp. 2d 1279, 1289-90 (D. Colo. 2009) (granting summary judgment because statement that life insurance "will be continued without further reduction – at no cost to you" was an accurate description of the benefit at that time); *see also Haviland v. Metro. Life Ins. Co.*, 730 F.3d 563, 573 (6th Cir. 2013) (statement that the benefit "would be in effect for their lifetime" was not inaccurate or misleading because it was true under the existing terms of the plan).  Moreover, Vidales, who had been employed by Allstate between 1972 and 1999, places no time frame on these supposed statements.  Vidales' testimony about vague statements from unnamed managers at some unknown time is simply not evidence that these unidentified managers were Plan fiduciaries, or even that any misrepresentations occurred.

3.    Suzanne Willingham
*(Replying to Turner Opposition, Section V(d)(v)(3))*

Willingham's testimony about alleged misrepresentations from her alleged managers and human resources personnel suffers from the same defects as Vidales'—she cannot show who made the representations or when they were made.  Moreover, she asserts that "the managers that she received representations from about her retiree life insurance received that information from the Human Resources Department because the office did not have a Human Resources Department."  Turner Opp. at 64.  That is sheer speculation on Willingham's part.  There is simply no evidence that any plan fiduciary authorized her managers to make the alleged misstatements to Willingham.  Like the health care representative in *Kenseth*, Willingham's managers performed ministerial functions—*de facto* "customer service" functions for Allstate's human resources department.  *See Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 465 (7th Cir. 2010) (finding that the health care representative was not a plan fiduciary because the representative did not "possess any discretionary authority or responsibility in the administration of the plan," instead "[h]er role as a customer service representative was ministerial in nature").

**B.    Plaintiffs' Other Arguments About Alleged Misrepresentations Are Unconvincing.**
*(Replying to Turner Opposition, Section V(d)(iv), (vi)-(vii))*

Apart from making arguments specific to Bentley, Vidales, and Willingham, Plaintiffs raise several other arguments claiming misrepresentation or omission by a fiduciary.  These arguments lack necessary support in the record.

First, Plaintiffs rely on an alleged misrepresentation regarding "paid up" life insurance appearing in the "This is Allstate" booklets distributed in 1986 and 1987.  Turner Opp. at 59.

Putting aside that these booklets fall well outside the statute of repose,[4] none of these Plaintiffs have submitted any evidence that they read those booklets or relied upon them in any way when they retired many years later.  So the reference to the "This is Allstate" booklets does not salvage their claim.  In any event, the booklet's reference to "paid up" retiree life insurance was discontinued in 1988, and the prior booklets were clearly superseded by the official Plan Documents circulated to all employees on a regular basis from at least 1990 forward.  *See Wise v. El Paso Nat. Gas Co.*, 986 F.2d 929, 936-37 (5th Cir. 1993) (Pre-1985 summary plan descriptions that did not contain language allowing plan sponsor to amend or terminate the plan were plainly superseded by later summary plan descriptions that did include such language. "The average plan participant must realize that amendments to welfare benefit plans are not enacted for the sole purpose of augmenting benefits, but often to diminish them as well.")

Second, despite the clear and unambiguous record to the contrary, Plaintiffs claim that "[e]ven if the [alleged] misrepresentations are found to not be made by fiduciaries, the evidence shows that Allstate omitted important information about retiree life insurance."  Turner Opp. at 66-67.  Contrary to Plaintiffs' assertion, the record is replete with instances establishing that Allstate consistently and systematically sent Plaintiffs written documentation throughout the 23-year period relevant to this case which unambiguously stated that Allstate reserved the right to modify, amend, or terminate the Plan and any Plan benefits at any time.  SOF ¶¶ 5-10.  As a matter of law, Plaintiffs are deemed to have "actual knowledge" of Plan details contained in SPDs or other Plan documents.  *Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 570 (6th Cir. 2010).

---

[4] *See* Defendant's Reply in Support of Motion for Summary Judgment Against Plaintiffs' ERISA Section 502(a)(3) Claim, at 5-7.

Finally, Plaintiffs devote several paragraphs to the spurious argument that Allstate's corporate representative somehow "admitted" that the misrepresentations were made by a fiduciary.  Turner Opp. at 65-66.  Plaintiffs cite Beverly Rozanski's testimony that she did not have evidence to refute each Plaintiff's allegations about specific misrepresentations, and argue this somehow establishes that "Allstate fiduciaries notified employees and retirees orally and in writing that the benefit was 'paid up' and permanent at no cost to them for life."  *Id.* at 65.

