## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| GARNET TURNER individually and on behalf of all others similarly situated, | ) ) ) ) | NO. 2:13-cv-00685-RAH (Lead Case) |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ALLSTATE INSURANCE COMPANY, | ) ) | |
| Defendant. | ) ) | CONSOLIDATED WITH |
| JOHN E. KLAAS on behalf of himself and all others similarly situated, et al., | ) ) ) ) | NO. 2:15-cv-406-RAH |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ALLSTATE INSURANCE COMPANY, | ) ) | |
| Defendant. | ) | |

**MOTION OF *TURNER* PLAINTIFFS PURSUANT TO FED.R.CIV.P. 62.1 FOR ORDER VACATING FINAL JUDGMENT DISMISSING ALL CLAIMS AGAINST DEFENDANT ALLSTATE INSURANCE COMPANY AND FOR RELATED PROCEDURAL RELIEF**

COME NOW the *Turner* Plaintiffs to move for an order vacating the final judgment entered against the Plaintiffs in this consolidated case on September 30, 2020, which dismissed with prejudice all claims against Defendant Allstate Insurance Company. Doc. 432. The *Turner* Plaintiffs move under Fed.R.Civ.P. 62.1. They request an order requiring the Defendant to respond to this motion based on the substantial issue presented, namely violation of 28 U.S.C. § 455(a), and allowing the movants to reply and to supplement this motion with additional facts obtained

from the Administrative Office of the U.S. Courts. *See* Doc. 464; Exhibit 1, attached hereto. The required response and permitted reply and supplement are related procedural relief.

Given the pending appeal in the case, *see* Doc. 434, this motion is submitted as a request for an indicative ruling, to enable this Court to vacate the final judgment against the Plaintiffs upon a limited remand by the U.S. Court of Appeals for the Eleventh Circuit. *See* Fed.R.Civ.P. 62.1. Consistent with Fed.R.App.P. 12.1 and 11th Cir. R. 12.1-1, the *Turner* Plaintiffs will swiftly notify the appeals court of this motion and move for a limited remand to permit an order of this Court vacating the final judgment.

**Facts and Procedural History**

1.  In 2019, the District Judge who entered the final judgment against the Plaintiffs (Doc. 432) owned fewer than ten (10) shares of the Allstate Corporation. Doc. 460. That fact of share ownership by Chief Judge Marks was disclosed to the Plaintiffs on July 28, 2021 (ten months after the final judgment). *Id.*

2.  The Allstate Corporation is a publicly traded company. Doc. 9 at 2. It was incorporated on November 5, 1992, "to serve as the holding company for Allstate Insurance Company." https://www.allstate.com/resources/allstate/attachments/annualreport/allstate prosperity-report-2019-combo.pdf at 96 (accessed 8/11/2021). Allstate Insurance Company is the Defendant (Allstate). It is the primary subsidiary of the Allstate Corporation, and the financial accounts of the two companies are consolidated in one financial statement. *See id.* at 202.

3.  In 2013, the *Turner* Plaintiffs, for themselves and a proposed class, sued Allstate under ERISA to recover or have restored a life insurance benefit the company cancelled in 2013 for 14,000 of its retirees. As a cost-cutting move, the cancellation of the benefit, which took effect on December 31, 2015, has been a boon for Allstate, adding tens of millions of dollars to the

company's bottom line since 2015.  *See e.g.*, Doc. 88 at 2, ¶ 4 (the "total premium cost to Allstate for both plans [i.e., for former claims employees and non-claims employees] was $13,035,813 for 2013").

4. The case was assigned to Chief Judge Keith Watkins on August 20, 2014.  Doc. 40. On December 29, 2015, Judge Watkins concluded that that there existed a reasonable likelihood of success on the merits and entered an order granting a preliminary injunction in favor of the Plaintiffs.  Docs. 92, 121.

5. The Plaintiffs and Allstate subsequently filed competing motions for summary judgment and class certification, among other things.  Docs. 228, 304-305. Those motions had been fully briefed and set for oral argument before August of 2018.  Doc. 386.

