IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GARNET TURNER, individually, and on behalf of others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>ALLSTATE INSURANCE COMPANY, )<br><br>Defendant. ) | <br><br><br><br><br>CASE NO. 2:13-cv-685-RAH-KFP<br><br><br><br> |
| JOHN E. KLAAS, individually and on behalf of others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>ALLSTATE INSURANCE COMPANY, )<br><br>Defendant. ) | <br><br><br><br><br>CASE NO. 2:15-cv-406-RAH-KFP<br><br><br> |

## ORDER

Pending before the Court is Defendant Allstate Insurance Company's *Consolidated Renewed Motion for Judgment on Bonds and for Taxable Costs.* (Doc. 531.) The motion has been fully briefed and is ripe for decision. The Motion is due to be GRANTED in part.

### FACTUAL BACKGROUND

On September 23, 2013, the *Turner* plaintiffs filed a class action complaint challenging Allstate's decision to discontinue paying the premiums on its Allstate-provided life insurance policies that were being provided as a benefit to certain retirees. Approximately two years later, the *Klaas* plaintiffs filed a separate class

1

action lawsuit concerning another group of Allstate retirees. Both cases were consolidated.

The *Turner* and *Klaas* Plaintiffs sought and obtained a preliminary injunction requiring Allstate to continue paying the premiums due on each of Plaintiffs' life insurance policies during the pendency of the two cases. They however were required to post bonds as a condition of the injunction.

Later in the cases, Allstate moved for summary judgment. The motion was granted and affirmed on appeal to the Eleventh Circuit Court of Appeals. Costs were taxed against the *Turner* and *Klaas* Plaintiffs.

Allstate now seeks its taxable costs of $81,098.85 related to depositions and witness fees. It also seeks payment on the injunction bonds of $220,000 for damages it incurred from maintaining the premium payments on the subject insurance policies.

## DISCUSSION

### Bonds

Allstate argues its entitlement to damages (insurance premiums and administrative expenses) against the injunction bonds flowing from the preliminary injunction, which Allstate claims was wrongfully entered because of the subsequent summary judgment ruling in its favor. Allstate seeks a total of $220,000 from the remaining *Turner* and *Klaas* Plaintiffs as follows:

Garnett Turner - $45,000

Vernon Bentley - $15,000

James Cartrette - $15,000

Bill Huff - $15,000

Richard Scholl - $30,000

Kathy Shepherd - $10,000

Ted Spiewak - $45,000

      Herbert Vidales - $15,000

      John Klaas - $30,000

(Doc. 490.)

An injunction bond provides security for "such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "To recover against an injunction bond, a party must prove that it was wrongfully enjoined and that its damages were proximately caused by the erroneously issued injunction." *Milan Express, Inc. v. Averitt Express, Inc.*, 254 F.3d 966, 981 (11th Cir. 2001); *see also State of Ala., ex rel. Siegelman v. United States Env't Prot. Agency*, 925 F.2d 385, 389 (11th Cir. 1991) (finding that the district court abused its discretion in discharging the plaintiff from liability on the posted security because "the court was obliged to award damages . . . unless good reasons existed to deny such an award").

The *Turner* and *Klaas* Plaintiffs argue that since there has not been an express judicial finding that Allstate was "wrongfully enjoined" then there can be no recovery on the bonds. (Doc. 483.) They are mistaken. An enjoined defendant, like Allstate, that ultimately prevails in the action via a summary judgment ruling is deemed to have been wrongfully enjoined even when the district court previously found that the plaintiff had shown a likelihood of success on the merits. *See, e.g., Guzman v. Loc. 32B-32J, Servs. Emp. Int'l Union, AFL-CIO*, 72 F.3d 260, 263 (2d Cir. 1995) (A party is wrongfully enjoined when it has been "ordered to do something it had a right to refrain from doing or to cease doing something it had a right to continue doing[.]"). Thus, "a prevailing defendant is entitled to damages on the injunction bond unless there is a good reason for not requiring the plaintiff to pay in the particular case." *Milan Express, Inc.*, 254 F.3d at 981 (citing *State of Ala. ex rel. Siegelman*, 925 F.3d at 390).