Plaintiffs assertion is, at best, an incredulous leap unsupported by reasonable or rational inferences and, at worst, a gross mischaracterization of the facts. Even if one ignores that the question was outside the scope of Plaintiffs' Rule 30(b)(6) notice,[5] the fact that Ms. Rozanski may not have had evidence at her fingertips to refute the allegations of Plaintiffs' complaint does not establish those allegations as true or relieve Plaintiffs from their burden of affirmatively proving their claims.  *Celotex*, 477 U.S. at 322-23.  Moreover, Plaintiffs' selective quotation of the record omits the clear and unequivocal testimony of Allstate's other corporate representative, Josée Wilson, who testified that Plaintiffs' testimony regarding allegedly permanent retiree life insurance "is inconsistent with everything [she] reviewed."  J. Wilson Dep. 71:13-22.  Ms. Wilson further explained that, although she "can't refute what [Plaintiffs] believe they heard at the time they were in a presentation a number of years ago.  I just know the information that I reviewed is inconsistent with the messaging they would have received."  Ex. 74, J. Wilson Dep. 70:6-16.  Ms. Wilson's testimony in no way supports Plaintiffs assertion of "a uniform representation to all proposed Class members."  Turner Opp. at 66.

---

[5] Plaintiffs' line of questioning was also wholly outside the scope of Plaintiffs' Rule 30(b)(6) notice and, as such, cannot be imputed to Allstate.  *See, e.g.*, *Healthier Choice Flooring, LLC v. CCA Glob. Partners, Inc.*, No. 1:11-CV-2504-CAP, 2013 WL 12101905, at *4 (N.D. Ga. Jan. 4, 2013) ("If a question exceeds the scope of a noticed topic,… the answer given by the witness is not binding on the corporation).  Plaintiffs' Rule 30(b)(6) notice did not designate as a topic that the witness was going to be asked to comment on the testimony of the named Plaintiffs specific allegations of the complaint, much less about evidence presented at trial, as an examination topic.  *See generally* Doc. 266, Ex. 67.

II.   **Plaintiffs Fail to Present Evidence of Actual Harm Due to Alleged Misrepresentations.**
      *(Replying to Turner Opposition, Section V(d)(vii)-(ix))*

Plaintiffs' Opposition offers little more than conclusory statements by Plaintiffs Bentley, Kerr, Nixon, Shepherd, Vidales and Wofford of "harm" based on contorted deposition testimony. This is insufficient to defeat summary judgment.

Whether labeled "detrimental reliance" or "actual harm," Plaintiffs in an ERISA Section 502(a)(3) action must show "by a preponderance of the evidence" that the breach of fiduciary duty caused injury. *CIGNA Corp. v. Amara*, 563 U.S. 421, 444 (2011). Plaintiffs, in essence, argue that their expectation that they would continue to receive the retiree life benefit constitutes detrimental reliance or actual harm. Turner Opp. at 68-69. However, "[t]he mere expectation of a continued benefit is not enough." *Shook v. Avaya Inc.*, 625 F.3d 69, 73 (3d Cir. 2010).

Plaintiffs cannot escape that the clear and unambiguous terms of the Plan allowed Allstate to amend, modify or terminate the Plan at any time. Allstate could have terminated Plaintiffs' benefits even if there had been no supposed "misrepresentations," and the loss of the benefit therefore was not an injury caused by the misrepresentation. Indeed, since Allstate at all times had a right to terminate the benefit, it is not a legally cognizable "injury" at all. *See M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015) (explaining that ERISA protects the right of the employer to "adopt, modify, or terminate welfare plans" at any time and for any reason (citing *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995))).

To establish "actual damage" under ERISA Section 502(a)(3), Plaintiffs must produce evidence of actual loss that was caused by the fiduciary misrepresentations, *i.e.* that they took some action or refrained from taking some action in reliance on the alleged misrepresentation. *Amara*, 563 U.S. at 444; *Hendrian v. AstraZeneca Pharm. LP*, No. 3:13-CV-00775, 2015 WL 404533, at *10 (M.D. Pa. Jan. 29, 2015) ("the plaintiff must have reasonably taken some action,

or refrained from taking certain actions, regarding benefits or retirement as a result of the misrepresentation."); *Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 303 (3d Cir. 2008).  Plaintiffs Bentley, Kerr, Nixon, Shepherd and Wofford have failed to meet this burden, and their Section 502(a)(3) claim must be dismissed.