6. The case was re-assigned to Chief Judge Marks in August of 2018.  Doc. 387. Judge Marks thereafter continued oral argument; it was never rescheduled.  *See* Doc. 388. Approximately two years later, on September 30, 2020, Judge Marks entered a final judgment denying the Plaintiffs' pending motions and granting Allstate's motions for summary judgment. Doc. 432; *see* Docs. 304-305 (the Allstate motions cited in Doc. 431 at 39).

7. Based on the final judgment, Allstate asserted claims against the Plaintiffs for very substantial sums for taxable costs and for bonds entered into to secure a preliminary injunction which was issued against Allstate before the re-assignment.  *See* Docs. 92, 121, 435, 436, 437. Those claims remain pending in this Court in pertinent part.  *See* Docs. 435, 436, 437.

8. The Plaintiffs appealed the final judgment, Docs. 433, 434, and the appeals are pending, with oral argument set for August 26, 2021.  *See* Doc. 462.

**Argument**

1.  **Under 28 U.S.C. § 455, Chief Judge Marks' Ownership of Stock in Defendant Allstate Requires Vacatur of Her Order Granting Summary Judgment in Favor of Allstate.**

28 U.S.C. § 455(b)(4) disqualifies a District Judge from presiding in a case in which she knows she has a financial interest. Even a "small" financial interest is disqualifying. *Id.* at § 455(d)(4). The disqualification is strict, and it is non-waivable by any consent to the judge's financial conflict. *Id.* at 455(e); *see Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 130 (2d Cir. 2003).

The financial conflict, even if not actually known by the judge, can give rise to a substantial question of impartiality after the fact, specifically under 28 U.S.C. § 455(a) (the basis of this motion). That occurs if, "in the eyes of a reasonable person, the disqualifying financial interest" could have been easily ascertained by the judge. *See Chase*, 343 F.3d at 129. In that event, if the judge presided over final disposition of the case after the disqualification, that disposition is due to be vacated. *See id.* at 129-33. The test and basis for that relief is whether a "reasonable person would believe that the district judge knew that [s]he had a financial interest in a party to the litigation at some point before the decision on the merits." *Id.* at 132.

The recent disclosure here (Doc. 460) does not say when Chief Judge Marks first knew of her share ownership in Allstate, only that she owned the shares in 2019 and that fact had been brought to her attention. 28 U.S.C. § 455(c) provides that judges should be knowledgeable of such ownership. 2019 is before the final judgment the *Turner* Plaintiffs seek to have vacated, satisfying the temporal requirement of "a financial interest . . . at some point before the decision on the merits." *Chase*, 343 F.3d at 132.

The Plaintiffs submit that the financial interest could have been ascertained easily and a reasonable person would believe that, satisfying the other requirement *Chase* sets for vacatur. Objective facts warrant that conclusion.

    A.    <u>The Objective Facts that Support Relief</u>

The Chief Judge was commissioned in 2018 and was re-assigned this case in that year. She owned shares in 2019, and Allstate Corporation had been disclosed and identified by that time. Doc. 9; *see also* Middle District of Alabama General Order No. 3047 (disclosure enables "judges to avoid conflicts of interest with unnamed corporations . . ." and requires all parties to "file a statement identifying all parent companies . . . or similar entities that could potentially pose a financial or professional conflict for a judge").

Federal judges annually file financial disclosure reports which the public can obtain. *See* Docs. 464, 464-1. The final judgment occurred in 2020, by which time the Chief Judge should have filed two such reports (for years 2018-2019) containing the specific details of stock ownership. The Plaintiffs have requested these. *See* Doc. 462, 464 (request for details of Allstate share ownership and reply that "you must complete the attached form to obtain a copy of *this information*," respectively (emphasis added)); *accord Chase*, 343 F.3d at 131 ("[T]he forms are filed by May 1 and report holdings and transactions for the previous calendar year.").

Allstate Corporation is a well-known, very widely held stock,[1] an objective fact for relief given (a) the identification of it before the final judgment (specifically, in the corporate disclosure form, Doc. 9 at 2), (b) the diligence required by 28 U.S.C. § 455(c), and (c) the annual financial

---

[1]     *See* https://www.allstateinvestors.com/shareholder-services/investor-faqs ("The Allstate Corporation's common stock is listed on the New York Stock Exchange under the trading symbol 'ALL.' . . . Allstate became a publicly traded company in 1993 – which at that time was *the largest initial public offering in the nation's history*." (emphasis added)).