The *Turner* and *Klaas* Plaintiffs argue a myriad of "good reasons" for being excused from paying damages on the injunction bonds: (1) Allstate profited immensely from the cancellation of its retiree life insurance policies to the tune of over $13,000,000; (2) the preliminary injunction was properly granted because it was equitable in December 2015 based on the strength of the Plaintiffs' witnesses and the lack of evidence Allstate brought to the hearing; (3) the Plaintiffs could not foresee that summary judgment would result in Allstate prevailing five years later; and (4) ERISA, the substantive law on which the injunction rested, only furnishes equitable relief.

While it may be correct that Allstate saved over $13,000,000 in cancelling the life insurance benefits for all the class members, Allstate was enjoined from doing so for the nine remaining Plaintiffs in this action, an action which the Court and the Eleventh Circuit later held that Allstate could legally do. Allstate expended over $440,000 to maintain the subject insurance policies since the date of the preliminary injunction, although the Plaintiffs only provided $220,000 of security.[1] Yes, Allstate did save money associated with the challenged conduct, but it still incurred a cost, and therefore damages, in maintaining the premium payments on the Plaintiffs' insurance policies. And the bonds were imposed to protect Allstate in case Allstate ultimately prevailed. (*See* Doc. 121 at 26 ("Allstate does bear some risk that it cannot recoup the premiums in the event that it prevails in this case" and "any injury to Allstate in the form of making nonrefundable premium payments will be offset

---

[1] While Allstate could seek all $440,000 from the remaining Plaintiffs, it only seeks to collect against the $220,000 in bonds. It is also worth noting that at least three of the initial plaintiffs died during the pendency of the case. Presumably, the life insurance policies, which Allstate was required to maintain under the preliminary injunction, paid out their benefits, and therefore in a similar vein, some of the initial plaintiffs received a substantial benefit because of the injunction order as well.

by requiring Plaintiffs to post a bond").) The Plaintiffs' monetary equities argument therefore unavailing.

As to the rest of the *Turner* and *Klaas* Plaintiffs' arguments, none are persuasive. Plaintiffs primarily argue that they should be excused from the premium costs because they advanced strong arguments for the injunction and because the injunction was granted based on their equitable claims under ERISA. But preliminary injunction rulings are not conclusive, nor final. *See David Vincent, Inc. v. Broward Cnty.*, 200 F.3d 1325, 1331 (11th Cir. 2000) ("[T]he underlying logic is that temporary injunction rulings are generally not conclusive determinations on the merits; they should not bar a more thorough consideration of a claim when the evidence and legal arguments are better developed. . . . By definition, preliminary injunction proceedings do not provide an opportunity to litigate permanent injunction claims."). And if a prevailing party could not seek damages associated with an earlier-issued injunction on the mere basis that the injunction had been granted because the proponent had shown a substantial likelihood of success on the merits, then the point of a bond becomes irrelevant. In short, that the Plaintiffs had shown and that the Court had earlier found that the Plaintiffs were likely to succeed on the merits does not preclude Allstate from later obtaining damages when the Plaintiffs later lost their case. Those are the risks inherent in litigation and in seeking a preliminary injunction.

Here, the preliminary injunction prohibited Allstate "from discontinuing or cancelling life insurance policies for the named Plaintiffs." (Doc. 92 at 3.) As a result, Allstate was required to pay the premiums and administrative fees on the subject policies which it was otherwise not obligated to do. Allstate's current request to seek damages against the bonds due to the preliminary injunction is appropriate. Thus, Allstate's motion will be granted.

## Costs

Costs that may be taxed are specified in 28 U.S.C. § 1920, which provides that "[a] judge or clerk of any court of the United States may tax as costs the following: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees related to printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where copies are necessarily obtained for use in the case; (5) docket fees . . . ; and (6) compensation of court appointed experts, . . . interpreters, and . . . fees related to interpretation services[.]" There is also a presumption in favor of awarding costs. *See Arcadian Fertilizer, L.P. v. MPW Indus. Servs. Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001) (per curiam). And the Court explicitly ordered not only that Plaintiffs' claims were dismissed with prejudice, but also that "[c]osts are taxed against the Plaintiffs for which execution may issue." (Doc. 431; Doc. 432.)