A.   **Vernon Bentley**
*(Replying to Turner Opposition, Section V(d)(ix)(1))*

Bentley cannot establish that he suffered any harm from the alleged misrepresentation before and shortly after his hiring at Allstate in 1981.  Bentley does not dispute that upon joining Allstate, he obtained medical insurance, disability benefits, stock and paid vacation—all benefits Bentley did not enjoy with his prior employer.  SOF ¶ 67.  Thus, even if the retiree life insurance, which he would not receive for decades, if at all, *was* a "a major part of [his] decision" to move to Allstate, the alleged misrepresentations caused him no harm.  Rather, Bentley's own testimony establishes that his decision to join Allstate, and his continued employment with Allstate, very much inured to his benefit.

Beyond that, whatever statements may have been made to Bentley about retiree life insurance when he was hired in 1981 were far too contingent to come anywhere close to a vested interest or a representation on which Bentley could rely.  *See, e.g.*, *Lee v. Sec. Check, LLC*, No. 3:09-CV-421-J-12TEM, 2010 WL 3075673, at *13 (M.D. Fla. Aug. 5, 2010) (plaintiffs cannot recover for purely speculative opportunities or damages) (citing *Casella v. Equifax Credit Information Services*, 56 F.3d 469, 475 (2d Cir. 1995)).  Bentley at that time was decades away from retirement and met none of the eligibility criteria for retiree life insurance.  SOF ¶ 2; Bentley Dep. 38:7-8.  To qualify for retiree life insurance, Bentley among other things would have had to continue to work at Allstate until reaching retirement age without termination or layoff, and would have had to participate in the Allstate employee life insurance plan for at least

10 years prior to his retirement.  None of that was guaranteed when Bentley commenced

employment with Allstate in 1981.  Moreover, Allstate throughout that entire time was

"generally free under ERISA, for any reason at any time, to adopt, modify, or terminate" its

welfare benefit plans. *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995).  As a

matter of law, Bentley simply cannot claim reliance or actual harm based on that kind of

uncertain, speculative representation. *Lee, supra.*

**B.    Donald Kerr**
*(Replying to Turner Opposition, Section V(d)(ix)(2))*

Kerr summarily argues that "he detrimentally relied and suffered actual harm," but he

submits no evidence nor points to any record evidence to support this claim.  Turner Opp. at 71-

72.  Instead, he only cites testimony that he believed he would receive a "paid up" policy prior to

the date he decided to retire.  *Id.*  Even if this is true, Kerr has still provided no evidence that he

relied on the "paid up" representations in deciding to retire in 1991 or took any other action

based on that alleged representation.[6]  Kerr testified that he decided to retire because he "didn't

want to go through another winter" and he wanted to do "catastrophe work."  SOF ¶ 78-79.  And

he admitted that he had already decided to retire when the "paid up" representation was made.

Kerr. Dep. 36:23-37:3, 40:13-41:4.  So there is no evidence of detrimental reliance or actual

harm.

**C.    Alberta Nixon**
*(Replying to Turner Opposition, Section V(d)(ix)(3))*

Nixon argues that she "can show that prior to her retirement she was promised retiree life

insurance for life at no cost to her."  Turner Opp. at 72.  As with Kerr, all this suggests is that

---

[6] Plaintiffs' accusation that Allstate mischaracterized Kerr's testimony is clearly contradicted by Kerr's own
deposition testimony.  The only time Kerr testified that he recalls the term "paid up" being used was after he made
the decision to retire.  SOF ¶ 80.  When asked whether he recalled the term "paid up" being used during the
retirement seminar in 1990, Kerr responded "No I don't recall it precise"  Ex. 75, Kerr Dep. 45:3-47:25.

Nixon received this representation prior to her retirement.[7]  That, however, does not suffice to establish her claim.  Nixon has cited no evidence that she detrimentally relied on or suffered any actual harm caused by this representation.  In fact, Nixon does not even argue that she relied; she merely claims she was not asked about reliance at her deposition.  *Id.* at 72.  But it is Nixon's burden to cite evidence supporting every element essential to her claim, regardless of whether Allstate ever asked that question.  *Celotex*, 477 U.S. at 322-23.  If Nixon relied on the alleged misrepresentation in making her decision to retire, or if she undertook a different course of action based on this misrepresentation, she could have easily submitted a declaration, but she did not do so.  Accordingly, there is no proof of reliance or actual harm, and Nixon's claim fails.