5

disclosure reports filed by the Chief Judge. This objective factor was not fully present in *Chase*, because there, unlike here, the corporate disclosure form did not identify the disqualifying stock by name. *See* 343 F.3d at 124, 131 & n.2 (stating, *inter alia*, that "after discovery was concluded and with various motions pending, the case was reassigned to Judge Pollack for purposes of the bench trial. Notably, the caption and Chemical's corporate disclosure form had not been altered to reflect Chase's presence as a party."). That difference strengthens the conclusion that, under the objective test *Chase* applies, "a reasonable person would believe that" the Chief Judge knew she had a disqualifying financial interest "at some point before the decision on the merits." *See id.* at 132.

Also, long before the re-assignment, the case had been publicized in the judicial district, a factor which was present in *Chase* (albeit arguably more substantially than here). *See* 343 F.3d at 123-25. The publicity was due in part because the lead Plaintiff, Garnet Turner, is a Montgomery resident. *See* https://www.wsfa.com/story/23588947/allstate-insurance-company-sued-by-company-retirees/ (accessed 8/12/2021).

The foregoing objective facts, together with the duty 28 U.S.C. § 455(c) imposes on judges to ascertain financial interests which disqualify them, establish that a reasonable person would conclude that Chief Judge knew of her disqualification before the final judgment. This is not speculation of actual knowledge, because that is not the issue on this record.

  B. <u>The Other Non-Issues</u>

The magnitude of share ownership (or lack thereof) and any risk to share price are not issues either. Subsection 455(b)(4) is strict disqualification for a financial interest "however small." *See id*. at § 455(d)(4); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 129 F.R.D. 409, 412 (D.P.R. 1989); *accord Chase*, 343 F.3d at 128 ("Section 455(a) applies when a reasonable person

6

would conclude that a judge was violating Section 455(b)(4)," despite little risk that judgment would affect share price and *de minimus* value of shares to the judge). That conclusion is further secured by the fact that a disqualifying interest or conflict under § 455(a) may be waived, provided the parties are fully informed at the time (not true here), but a disqualifying financial interest within the meaning of subsection (d)(4) cannot be waived. *Id.* at 455(e); *see* 343 F.3d at 127.

      C.      There Is No Cure Apart from Vacatur.

Likewise, 28 U.S.C. § 455(f), which permits divestiture of the financial interest, "cannot cure circumstances in which recusal was required years before and important decisions have been rendered in the interim." *Chase*, 343 F.3d at 131. The final judgment is more than an "important decision" rendered after "recusal was required:" the Chief judge decided all claims of the Plaintiffs and dismissed them with prejudice. Docs. 431, 432. Indeed, the Court treated the Allstate motions for summary judgment *as a bench trial*. *See* Doc. 431 at 6.

**2.**    **Decisions After *Chase* Do Not Diminish the Reasons for Relief**.

The relief warranted by *Chase* -- vacatur of the final judgment -- is due for the reasons above. Decisions after *Chase* do not diminish those reasons. Two are due to be addressed, *King v. CVS Health Corp.,* 198 F. Supp. 3d 1277 (N.D. Ala. 2016), and *Centripetal Networks, Inc. v. Cisco Sys.*, 492 F. Supp. 3d 615 (E.D. Va. 2020).

In *King*, unlike here, there was no disqualification before or when the judge presided over a two-week trial resulting in judgment against the party which later moved for relief under 28 U.S.C. § 455. The subsequent disqualifying stock ownership was in the party moving for that relief, *not in the party which won the judgment* – the opposite of *Chase* and here (and a patent difference of appearance). The only substantial decision entered after the disqualification was in part uncontroversial, a remittitur which the party prevailing on the judgment, the plaintiff, accepted

(*see* 198 F. Supp. 3d at 1285), again different from *Chase* and the final judgment against the *Turner* and *Klaas* Plaintiffs. Motions for other post-trial relief under Fed.R.Civ.P. 50 and 59 were denied in that same decision. *See id*. Those additional rulings were consistent with the district court's decisions on the same subjects *before* disqualification, *see id.* at 1286, an important difference with this case (and fully addressed below, under the next heading).