Here, Allstate seeks $81,098.85 in taxable costs which stem from the costs incurred from deposition transcripts, video depositions, and witness fees. Allstate seeks this amount from the *Turner* and *Klaas* Plaintiffs jointly and severally. Allstate argues these costs were necessarily obtained because Plaintiffs' depositions were used by Allstate in opposition to class certification and in support of its summary judgment motion. (*See* Doc. 261; Doc. 268; Docs 304–310.)

Plaintiffs oppose Allstate's request for costs stemming from the video depositions, claiming they were not necessary and were not used in the parties' summary judgment briefing. They do not oppose taxation of the transcript costs, which they propose should be allocated between the *Turner* and *Klaas* Plaintiffs as follows: $32,014.78 against the *Turner* Plaintiffs for the transcripts of the *Turner* Plaintiffs' depositions and an allocated part of the Allstate deposition transcripts and

witness fees, and $9,219.29 against the *Klaas* Plaintiffs for their transcripts and an allocated part of the Allstate transcripts and witness fees.[2]

District courts have wide discretion in determining the amount of a cost award, as well as how to divide liability. *See United States v. Patrol Servs., Inc.*, 202 F. App'x 357, 362 (11th Cir. 2006) (per curiam). "The default rule is that costs are to be imposed jointly and severally, and the burden is on the party seeking to avoid that to introduce evidence justifying apportionment and persuade the court to do that." *State Farm Fire & Cas. Co. v. Silver Star Health and Rehab*, 739 F.3d 579, 586 (11th Cir. 2013) (per curiam) (citing to *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 469 (3d Cir. 2000)). Plaintiffs, as the non-prevailing party, "bear[] the burden of showing that specific deposition costs or a court reporter's fee was not necessary for use in the case or that the deposition was not related to an issue present in the case at the time of the deposition." *Anderson v. Surgery Ctr. of Cullman, Inc.*, No. 2:12-cv-598-AKK, 2018 WL 8807149, at *3 (N.D. Ala. Aug. 27, 2018), *aff'd*, 839 F. App'x 364 (11th Cir. 2020).

As part of its discretion, a court may reduce costs if a plaintiff passes away or is dismissed prior to summary judgment. *See In re Paoli R.R. Yard PCB Litig.*, 221 F.3d at 470. The Court therefore begins by addressing the costs associated with *Turner* Plaintiffs Carrie Dructor (dismissed as a party) and Judith Cuddington (died during the litigation). These costs will be excluded from the taxable costs sought by Allstate.

---

[2] Plaintiffs' calculations exclude the following depositions: Charlie Drake (*Turner*, dismissed on appeal), Donald Kerr (*Turner*, dismissed on appeal), Alberta Nixon (*Turner*, dismissed on appeal), Suzanne Willingham (*Turner*, dismissed on appeal), Carrie Ductor (*Turner*, dismissed in June 2017 before final judgment), Judith Cuddington (*Turner*, died in 2019 before final judgment), David Sangston (*Klaas*, dismissed on appeal), Frank Berardi (*Klaas*, dismissed on appeal), and Terry Montford (*Klaas*, dismissed on appeal). Only two of these plaintiffs, Carrie Dructor and Judith Cuddington, were no longer plaintiffs prior to summary judgment.

The primary objection raised by the *Turner* and *Klaas* Plaintiffs concerns the costs associated with the video depositions of the parties and witnesses. Plaintiffs argue this videography was not necessary and was not used in the summary judgment briefing. Allstate argues that although no video excerpts were used at summary judgment, "the depositions involved witnesses critical to the case and whose credibility was a critical issue *for trial*." (Doc. 475 at 4) (emphasis added). And although not mentioned by Allstate, there is the added consideration that the Plaintiffs are generally older, largely elderly, and very well may not have been available for a trial in these two cases.