      D.    **Kathy Shepherd**
           *(Replying to Turner Opposition, Section V(d)(ix)(4))*

Shepherd's testimony that "[a]ll aspects of everything going into my retirement counted" is not, as Plaintiffs argue, "the classic definition of reliance."  Turner Opp. at 73.  The mere fact that Shepherd expected to continue to receive the retiree life benefit is of no import if she did not take any action as a result of this representation.  *Shook*, 625 F.3d at 73 ("In demonstrating sufficient reliance, the plaintiff must have taken some action as a result of the misrepresentation; the mere expectation of a continued benefit is not enough.")  Shepherd does not dispute that she retired at age 55 because she had "planned for it [her] whole Allstate career."  SOF ¶ 88.  Nor does Shepherd dispute that she "planned ahead" and purchased other life insurance policy knowing that Allstate had the right to modify or terminate the retiree life insurance benefit.  SOF ¶¶ 90-91.  Finally, she does not cite evidence of anything she would have done differently in the

---

[7]Nixon's deposition testimony is clear that she received the alleged misrepresentation after she had notified her family *and* "the company" of her decision to retire.  Ex. 76, Nixon Dep. 30-33, 46:1-47:2.

absence of the alleged misrepresentation.  Lacking such evidence, Shepherd has not demonstrated actual harm.

### E.   **Herbert Vidales**
*(Replying to Turner Opposition, Section V(d)(ix)(5))*

Vidales claims that he suffered "actual harm" because "he would have lost his retiree life insurance benefit but for this Court's preliminary injunction."  Turner Opp. at 73.  As explained above, this type of alleged "harm" is insufficient to establish "actual damage" or detrimental reliance. *Shook*, 625 F.3d at 73 ("The mere expectation of a continued benefit is not enough."). Moreover, it is not a harm proximately caused by any fiduciary action.[8]  Vidales' remaining argument focuses on the alleged misrepresentations he received, when he received them, and what he understood about Allstate's reservation of rights.  Turner Opp. at 73-74.  None of this has anything to do with whether a misrepresentation caused him any harm or whether he relied on it to his detriment.  In fact, Vidales does not dispute that he decided to retire *solely* for health reasons—and not because of any of the alleged misrepresentations.  SOF ¶¶ 94-95.

### F.   **Herb Wofford**
*(Replying to Turner Opposition, Section V(d)(ix)(6))*

Finally, Wofford's deposition testimony does not create any issue of material fact on the issue of his actual harm or detrimental reliance.  Plaintiffs'cite to Wofford's deposition testimony purporting to show that he relied on the "paid up" representation.  Turner Opp. at 76.  But that cited testimony shows only that Wofford was testifying about whether he understood that Allstate could terminate the retiree life benefit—*not* whether he relied on the "paid up" representation in making his retirement decision or otherwise.  Wofford Dep. 192:12-193:13.  In fact, Wofford concedes that "he did not know if he would have retired" if "he [had] known that

---

[8] *See* Defendant's Reply in Support of Mot. for Summary Judgment Against Pls.' ERISA Section 502(a)(3) Claim at 12-15.

the retiree life insurance benefit could be canceled."  Turner Opp. at 76.  But Wofford has the burden to show that the alleged misrepresentations in fact caused him to do something differently.[9]  *See Celotex*, 477 U.S. at 322-23.

Likewise, Wofford fails to dispute several key facts that show the alleged misrepresentations played no part in his retirement decision.  Wofford does not dispute that:

- When offered an opportunity to indicate the factors he considered in his decision to retire, Wofford did not mention retiree life, SOF ¶ 121;

- The only factors he considered when he decided to retire were Allstate's decision to consolidate his office location, his desire to stay close to his elderly parents, and his inability to continue working out of his home or out of the Columbia office, SOF ¶¶ 120-122; and

- He continues to maintain another life insurance policy and did not cancel or purchase other insurance based on the "paid up" representation, SOF ¶ 124.

In short, Wofford can show no harm or detrimental reliance caused by the alleged misrepresentations.

III.   *Klaas* **Plaintiff Mountford Lacks Evidence to Support His Section 502(a)(3) Claim.**
       *(Replying to Klaas Opposition, Argument Section F)*

In the *Klaas* Plaintiffs' Opposition (Doc. 329), Mountford concedes that he understood "fully paid" to mean "you don't have to pay [any premiums] on [the retiree life benefit]."  Klaas Opp. at 36.  Since retiring, Mountford has not paid any premiums for his retiree life benefit because Allstate has paid those premiums for more than 20 years.  SOF ¶ 62.  Therefore, describing the retiree life insurance benefit as "fully paid" cannot constitute a misrepresentation,

---

[9] If the retiree life benefit was a factor in Wofford's retirement decision, Wofford could have submitted a declaration, but he did not.

and several courts have so held in very similar settings. *See* Doc. 310 at 5 (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998); *Kerber v. Qwest Grp. Life Ins. Plan*, 656 F. Supp. 2d 1279, 1289–90 (D. Colo. 2009); *Haviland v. Metro. Life Ins. Co.*, 730 F.3d 563, 573 (6th Cir. 2013)). Mountford does not distinguish or address these authorities.

Moreover, Mountford was well aware that Allstate's SPDs and the SRO documents contained express reservations of rights to modify or terminate the benefit "at any time." Mountford testified that the reservation was "boilerplate throughout the benefits." SOF ¶¶ 130-133. Plaintiffs do not dispute this. Mountford simply cannot disregard these clear, unequivocal and admitted reservations of rights. *Jensen v. Solvay Chemicals, Inc.*, 721 F.3d 1180, 1185 (10th Cir. 2013) (a party cannot claim to have been misled by relying upon a representation if "such party had knowledge of the truth . . . .").

Although Mountford's failure to adduce evidence of a "misrepresentation" is fatal to his Section 502(a)(3) claim, his claim also fails because there is no evidence that he relied on the alleged "fully paid" representation. Mountford admittedly knew that Allstate could terminate the benefit at any time and thus could not have relied on the alleged representation. Further, although Mountford alleges that the retiree life benefit was "central to his decision to retire," Mountford offers no evidence that he did anything different in reliance on the representation or suffered harm.

Finally, Mountford does not dispute that at the time of the SRO he already met the eligibility criteria for retiree life insurance and did not obtain any added value from the SRO's three years of additional participation credit, so it is highly unlikely that this feature had any significant bearing on his retirement decision. On the other hand, the SRO afforded Mountford hundreds of thousands of dollars in added pension and salary continuation benefits, so even if he

did rely on any supposed representations, there is absolutely no evidence that it was to his

"detriment."  SOF ¶¶ 56, 128-129; *see Hammond*, 219 F. App'x at 916.  He also does not dispute

that he did not cancel his personal life insurance policy in reliance on the "fully paid"

representation.  Without any evidence of actual harm or detrimental reliance, Mountford's claim

fails.

## CONCLUSION

For all the foregoing reasons, the Court should grant summary judgment against Plaintiffs

Bentley, Kerr, Mountford, Nixon, Shepherd, Vidales, Willingham and Wofford on their claim

under ERISA Section 502(a)(3).

Dated: October 30, 2017

<div style="margin-left:40%;">

*/s/ Richard L. Fenton*
Richard L. Fenton
(Admitted *pro hac vice* /IL Bar: 3121699)
Christopher Q. King
(Admitted *pro hac vice* /IL Bar: 6189835)
Amanda M. Moeller
(Admitted *pro hac vice* /IL Bar: 6286890)
DENTONS US LLP
233 South Wacker Drive. Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

Dara D. Mann
(Admitted *pro hac vice* /GA Bar: 469065)
Uchenna Ekuma-Nkama
(Admitted *pro hac vice* /GA Bar: 957861)
Deborah F. Lempogo
(Admitted *pro hac vice* /MO Bar: 68516 & IL Bar: 6324234)
DENTONS US LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198

Wade P. K. Carr
(Admitted *pro hac vice* /MO Bar: 62786 & KS

</div>

Bar: 25105)
Samantha J. Wenger
(Admitted *pro hac vice* /MO Bar: 25322 & KS
Bar: 64230)
DENTONS US LLP
4520 Main Street
Suite 1100
Kansas City, Missouri 64111
Telephone: (816) 460-2400
Facsimile: (816) 531-7545

Meagan D. Self
(Admitted *pro hac vice* /TX Bar: 24078453)
DENTONS US LLP
2000 McKinney Avenue
Suite 1900
Dallas, Texas 75201
Telephone: (214) 259-0900
Facsimile: (214) 259-0910

David J. Middlebrooks
ASB- 8553-D58D
Albert L. Vreeland, II
LEHR MIDDLEBROOKS & VREELAND, P.C.
P.O. Box 11945
Birmingham, AL 35202-1945
Telephone: (205) 323-9262
Facsimile: (205) 326-3008

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 30, 2017, I filed the foregoing with the Clerk of the Court

via the ECF system, which will send notice and a copy of the same to all counsel of record.

*/s/ Richard L. Fenton*
An attorney for Defendant