Also, the corporate disclosure form on file in *King* when the disqualifying stock purchase occurred did not correctly identify the disqualifying stock by name. The correct identification occurred only later, after the district judge who acquired the stock notified the parties of the purchase. The judge then promptly divested. *See* 198 F. Supp. at 1280 & n.1.

Relief of vacatur was denied in *King* on the forgoing facts because "no reasonable person knowing all the facts would question the impartiality of Judge Hopkins' decisions in the one substantive ruling she made while holding [the disqualifying] stock." *See* 198 F. Supp. at 1286.

In *Centripetal,* the judge with a disqualifying financial interest did not own stock in a party. His wife did. And although that ownership occurred before the decision on the merits, the judge was not alerted to it until a financial disclosure report was prepared after the trial. *See* 492 F. Supp. 3d at 617. That fact alone distinguishes *Centripetal,* because the disqualifying stock ownership here, according to the belated news of it (Doc. 460), occurred at least nine months before the final judgment (from some period in 2019 to the last day of September, 2020), in plenty of time to alert the Chief Judge *before* the final judgment.

*Chase* indicates that the 2019 financial disclosure report here would have been due no later than May of the following year (four months before the final judgment), while *Centripetal* indicates it would have been due in August of 2020, still well before the final judgment. *See Chase,* 343 F.3d at 124 (stating that the reports are due the following May): *Centripetal,* 492 F.

Supp. 3d at 617 (indicating that report was prepared only the following August, which was after the trial in that case). This sequence distinguishes *Centripetal* because the trial there *already had occurred.* Given that sequence, the *Centripetal* court found "that a reasonable person would not conclude that the Court knew of his spouse's ownership and proceeded to hear the case nonetheless, where the Court avers he was notified about the stock during the preparation of his annual financial disclosures and immediately notified counsel." *Id*. at 620. There is no similar fact or sequence here. The facts and sequence are the opposite.

One other decision is due mention, *Parker v. Connors Steel Co.*, 855 F.2d 1510 (11th Cir. 1988), which predates *Chase* and the addition of subsection (f) to 28 U.S.C. § 455. *Parker* is completely distinguishable and unavailing to Allstate for that reason.

In *Parker*, after the district court judge granted defendant's motion for summary judgment, plaintiffs requested the judge recuse himself for violation of 28 U.S.C. § 455(a) because the judge's law clerk (who did substantial work on the case) was the son of a partner in the law firm representing defendant. 855 F.2d at 1523. The Eleventh Circuit found that "all the facts taken together raise the appearance of impropriety and may cause one to reasonably question [the judge's] impartiality" and is therefore a violation of § 455(a). *Id*. at 1524. However, the court concluded that the judge's refusal to disqualify himself was harmless error. *Id*. at 1526. *Parker* is nowhere near analogous to this case as it focuses on the appearance of a law clerk's impartiality, not a judge's disqualifying financial interest under § 455(b)(4). Although *Parker* analyzed 28 U.S.C. § 455, it cannot be used in the context of § 455(b) because *Parker* was analyzing the impartiality of clerks and § 455(b) applies exclusively to judges. *See In re San Juan Dupont Plaza Hotel Fire Litig.*, 129 F.R.D. 409, 411 (D.P.R. 1989) ("movants leap to the erroneous conclusion that section § 455(b) applies to law clerks. However, that provision, by its own terms, applies

9

exclusively to judges."). "Unlike Section 455(a) with its more amorphous language of reasonable questions of impartiality (read: appearance); Section 455(b) leaves nothing to question. It is meant to automatically exclude judges from situations that fall under the specific provisions of the statute." *Id*. at 412.

There are principled reasons for the above distinction and conclusion. 28 U.S.C. § 455(b)(4) establishes strict disqualification for a financial interest "however small" (*id*. at § 455(d)(4)). *See In re San Juan Dupont Plaza Hotel Fire Litig.*, 129 F.R.D. at 412. A disqualifying interest or conflict under § 455(a) may be waived, provided the parties are fully informed at the time (*not true here*), but a disqualifying financial interest within the meaning of § 455(d)(4) cannot be waived. 28 U.S.C. at § 455(e); *see Chase*, 343 F.3d at 127. Thus, a financial interest can be a disqualifying event of greater magnitude, strictly requiring recusal, compared to when impartiality "might reasonably be questioned," which is the circumstance *Parker* addresses in connection with a law clerk's family tie.

3. **The Share Ownership Affected the Case, and Allstate Is Wrong About That.**

Allstate's response to the disclosure of share ownership ignores the appearance problem of a judge owning shares in a party to one of the cases pending before her, then continuing in the case and deciding the case in favor of that party without ever taking cognizance of and disclosing the conflict to the parties. Doc. 461. That is a paramount concern of *Chase* and of 28 U.S.C. § 455(a). *Accord United States v. Microsoft Corp.*, 253 F.3d 34, 114 (2001) ("The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)). Allstate dwells on another argument. It suggests that the failure to recuse did not affect the case. *See* Doc. 461 at 3 ("Judge Marks' 'stock ownership would have required recusal under the Code of Conduct

for United States Judges' but there is no evidence, and indeed a statement to the exact opposite, that the small financial interest affected anything.") (quoting Doc. 460)). It is wrong about that, and the objective record proves that it is wrong.

One of the reasons relief was denied in the *King* decision addressed above is that the rulings before disqualification and after disqualification were consistent. The consistency found in *King* was based on rulings of only one judge. Two judges presided here, separated by the re-assignment to Chief Judge Marks. The point is these Plaintiffs experienced a key ruling after disqualification (the final judgment) that differed profoundly from the rulings before disqualification, a circumstance not present in *King*.

Specifically, the District Court first ruled very clearly for the Plaintiffs on the merits, so much so that they won a preliminary injunction against Allstate on the strength of their claims. Docs. 92, 121. More than four years later, after re-assignment to the Chief Judge and her disqualification, final judgment on the claims was entered for Allstate. The rulings are polar opposites and were reached on the same law, the same arguments, and no different evidence from the Defendant. The inconsistency is not dispelled by the record.

The District Court held a hearing on the Plaintiffs' motion for preliminary injunctive relief in December, 2015. Judge Watkins presided, and he admitted evidence on the motion from both sides, including Allstate's evidence of the general reservation to cancel or modify the employee benefit plan (Plan) under which retiree life insurance was promised. At that time, based on the Plaintiffs' proof of what Allstate told them, orally and in writing, about retiree life insurance, *and despite the same evidence of the general reservation Allstate later relied on for summary judgment*, this Court found the Plan to be ambiguous with respect to the benefit. Doc. 91 at 118:24; Doc. 122 at 19. It granted the preliminary relief, finding that the Plaintiffs were likely to succeed on

their claims. Doc. 121 at 14, 22. Moreover, specifically as to the general reservation language Allstate had inserted into the Plan documents from year to year, the Court correctly held that "a statement that an employer could, at some point in the future, modify or terminate the plan or plan benefits would not necessarily place a retiree on notice that he or she could lose (or one day be required to pay for) a permanent retiree life insurance policy that had already been purchased and 'fully paid up.'" Doc. 122 at 19. Moreover, the Court specifically found that, "[u]nder the circumstances, the reservation of rights could reasonably be understood to apply to other benefits under the plan . . ." *Id.*

Years later, after evidence and briefing closed, with the Chief Judge presiding, the Court reversed itself entirely, finding that the general reservation language unambiguously made clear that Allstate could strip away long-retired employees' life insurance benefit at any time. Doc. 431. Summary judgment was granted for that reason. *See id.* Allstate moved for that final judgment on effectively the same evidence and argument it asserted against preliminary injunctive relief (when Judge Watkins presided), *i.e.*, the general reservation added to the Plan in 1990 and published in annual SPDs (Summary Plan Descriptions) from 1990 forward. *Compare* Doc. 79 at 8-10 (opposing preliminary injunction) and Doc. 91 at 114:14-16; 120: 17-20 (same), *with* Doc. 306 at 4, ¶ 5; Doc. 307 at 7-16; Doc. 311-1 at 3-6, ¶¶ 8-34 (facts and argument for summary judgment).

The Defendant, both at preliminary injunction and later on summary judgment, conceded that it could not refute the Plaintiffs' evidence that Allstate told them orally and in writing that retiree life insurance is a "paid up" benefit and "for life at no cost to you." *Compare* Doc. 91 at 121:20-122:1, 129:8-12, 118:11-12, *with* Doc. 260-17, J. Wilson Depo. 69:25-70:4, and Doc. 260-16, Rozanski Depo. 13:6-16, 13:25-14:11, 15:8-18, 28:6-29:10, 29:14-25, 30:18-21, 31:21-33:8,

33:23-34:6, 34:7-22, 36:22-37:8, 39:23-40:5, 40:18-23, 41:4-12, 43:20-44:7, 45:23-46:1, 49:18-50:4, 51:12-52:14, 52:20-53:9, 54:11-57:11, 59:21-60:3, 61:16-62:9, 75:17-21, 78:18-79:8, 83:12-85:15, 85:17-86:6, 86:13-87:17, 88:8-12, 88:14-89:25, 90:7-91:20, 91:23-92:23, 93:1-94:8 (answering questions about the Plaintiffs' depositions and paragraphs 26-33, 36, 40-47, 50, and 52 of Doc. 44, which is the Second Amended Class Action Complaint), and Doc. 260-16 at 64-65, ¶ 14 of Exhibit 2 of Rozanski Depo. (response designating Rozanski as corporate representative on topic 14). Indeed, as the District Court itself found in the final judgment: "Allstate undisputedly made representations to the Plaintiffs at various points in time that the retiree life insurance benefit was permanent, for the rest of their lives, paid up, or at no cost to them." Doc. 431 at 21.

Not only was the Plaintiffs' proof unrefuted at both stages – at preliminary injunction and at summary judgment – the Plaintiffs added weight to it on summary judgment by exhibiting Allstate's own whole life insurance product, which defines and explains "paid up" in the same way the Plaintiffs understood it, which is that paid-up life insurance is permanent with no premiums due to maintain it. Doc. 293-15.[2] That has been the meaning of "paid up" to Allstate all along. A 1970s document entitled "Allstate Balanced Benefit Program" describes the "Benefits at Retirement" as "Paid-Up Group Life Insurance – Free life insurance for the rest of your life…" Doc. 265-14 at 2.

Thus, the Plaintiffs had *more* weight for their claims when they opposed summary judgment than when they won preliminary relief. Allstate did not meet this added proof, much

---

[2] This is Allstate's current "Whole Life Advantage" policy providing insureds an option of "paid-up" life insurance that does not require further premiums: "In the future, you can choose a reduced-paid-up benefit, resulting in a lower death benefit while maintaining your cash value – and never paying another premium again." Doc. 293-15 at 2. "A reduced paid-up benefit can be elected at any time …The cash surrender value…will be used as a net single payment…Premium payments stop at this point." *Id.* at 5.

13

less far outweigh and dispel it as normally required to win summary judgment. Allstate relied instead, as said, on the general reservation, effectively the same evidence and argument defeated at the preliminary injunction stage.[3] It submitted all SPDs from 1990 forward for summary judgment, but that showing merely was cumulative of the reservation language and selected SPDs Allstate submitted for the preliminary injunction hearing. *Compare* Docs. 79 at 8-10, 88, 88-1, *with* Docs. 307 at 7-16, 311-1 at 3-6, ¶¶ 8-34.

One stage to the next, the amount of evidence increased (a change in volume), but the character and complexion of Allstate's proof *did not change*. It follows that the final judgment is completely different from the ruling before re-assignment and disqualification. The contrast with the *King* case addressed above is stark.

It is a fact that there was no recusal before the final judgment. The Chief Judge presided and entered the final merits decision for Allstate. But for those facts, the final judgment would be different, *because it would have been issued by another judge*. The result might have been the same, victory for the Defendant, but the Plaintiffs do not have a crystal ball that tells them that. Allstate evidently does have such magic powers because it confidently suggests that the disqualification and failure to recuse did not affect the case. *See* Doc. 461 at 3. In truth, the Defendant speculates, while the Plaintiffs do not. The cold record they rely on proves that the stock ownership affected the case. Recusal would have occurred because of it, but did not. A different decision on summary judgment would have issued (the result unknown), *but did not*.

---

[3] Defendant likewise sought refuge in the no-vesting language in the Plan at the preliminary injunction and motion to dismiss stage, the same as on summary judgment. Doc. 64 at 9-10, 12-15, 26-27; Doc. 91 at 113:3-13, 117:8-118:3; Doc. 307. Of course, the District Court at the former stage necessarily found that this provision did not relieve the Plan of ambiguity as it quite reasonably could be construed as preventing vesting of any right to a lifetime insurance policy *before* retirement but inapposite once the "paid up policy" was provided *at* retirement.

Allstate is wrong. The appearance of impropriety is in no way abated.

### 4. The Test for Relief Is Fully Met.

As shown, the *Chase* court correctly held that divestiture after the fact (the case here) cannot cure a judgment when a "reasonable person would believe that the district judge knew that [s]he had a financial interest in a party to the litigation at some point before the decision on the merits." 343 F.3d at 131-32. The court was referring to the divestiture provision 28 U.S.C. § 455(f), which was added to the statute after *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988).

*Liljeberg* addresses 28 U.S.C. §§ 455(a), 455(b)(4). The *Chase* court, after deciding that subsection 455(f) could not cure the disqualification in that case, applied *Liljeberg* to determine if vacatur was the relief warranted. 343 F.3d at 132. Eleventh Circuit courts do the same. *See e.g., Clark v. Kapila*, 612 B.R. 808, 818-20 (S.D. Fla. 2019). Vacatur satisfies *Liljeberg,* according to *Chase*, for these reasons:

> As for the propriety of the vacatur remedy, we need only quote from the Supreme Court's decision in *Liljeberg*, which for this purpose involved a similar factual scenario:
>
> > Although [the district judge] did not know of his fiduciary interest in the litigation, he certainly should have known . . . . Moreover, providing relief in cases such as this will not produce injustice in other cases; to the contrary, the Court of Appeals' willingness to enforce § 455 may prevent a substantive injustice in some future case by encouraging a judge or litigant to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered. It is therefore appropriate to vacate the judgment unless it can be said that [appellant] did not make a timely request for relief, or that it would otherwise be unfair to deprive the prevailing party of its judgment.

343 F.3d at 132 (quoting 486 U.S. at 867-68).

The *Liljeberg* test for vacatur is met here as well. The *Turner* Plaintiffs timely moved for relief, no question. They have shown that the final judgment would not have been entered but for violation of § 455(a). Therefore, Allstate would not be unfairly deprived of the judgment.

15

Judges should carefully assess grounds for disqualification and *promptly* disclose them and recuse (or divest as the case may be), which did not occur here and is another *Liljeberg* element which cannot be disputed. Prompt and effective assessment of potential conflicts is the purpose of the required corporate disclosure (*see* Doc. 9) and the applicable General Order of this Court (No. 3047). There is a risk that relief denied the Plaintiffs would spark injustice in other cases, because a denial could undermine the purpose of corporate disclosures and effective conflict assessment in future cases. That purpose helps uphold public confidence in the courts. *See Clark*, 612 B.R. at 818-20 (citation omitted). Additionally, perhaps most importantly, there is a risk of injustice to the Plaintiffs absent the relief. *See id.*

But for the violation of §455(a), a different ruling on summary judgment would have occurred, and a hearing at which the Plaintiffs could defend against Allstate's motions might have been conducted because a different judge would have presided. But for the final judgment, the stark inconsistency in the case might not have occurred, and the Plaintiffs might not be liable for large taxable costs and even larger amounts for bonds (in pertinent part). Thus, the violation has substantial consequences for the parties and for the litigation. It is serious. *See Clark, ante*.

**5.      Good Ground Exists for Related Procedural Relief.**

Fed. R. Civ. P. 62.1 expressly grants district judges the authority to consider timely motions for relief brought during the pendency of an appeal, which is the case here. *See Madura v. BAC Home Loans Servicing, LP*, 655 F. App'x 717 (11th Cir. 2016); *Balthazar Mgmt., LLC v. Beale St. Blues Co.*, 2020 U.S. Dist. LEXIS 20158, at *5-6 (S.D. Fla. Feb. 5, 2020). This allowance is an exception to the rule that the appeal divests the District Court of jurisdiction to disturb the final judgment.

16

The allowance permits an indicative ruling by this Court (which the *Turner* Plaintiffs request) on the question whether the final judgment is due to be vacated for the reasons asserted. Accordingly, the Court may "(1) defer considering the motion; (2) deny the motion; or (3) state either that *it would grant the motion if the court of appeals remands for that purpose* or that the motion *raises a substantial issue*." Fed.R.Civ.P. 62.1(a) (emphasis added).  Thereafter, the Court can enter an order vacating the final judgment.  *See id.* at (c).[4]  To that end, the *Turner* Plaintiffs will immediately move the Eleventh Circuit (within one day of today) for an order of limited remand, noticing and exhibiting this motion to it.

At a minimum, at this stage, a statement that the motion "raises a substantial issue" is due. The *Turner* Plaintiffs, by their showing, have surmounted that hurdle.  They respectfully submit that their showing warrants even more, namely a statement by the Court that "it would grant the motion if the court of appeals remands for that purpose."  That further finding should await a response from the Defendant, which the movants also request the Court to order.

The Plaintiffs should be allowed, for the purpose of informing the Court and their own advocacy for relief, to obtain the financial disclosure reports of the Chief Judge for the years in question, 2018-2020 (to the extent available).  They have requested the reports as the Clerk of the Court advised them to do.  *See* Doc. 464, 464-1; Exhibit 1, attached hereto.  They did so promptly and diligently, even before receipt of the Clerk's instruction.

Facts available in the reports are due to be before the Court on the question whether vacatur is in order.  That is a lesson from the caselaw addressed in this motion.  This related procedure is warranted for that reason.  The Plaintiffs should be permitted to reply to any response Allstate submits and to supplement this motion with the additional evidence described.

---

[4] Alternatively, it could deny the relief at that time.

17

Upon completion of these related procedures, an order vacating the final judgment would be due pursuant to a limited remand by the appeals court. This case has been pending for many years, and almost three years separate the filing of Allstate's motions for summary judgment and the decision to grant those motions and to dismiss the Plaintiffs' claims with prejudice. So, a relatively small amount of time to permit the warranted procedures would not unduly delay the final resolution of the case. An extremely prolonged delay is a fact established already.

Nor is this a hunt for evidence of partiality by the Chief Judge. Actual partiality is a non-issue according to *Liljeberg*, 486 U.S. 860, and the Plaintiffs make no such accusation. None. The relief of vacatur does not require it. *Id.; accord Chase,* 343 F.3d at 127-132.

## **Request for Hearing**

The movants request a hearing on the question whether the final judgment is due to be vacated.

## **Conclusion**

The relief the *Turner* Plaintiffs request is warranted for the reasons given. This motion is due to be granted.

Respectfully submitted this 13th day of August, 2021, by undersigned counsel for the *Turner* Plaintiffs:

>/s *Christopher B. Hood*
>Christopher B. Hood
>ASB-2280-S35H
>W. Lewis Garrison, Jr.
>ASB-3591-N74W
>Jeanie S. Sleadd
>ASB-8464-G04T
>Taylor C. Bartlett
>ASB-2365-A51B
>
>HENINGER GARRISON DAVIS, LLC

        2224 1st Avenue North
        Birmingham, AL 35203
        Tel: (205) 326 3336
        Fax: (205) 326 3332

        */s/ Glenn Murdock*
        Glenn Murdock
        ASB-2429-K60B

        2906 Canterbury Road
        Birmingham, AL 35223
        205-253-3334
        mrdck7@aol.com

        *Attorneys for* Turner *Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on this 13th day of August, 2021, I caused a copy of the above and foregoing to be served on all counsel of record by filing same via CM/ECF which will serve all counsel of record:

        */s Christopher B. Hood*
        Christopher B. Hood