The Court notes that Plaintiffs never objected to the manner in which these depositions were taken, although they could have, and that the Plaintiffs also videotaped the depositions they took in these cases. *See Morrison v. Reichhold Chems. Inc.*, 97 F.3d 460, 465 (11th Cir. 1996) (per curiam) ("[W]hen a party notices a deposition to be recorded by nonstenographic means, or by both stenographic and nonstenographic means, and no objection is raised at that time by the other party to the method of recordation pursuant to Federal Rule of Civil Procedure 26(c), it is appropriate under § 1920 to award the costs of conducting the deposition in the manner noticed."). As such, there was a recognized need and utility in video recording the depositions in both cases. The costs for video recording the depositions will therefore remain, excepting the video depositions of Dructor and Cunningham.

The Court now turns to the last remaining issue: how to apportion the remaining costs between the remaining *Turner* and *Klaas* Plaintiffs, of which there are nine total. The *Turner* and *Klaas* Plaintiffs argue that since the Court sua sponte consolidated these two actions, then the costs should be disaggregated and then allocated between the two plaintiff groups. This is a reasonable and appropriate consideration, and the Court will do so here. *See, e.g., Fernau v. Enchante Beauty*

8

*Prods., Inc.*, No. 18-20866-Civ-Scola, 2021 WL 1923285, at *1 (S.D. Fla. May 13, 2021) ("[E]quities favoring apportionment include: whether the court had consolidated cases on its own initiative, whether costs can be easily disaggregated, and unequal cost attribution.").

Therefore, after dropping the Dructor and Cunningham deposition costs, the total remaining taxable costs are $77,432.65.[3] Of that sum, the *Turner* Plaintiffs will be jointly and severally liable for $50,079.18 in costs associated with their own depositions and $11,255.13, which is $8/9$ [4] of the $12,174.69 and $487.33, in costs associated with the Allstate depositions and witness fees. And of that, the *Klaas* Plaintiffs will be jointly and severally liable for $14,691.45 in costs associated with their own depositions and $1,406.89, which is $1/9$ of the $12,174.69 and $487.33, in costs associated with the Allstate depositions and witness fees.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

1. Defendant's *Consolidated Renewed Motion for Judgment on Bonds and for Taxable Costs* (doc. 531) is **GRANTED in part** and **DENIED in part**.
2. Judgment on the bonds for Defendant Allstate Insurance Company is **GRANTED**. Plaintiffs shall forfeit their signature bonds in the entirety to Allstate Insurance Company as follows:
   a. $45,000 security bond posted by Garnett Turner
   b. $15,000 security bond posted by Vernon Bentley
   c. $15,000 security bond posted by James Cartrette
   d. $15,000 security bond posted by Bill Huff

---

[3] The Court reaches this cost amount by subtracting the deposition costs of Carrie Dructor and Judith Cuddington from the Bill of Costs submitted by Allstate. (Doc. 476.)

[4] There are eight remaining *Turner* Plaintiffs and one remaining *Klaas* Plaintiff.

    e. $30,000 security bond posted by Richard Scholl

    f. $10,000 security bond posted by Kathy Shepherd

    g. $45,000 security bond posted by Ted Spiewak

    h. $15,000 security bond posted by Herbert Vidales

    i. $30,000 security bond posted by John Klaas

3. Defendant's request for taxable costs for the depositions of *Turner* Plaintiffs Carrier Dructor and Judith Cuddington is **DENIED**.

4. Costs are taxed in favor of Allstate Insurance Company and against *Turner* Plaintiffs Garnett Turner, Vernon Bentley, James Cartrette, Bill Huff, Richard Scholl, Kathy Shepherd, Ted Spiewak, and Herbert Vidales, jointly and severally, in the sum of $61,334.31.

5. Costs are taxed in favor of Allstate Insurance Company and against *Klaas* Plaintiff John Klaas in the sum of $16,104.34.

DONE, on this the 17th day of April 2024.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE